**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
RUNITONETIME LLC, et al.,                               :   Case No. 25-90191 (ARP)
                                                        :
                     Debtors.[1]                        :   (Joint Administration Requested)
                                                        :
------------------------------------------------------- x
```

<u>**EMERGENCY** MOTION OF DEBTORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF</u>

---

**Emergency relief has been requested.  Relief is requested not later than 1:00 p.m. (prevailing Central Time) on July 15, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on July 15, 2025, at 1:00 p.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002.  Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Perez's conference room number is 282694.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Perez's homepage.  The meeting code is "JudgePerez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

The above-captioned debtors in possession (collectively, the "***Debtors***") respectfully state

as follows in support of this motion (this "***Motion***"):

---

[1]    A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/.  The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto:  (a) authorizing, but not directing, the Debtors to pay certain prepetition taxes, assessments, fees, duties, and other charges in the ordinary course of business, including any such taxes, assessments, fees, duties, and charges subsequently determined upon audit, or otherwise, to be owed (collectively, the "***Taxes and Fees***") but excluding certain Past-Due Taxes (defined and discussed below) and (b) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541(d), and 1107 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

4.      On the date hereof (the "***Petition Date***"), the Debtors each commenced with the Court a voluntary case (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5.      Contemporaneously with the filing of the Motion, the Debtors filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6.      The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability.  The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants.  The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah, to the Debtors' operating properties in Wendover, Nevada.

7.      The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* (the "***First Day Declaration***"), filed contemporaneously herewith and incorporated herein by reference.[2]

I.      **The Taxes and Fees**

8.      In the ordinary course of business, the Debtors collect, withhold, and incur an assortment of Taxes and Fees that they remit periodically to various federal, state, and local taxing, licensing, regulatory, and other governmental authorities (collectively, the "***Taxing and***

---

[2]      Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

*Regulatory Authorities*") listed on the schedule attached to the Proposed Order as **Exhibit A** (the "***Taxing and Regulatory Authorities List***").[3]  The Taxes and Fees include (a) Sales and Use Taxes, (b) Income Taxes, (c) Property Taxes, and (d) Regulatory Fees (each as defined and described below).

9.      The Debtors pay or remit Taxes and Fees to various Taxing and Regulatory Authorities primarily through electronic funds transfers that are processed through their banks and other financial institutions or service providers on a monthly, quarterly, semi-annual, annual, or biennial basis, as the case may be and in each case as required by applicable law.

10.     The Debtors paid a total of approximately $35,000,000 in Taxes and Fees in the aggregate in 2024.  The Debtors seek authority to pay any prepetition amounts that are or may come due on account of the Taxes and Fees, excluding any Taxes and Fees that constitute Past-Due Taxes. Following the Petition Date, the Debtors intend to make future payments on account of any postpetition Sales and Use Taxes in the ordinary course.  The Debtors estimate that they owe the following accrued amounts on account of the following categories of Taxes and Fees:[4]

---

[3]     The Taxing and Regulatory Authorities List reflects the Debtors' good-faith efforts to identify all applicable Taxing and Regulatory Authorities.  The inclusion or exclusion of any person or entity from the Taxing and Regulatory Authorities List is not intended to be determinative of whether such person or entity is a Taxing and Regulatory Authority to whom Taxes and Fees may be owed.  The Debtors request authority, but not direction, to pay all Taxes and Fees owed to any Taxing and Regulatory Authority, regardless of such Taxing and Regulatory Authority's inclusion or exclusion on the Taxing and Regulatory Authorities List, and reserve the right, in their sole discretion, to add or remove any Taxing and Regulatory Authority from the Taxing and Regulatory Authorities List.

[4]     In the ordinary course of business, the Debtors sometimes undergo audits and reviews conducted by the various Taxing and Regulatory Authorities.  Although the estimates of outstanding Taxes and Fees are based on a good-faith assessment of the existing amounts due on a prepetition basis, there is a possibility—because of audit rights—that one or more of the various Taxing and Regulatory Authorities may determine at a later date that the Debtors owe greater or lesser amounts of prepetition Taxes and Fees.  Nothing in this Motion is or should be construed as an admission of liability by the Debtors with respect to any audit and/or review, and the Debtors reserve all rights related thereto.  By this Motion, the Debtors request authority to pay any undisputed amounts that are determined to be due.  Additionally, some prepetition liabilities are estimated based on historical obligations and practice.  To the extent actually assessed prepetition obligations for Taxes and Fees exceed these estimates, the Debtors seek authority to pay all such amounts.

| Category | Estimated Amount |
|---|---|
| Sales and Use Taxes | $450,000 |
| Income Taxes | $0 |
| Property Taxes | $400,000 |
| Regulatory Fees | $5,750,000 |
| **Total** | **$6,600,000** |

11.     With respect to the Taxes and Fees set forth in this Motion, the Debtors have failed to timely pay certain of the Taxes and Fees that became due and owing prior to the Petition Date (the "***Past-Due Taxes***").  The Past-Due Taxes primarily consist of certain Income Taxes and Regulatory Fees.  As of the Petition Date, the Past-Due Taxes are asserted against the Debtors in the amount of approximately $30,500,000.  For the avoidance of doubt, the Debtors are not by this Motion seeking authority to remit any "catch-up" payments, late penalties, or similar fees to any Taxing Authorities on account of Past-Due Taxes.[5]

12.     The Debtors request that the relief requested herein be without prejudice to the Debtors' rights to contest the amounts of any Taxes and Fees on any grounds they deem appropriate or the Debtors' ability to request further relief related to the Taxes and Fees in the future. The Debtors further request that prior to making a payment to any of the Taxing and Regulatory Authorities, the Debtors be authorized to settle all or some of the prepetition claims of such Taxing and Regulatory Authorities for less than their face amount without further notice or hearing.

---

[5]    Although the Debtors dispute that a portion of the Past-Due Taxes are owed (and reserve all rights with respect thereto), the Debtors acknowledge that certain amounts are owed on account of such prepetition obligations as of the Petition Date.  Prior to the Petition Date, the Debtors made payments to the Internal Revenue Service as part of an offer in compromise. Through this Motion, the Debtors are not requesting authority to continue these payments under the offer in compromise.  However, the Debtors reserve the right to seek authorization to resume payments under an offer in compromise at a later date.

A. **Sales and Use Taxes**

13.     The Debtors incur and collect from customers various state and local sales taxes (the "***Sales Taxes***"), including hotel occupancy, food and beverage, gross sales, entertainment, and luxury taxes, in connection with the sale of various products and services to their customers. Sales Taxes are charged at the point of purchase for certain goods and services and set by the applicable Taxing and Regulatory Authority as a percentage of the total purchase price. Generally, the Debtors collect and remit Sales Taxes to Taxing and Regulatory Authorities on a monthly basis following their collection.

14.     The Debtors are also remit use taxes (the "***Use Taxes***" and together with the "***Sales Taxes***," the "***Sales and Use Taxes***") arising from the purchase of inventory, goods, and services necessary for the operation of their business from out-of-state vendors that do not charge the Debtors Sales Taxes. Generally, the Debtors collect and remit Use Taxes to Taxing and Regulatory Authorities on a monthly, quarterly, or annual basis following their collection.

15.     In 2024, the Debtors remitted approximately $4,500,000 in Sales and Use Taxes to the applicable Taxing and Regulatory Authorities. As of the Petition Date, the Debtors estimate that they currently owe approximately $450,000 in outstanding accrued prepetition amounts on account of the Sales and Use Taxes.

B. **Income Taxes**

16.     The Debtors are subject to federal and state income tax liabilities ("***Income Taxes***"). Generally, Income Taxes are paid to the applicable Taxing and Regulatory Authority in quarterly estimated payments based on an annual assessment of amounts owed.  In 2024, the Debtors remitted approximately $230,000 in net aggregate Income Taxes.[6]  As of the Petition Date,

---

[6]     By the end of April 2025, the Debtors paid approximately $690,000 in additional net aggregate Income Taxes for the 2024 tax year.

the Debtors estimate that they do not owe any outstanding accrued prepetition amounts on account of Income Taxes.

### C.    Property Taxes

17.    Where the Debtors utilize real and personal property in conducting their business operations, the Debtors may be subject to property taxes levied by state and local governments ("***Property Taxes***").  The Debtors typically pay Property Taxes for their owned real and personal property directly to the Taxing and Regulatory Authorities in the ordinary course as such taxes are invoiced. The Debtors generally "pass-through" certain Property Taxes with respect to their leased real property pursuant to the applicable lease agreements or remit Property Taxes directly to the Taxing and Regulatory Authorities.  Property Taxes are typically paid annually, quarterly, or semi-annually.  State and local laws in certain of the jurisdictions in which the Debtors operate generally grant the applicable Taxing and Regulatory Authorities the power to impose statutory liens and additional fees and penalties for nonpayment of Property Taxes.

18.    In 2024, the Debtors paid approximately $3,500,000 in Property Taxes.  As of the Petition Date, the Debtors estimate that they currently have $400,000 in outstanding accrued prepetition amounts on account of Property Taxes.

### D.    Regulatory Fees

19.    In the ordinary course of business, the Debtors incur regulatory fees, permitting fees, business licensing and permitting fees, registration fees, and federal, state, and other miscellaneous fees or related charges (collectively, "***Regulatory Fees***").  Most significantly, the Debtors are required to pay certain gaming-related taxes and fees (the "***Gaming Taxes and Fees***") to various authorities as part of their Regulatory Fees. These Gaming Taxes and Fees are payable daily, weekly, quarterly, or annually, as applicable by jurisdiction, and the amounts are based upon a number of criteria, including (a) flat fees, (b) a percentage of gross revenues received, (c) the

number of gaming devices operated during the applicable period, and (d) the need for withholding from patron winnings.  Among others, the Gaming Taxes and Fees include gaming revenue taxes, slot machine taxes and fees, investment alternative taxes, admission taxes and fees, excise taxes on wagering, and law enforcement fees.  In 2024, the Debtors remitted approximately $25,000,000 in the aggregate to various authorities on account of Gaming Taxes and Fees, and estimate that approximately $5,150,000 in Gaming Taxes and Fees are due and owing as of the Petition Date.

20.     The Debtors also pay for non-gaming related business licenses and permits and incur other miscellaneous charges imposed by the Taxing and Regulatory Authorities as part of their Regulatory Fees (the "***Non-Gaming Regulatory Fees***").  In 2024, the Debtors remitted approximately $3,000,000 in the aggregate to various authorities on account of Non-Gaming Regulatory Fees.  As of the Petition Date, the Debtors estimate that they have $600,000 incurred in Non-Gaming Regulatory Fees.

21.     In total, the Debtors remitted approximately $28,000,000 in the aggregate on account of the Regulatory Fees in 2024.  As of the Petition Date, the Debtors estimate that they currently have $5,750,000 in outstanding accrued prepetition amounts on account of Regulatory Fees.

**BASIS FOR RELIEF**

22.     Ample reason exists to authorize payment of the Taxes and Fees as set out herein and to grant related relief because, among other things, (i) failure to pay Taxes and Fees as they come due and owing in the ordinary course may interfere with the Debtors' continued operations and the success of the Chapter 11 Cases, (ii) certain of the prepetition Taxes and Fees may not be property of the Debtors' estates, (iii) failure to pay prepetition Taxes and Fees may increase the scope of secured and priority claims held by the applicable Taxing and Regulatory Authorities against the Debtors' estates, (iv) payment of prepetition Taxes and Fees affects only the timing of

payments as most, if not all, of the Taxes and Fees are afforded priority status under the Bankruptcy Code, and (v) the Court has authority to grant the requested relief under sections 363(b) and 105(a) of the Bankruptcy Code.

**A.      Failure to Pay Taxes May Interfere with Debtors' Continued Operations and Success of the Chapter 11 Cases.**

23.      The Debtors seek authority to pay the Taxes and Fees to, among other things, prevent the Taxing and Regulatory Authorities from taking actions that may interfere with the Debtors' continued business operations.  Nonpayment of these obligations may cause Taxing and Regulatory Authorities to take precipitous action including, but not limited to, asserting liens on the Debtors' property or seeking to lift the automatic stay.  Such actions could materially disrupt the Debtors' day-to-day operations and impose significant costs on the Debtors' estates.  Failure to satisfy certain of the prepetition Taxes and Fees may jeopardize the Debtors' maintenance of good standing to operate in the jurisdictions in which they do business.

24.      Additionally, to the extent any prepetition Taxes and Fees remain unpaid by the Debtors, the Debtors' officers and directors may be subject to lawsuits or criminal prosecution during the pendency of the Chapter 11 Cases.  The dedicated and active participation of the Debtors' directors, officers, and other employees is not only integral to the Debtors' continued, uninterrupted operations, but also essential to the orderly administration of the Chapter 11 Cases. The threat of a lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtors and their personnel from important matters, to the detriment of all parties in interest.

25.      Accordingly, the Debtors seek authority to pay the Taxes and Fees (including any Regulatory Assessments or Audit Assessments) in the ordinary course of business as such amounts come due.

**B.      Certain Prepetition Taxes and Fees May Not Be Property of Debtors' Estates.**

26.     Additionally, certain of the Taxes and Fees may not be property of the estate, as they are collected from third parties and held in trust for payment to various Taxing and Regulatory Authorities.  Some of the prepetition Taxes and Fees may constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Taxing and Regulatory Authorities.  Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest... becomes property of the estate... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

27.     To the extent the Debtors have collected or hold Taxes and Fees in trust for payment to the Taxing and Regulatory Authorities, such funds may not constitute property of the Debtors' estates.  *See, e.g.*, *Begier v. I.R.S.*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1067–69 (9th Cir. 1998) (holding that, under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (finding that withholding taxes were subject to a trust); *In re Columbia Gas Sys.  Inc.*, 997 F.2d 1039, 1059–60 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found); *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 234–35, 240 (5th Cir. 1993) (finding that debtors' prepetition collection of sales taxes and interest thereon held subject to trust and not property of estate); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust

for federal excise and withholding taxes are not property of the debtor's estate).  The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to the applicable Taxing and Regulatory Authorities as the related Taxes and Fees become due.

> ### C. Failure to Pay Prepetition Taxes May Increase the Scope of Secured and Priority Claims Held by Taxing and Regulatory Authorities.

28.     Payment of prepetition Taxes and Fees is also warranted here because the Debtors' nonpayment of such prepetition Taxes and Fees may increase the amount of secured claims held by Taxing and Regulatory Authorities against the Debtors' estates.  Specifically, Taxing and Regulatory Authorities may assert liens against any real or personal property for which the Taxes and Fees are due and owing.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(3).  In fact, the creation and perfection of such a lien may not violate the automatic stay—even if the lien arises under applicable law for taxes due after the Petition Date.  *See* § 362(b)(18) (providing that the automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition").

29.     To the extent the Taxing and Regulatory Authorities hold oversecured claims, if the prepetition Taxes and Fees are not paid, postpetition interest, fees, penalties, and other charges may also accrue.  *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (holding that nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Even if these Taxes and Fees are not treated as secured

claims, certain unsecured taxes are afforded priority status under section 507(a)(8) of the Bankruptcy Code. These include, *inter alia*, unsecured claims of governmental entities for a tax required to be collected or withheld and for which a debtor is liable in whatever capacity. *See* 11 U.S.C. § 507(a)(8)(C). Any attendant penalties assessed by the applicable Taxing and Regulatory Authorities on delinquent taxes owed by the Debtors may be entitled to similar treatment.

30.     Accordingly, the Debtors' failure to pay prepetition Taxes and Fees thus may increase the amount of priority claims held by the Taxing and Regulatory Authorities against the Debtors' estates.

31.     In addition, many federal and state statutes provide that officers and directors of a corporation may be personally liable for certain taxes owed by the corporation. To the extent that certain Taxes and Fees remain unpaid by the Debtors, the Debtors' directors, officers, and executives may be liable for such unpaid Taxes and Fees and subject to lawsuits or criminal prosecution during the pendency of these Chapter 11 Cases. Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their officers, directors, and executives from the orderly administration of these Chapter 11 Cases, to the detriment of all parties in interest.

32.     Paying the prepetition Taxes and Fees now will avoid the potential imposition of liens and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby preserving the value of the Debtors' estates and maximizing the distribution available for other creditors.

**D.     Paying Prepetition Taxes Will Affect Only Timing of Payments.**

33.     Most, if not all, of the Taxes and Fees described herein are afforded priority status pursuant to section 507(a)(8) of the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(8)(C) (affording priority status for "a tax required to be collected or withheld and for which the debtor is liable in

whatever capacity"); *see also* § 507(a)(8)(E) (affording priority status for "an excise tax on... a transaction occurring before the date of the filing of the petition").  Thus, payment of such Taxes and Fees would give the Taxing and Regulatory Authorities no more than that to which they otherwise would be entitled to under a chapter 11 plan, which will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Taxes and Fees.

34.     Courts frequently authorize early payment of priority claims when such early payment is intended to prevent some harm or to procure some benefit for the estate.  *See, e.g.*, *Equalnet Commc'ns*, 258 B.R. at 370 (stating that court may authorize pre-plan payment of priority claims, including certain tax claims, because "[t]he need to pay these claims in an ordinary course of business time frame is simple common sense"); *see also In re CEI Roofing, Inc.*, 315 B.R. 50, 60–61 (Bankr. N.D. Tex. 2004) (finding that authorization of early payment of priority claims does not trigger concerns of either upsetting priority scheme of Bankruptcy Code or of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. 487, 493–94 (Bankr. N.D. Tex. 2002) (implying that bankruptcy court may authorize early payment of prepetition priority claims in instances where nonpayment could impair debtor's ability to operate).

35.     To the extent the prepetition Taxes and Fees are priority claims, they must be paid in full under any plan of reorganization before any general unsecured obligations of the Debtors may be satisfied.  Sufficient assets exist to pay all the prepetition Taxes and Fees.  Accordingly, the proposed relief will affect only the timing of payment of prepetition Taxes and Fees and will not prejudice the rights of any general unsecured creditor or other party-in-interest.  Therefore, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees in the ordinary course.

E.     **Payment of the Taxes and Fees Is Authorized Under Sections 105(a), 363, and 1107(a) of the Bankruptcy Code.**

36.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide the debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." (alteration in original)); *Lavigne v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (same).  The Debtors submit that payment of the Taxes and Fees constitutes an ordinary course transaction and, therefore, is authorized under section 363(c)(1) of the Bankruptcy Code.

37.     The Court may also grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons.  *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons") (internal quotation and citation omitted); *see also Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to

14

satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted); *ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard . . . [t]he business judgment standard in section 363 is flexible and encourages discretion other than in the ordinary course of business, but the movant must articulate some business justification for the sale..."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted).

38.    In addition, the Court has authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *CEI Roofing*, 315 B.R. at 59 (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see CoServ*, 273 B.R. at 491-93 & n.6 (holding that sections 105 and 1107 of the Bankruptcy Code provide authority for a debtor in possession to pay prepetition claims). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case where doing so is "needed to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Accordingly, the Bankruptcy Code authorizes the

postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of the Debtors' estates.

39.     Payment of the Taxes and Fees is a sound exercise of the Debtors' business judgment and is necessary to permit a successful reorganization.  Moreover, such payments are necessary to avoid obstacles to a smooth transition into and ultimately out of chapter 11. Significant disruptions of the Debtors' operations of the types described above threaten to irreparably impair the Debtors' ongoing and essential relationships with regulators involved in every aspect of the Debtors' business and threaten to limit or prevent entirely the Debtors ability to transact with counterparties in the ordinary course of business, all of which will undoubtedly impair the Debtors' ability to successfully reorganize.

40.     For the foregoing reasons, granting the Debtors the authority to pay prepetition Taxes and Fees in the ordinary course is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in the Chapter 11 Cases.  Accordingly, the Court should authorize the Debtors to the relief requested.

## CAUSE EXISTS TO AUTHORIZE THE BANKS TO
## HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

41.     The Debtors further request that the Court authorize applicable banks and other financial institutions (collectively, the "Banks") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the Taxes and Fees (whether such checks or fund transfers were presented before or after the Petition Date), to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payment.  The Debtors also seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement

of any checks or fund transfer requests on account of prepetition Taxes and Fees dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

## EMERGENCY CONSIDERATION

42.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which authorize the Court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm.  As described in detail above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## DEBTORS' COMPLIANCE WITH BANKRUPTCY RULE 6004(A) AND WAIVER OF BANKRUPTCY RULE 6004(A) AND (H)

43.     With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.  Thus, cause exists for the Court to find that notice of this Motion satisfies Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

44.     Nothing in this Motion is intended to be nor shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights

under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) an admission that any lien satisfied pursuant to this Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); or (i) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

45.     Notice of the Motion will be given to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Agent; (d) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (e) the Taxing and Regulatory Authorities; (f) the United States Attorney for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

46.     A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and

Noticing     Agent,     Kroll     Restructuring     Administration     LLC,     at
https://restructuring.ra.kroll.com/RunItOneTime/.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  July 14, 2025        Respectfully submitted,
       Houston, Texas

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
      ashleyharper@hunton.com
      pguffy@hunton.com

- and –

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (*pro hac vice* pending)
Helena G. Tseregounis (*pro hac vice* pending)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
E-mail:  jeff.bjork@lw.com
      helena.tseregounis@lw.com
      nicholas.messana@lw.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
E-mail:  ray.schrock@lw.com
      andrew.sorkin@lw.com

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on July 14, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II