# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

----------------------------------------------------------- x
:
In re: : Chapter 11
:
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
:
Debtors.[1] : (Joint Administration Requested)
:
----------------------------------------------------------- x

## EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION INSURANCE PROGRAM OBLIGATIONS, AND (B) MAINTAIN THE INSURANCE POLICIES POSTPETITION; AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on July 15, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 15, 2025, at 1:00 p.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

The above-captioned debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this motion (this "***Motion***"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto: (a) authorizing, but not directing, the Debtors to (i) maintain, renew, amend, supplement, replace, or extend the Insurance Policies and Premium Financing Agreement (each as defined below, and collectively, the "***Insurance Programs***"); and (ii) pay any premiums or other obligations arising under or related to the Insurance Programs, including any Broker Fees (as defined below) or payments to the Premium Financing Provider (as defined below) (collectively, the "***Insurance Obligations***"); and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b) and (c), 1107(a), 1108, and 1112(b)(4)(C) of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

**BACKGROUND**

4. On the date hereof (the "***Petition Date***"), the Debtors each commenced with the Court a voluntary case (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5. Contemporaneously with the filing of the Motion, the Debtors filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability. The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants. The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah, to the Debtors' operating properties in Wendover, Nevada.

7. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth

3

in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

## THE INSURANCE PROGRAMS

**I.    The Insurance Policies**

8.      The Debtors maintain various insurance policies that are administered by several third-party insurers and insurance carriers (the "**Insurers**"). Collectively, these policies provide coverage for, among other things, property damage, general commercial liability, crime, workers' compensation[3] and employer's liability, directors' and officers' liability,[4] automobile liability, pollution liability, network security, and various other liability and property losses, liabilities, and claims (collectively, and including any new or similar policies entered into by the Debtors upon expiration, the "**Insurance Policies**"). A schedule of the Insurance Policies is attached to the Proposed Order as **Exhibit A**.[5]

9.      The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry and of the Debtors' size. Most of the Insurance Policies

---

[2]   Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

[3]   The Debtors have separately sought authorization to honor their obligations under their workers' compensation programs (including making prepetition payments associated with insurance premiums) as part of the contemporaneously filed *Emergency Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to (A) Pay Certain Employee Compensation and Benefits and (B) Continue Such Benefits and Other Employee-Related Programs; (II) Modifying the Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (the "**Wages Motion**"), filed contemporaneously herewith. While the Debtors have included reference to their workers' compensation insurance programs and the attendant premiums associated with that coverage in this Motion, they are not seeking authority to pay those amounts in this Motion.

[4]   Prior to the Petition Date, the Debtors purchased an extension of their D&O policy which covers the period of May 5, 2025, to May 4, 2026. All of the premiums and other obligations related to this policy were paid prior to the Petition Date in the amount of approximately $373,395.

[5]   The Debtors request authority to honor obligations and renew all insurance policies, as applicable, notwithstanding any failure of the Debtors to include a particular insurance policy on **Exhibit A**. For the avoidance of doubt, the Debtors hereby request authority to pay any outstanding prepetition amounts related to such renewed Insurance Policies notwithstanding any potential inconsistencies in **Exhibit A**. The Debtors reserve the right to supplement this list as appropriate with respect to such renewed Insurance Policies or in the event that any Insurance Policy was inadvertently omitted.

4

are held in the name of Debtor RunItOneTime LLC (f/k/a Maverick Gaming LLC) and provide coverage for the Debtors as subsidiaries of the named insured. The Insurance Policies renew at various times throughout each year, but the majority renew annually on October 1. The annual premiums for each of the Insurance Policies is typically due in full at the beginning of each particular policy period.

## II.   The Brokers

10.   The Debtors typically obtain most of their Insurance Policies through USI Insurance Services ("***USI***") and obtain their directors' and officers' insurance and related employment coverage through Cobbs Allen Capital, LLC d/b/a CAC Specialty ("***CAC***," and together with USI, the "***Brokers***"). The Brokers assist in obtaining comprehensive insurance coverage and provide related services, including procuring and negotiating the Insurance Policies on advantageous terms and at competitive rates, providing claims services, and providing certain risk control services. In exchange for the receipt of these services, the Brokers receive commissions (the "***Broker Fees***"). The Debtors paid approximately $75,000 in respect of the Brokers' Fees over the past 12 months.

## III.   The Premium Financing Agreement

11.   To pay premiums for certain of the Debtors' Insurance Policies, the Debtors have obtained financing pursuant to that certain Premium Finance Agreement between AFCO Credit Corporation ("***AFCO***" or the "***Premium Financing Provider***") and RunItOneTime LLC, dated as of October 14, 2024 (the "***Premium Financing Agreement***"). Under the Premium Financing Agreement, AFCO pays the premiums for the relevant policies, and the Debtors paid an initial down payment of approximately $684,201 and pay monthly installments of approximately

$449,943.[6]  The Premium Financing Agreement is set to expire on September 30, 2025.  At that time, the Debtors will need to enter into a new premium financing agreement with respect to the Insurance Policies covered by the existing Premium Financing Agreement.

### IV.  The Insurance Obligations

12.  A majority of the Insurance Programs' premiums are covered by the Premium Finance Agreement.  For the Insurance Programs which are not financed, the Debtors pay a majority of the premiums directly to the Brokers, who, in turn, pay the applicable Insurer.  The Debtors pay American Bankers Insurance Company of Florida and National Indemnity Company directly for its Insurance Program.  For the avoidance of doubt, by this Motion, the Debtors seek authority to make payments directly to the Insurers, the Premium Financing Provider, or the Brokers, as applicable, on account of the Insurance Obligations.

13.  In 2024, the Debtors paid approximately $4,000,000 in Insurance Obligations, including Broker Fees and premium financing payments.  As mentioned above, the Debtors entered into a new premium financing agreement in late 2024 as well as a new D&O policy in 2025, resulting in an increase in Insurance Obligations for 2025.  While, pursuant to the policy terms, premiums under certain Insurance Policies will come due following the Petition Date, the Debtors are not aware of any past due Insurance Obligations.  However, in the event that a request for payment of additional amounts attributable to the period before the Petition Date is outstanding or is received by the Debtors in accordance with the Insurance Policies and related services, the Debtors request authority to make payments or effectuate setoffs on account of the prepetition amounts to the Brokers and Insurers.

---

[6]  The Insurance Policies covered under the PFA are noted in **Exhibit A**.  On November 26, 2024, RunItOneTime LLC entered into a supplemental PFA to add an additional Insurance Policy (the "***Supplemental PFA***").  Under the Supplemental PFA, the Debtors paid a downpayment of approximately $21,548 with an additional monthly payment of $21,548, for the total monthly payment of approximately $449,943.

14. The Debtors further request authority to renew, replace, modify, extend, or add to the existing Insurance Policies, including by paying any premiums that may be triggered during the Chapter 11 Cases with respect to "runoff" options contained in the Insurance Policies, or to obtain new insurance policies postpetition. The Debtors also request authority to enter into a new premium finance agreement to finance the payment of premiums under certain of the Insurance Policies or any new insurance policies obtained postpetition.

## BASIS FOR RELIEF

**I.   The Debtors Should Be Authorized to Maintain the Insurance Programs.**

15. Maintaining the Insurance Programs, on an ongoing and uninterrupted basis, is essential to the continued operation of the Debtors' businesses, and, in many instances, is required under the laws, regulations, and contracts that govern the Debtors' business operations, including the Guidelines for Debtors-in-Possession issued by the U.S. Trustee[7] (the "***U.S. Trustee Operating Guidelines***"). *See* U.S. Trustee Operating Guidelines § III (requiring maintenance of appropriate insurance coverage). Further, under section 1112(b)(4)(C) of the Bankruptcy Code, a "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).

16. The Debtors believe that the ordinary course maintenance of the Insurance Programs, including but not limited to, paying all of the Insurance Obligations, whether arising prepetition or postpetition, satisfying all postpetition commitments to the Insurers, the Premium Financing Provider, and the Brokers, and, otherwise, maintaining the Insurance Programs, without further order of the Court, is necessary and essential for the Debtors to achieve their objectives in the Chapter 11 Cases, especially, where, as here, the Insurers may seek to terminate the existing

---

[7]   "***U.S. Trustee***" means the Office of the United States Trustee for Region 7.

Insurance Policies or decline to renew such Insurance Policies in the future if the Debtors fail to pay the Insurance Obligations. The Debtors would then be required to obtain replacement policies on an expedited basis, likely at a significantly increased cost to their estates. Moreover, the Debtors could be exposed to substantial liability for damages resulting to persons and/or property of the Debtors and others absent insurance coverage, and such exposure could have an extremely negative impact on the Debtors' ability to successfully reorganize.

17. Moreover, the Debtors are legally and contractually obligated to maintain certain Insurance Policies, including under state laws requiring the Debtors to maintain workers' compensation insurance. Indeed, if the Debtors fail to maintain workers' compensation coverage for their employees, then applicable law may prohibit the Debtors from operating in those states.

18. Given this backdrop, it is essential to the Debtors' estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that the Debtors be permitted to maintain and continue making all payments required under their Insurance Programs. It is similarly critical that the Debtors have the authority to supplement, place, amend, extend, renew, or replace their Insurance Programs and the Premium Financing Agreement, as needed, in their business judgment, without further order of the Court.

## II. Payments Made to Maintain Insurance Programs Are Ordinary Course Transactions Authorized by Section 363(c)(1) of the Bankruptcy Code.

19. Payments made to maintain the Insurance Programs (including any payments of Insurance Obligations in connection therewith) fall within the ordinary course of business, and such payments are therefore authorized under section 363(c)(1) of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code provides that, "unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary

course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *see also Chaney v. Off. Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).

20. Here, maintaining the Insurance Programs and honoring obligations arising thereunder, including undertaking renewals or extensions of the Insurance Policies as they expire, and entering into new insurance arrangements are the type of ordinary course transactions contemplated by section 363(c)(1). Accordingly, section 363(c)(1) of the Bankruptcy Code authorizes continuation of the Insurance Programs in the ordinary course of business without the Court's approval.

### III. Entry into a New Premium Financing Agreement is Authorized by Section 364 of the Bankruptcy Code

21. Courts grant considerable deference to a debtor's business judgment in obtaining postpetition credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g.*, *In re Estrada*, No. 16-80003-G3-11, 2016 WL 745536, at *3 (Bankr. S.D. Tex. Feb. 24, 2016) ("In determining whether to approve a motion to obtain credit, courts generally permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("Courts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised

so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

22. The Debtors' current Premium Financing Agreement is set to expire on September 30, 2025. Consequently, the Debtors must enter into a new premium financing agreement to pay premiums for a majority of their Insurance Programs. Therefore, entering into a new premium financing agreement represents a prudent exercise of the Debtors' business judgment.

### IV. Maintenance of the Insurance Programs, Including Payment of the Insurance Obligations, Is a Sound Exercise of the Debtors' Business Judgment.

23. To the extent maintaining the Insurance Programs, including, but not limited to, payment of the Insurance Obligations, would constitute a use of property of the estate outside the ordinary course of business, maintaining the Insurance Programs should be authorized as a sound exercise of the Debtors' business judgment pursuant to section 363(b) of the Bankruptcy Code.

24. The Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons" (quotation and citation omitted)); *see also Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business." (internal citation omitted)); *ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard . . . [t]he business judgment standard in section 363 is flexible and encourages discretion."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted).

25. The Debtors' sound business judgment supports maintaining the Insurance Programs, including paying the Insurance Obligations, whether arising prepetition or postpetition, because the failure to maintain the Insurance Programs could result in: (i) the cancellation, or attempted cancellation, of the Insurance Policies; (ii) the Debtors' inability to obtain renewal or replacement of the Insurance Policies on terms that are as favorable as the current terms of such policies; and (iii) violation of the U.S. Trustee Operating Guidelines and/or the Bankruptcy Code, applicable laws and regulations, various contractual commitments, and the fiduciary duties of the Debtors as debtors-in-possession. Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates, and would unnecessarily jeopardize the success of the Debtors' reorganization. All of these risks heavily outweigh the cost of maintaining the Insurance Programs.

26. Accordingly, the Debtors should be authorized to maintain the Insurance Programs, including payment of the Insurance Obligations, whether arising prepetition or postpetition, under section 363(b) of the Bankruptcy Code.

**V.     Maintenance of the Insurance Programs, and Payment of the Insurance Obligations With Respect Thereto, Are Authorized Under Sections 105(a), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.**

27.     The Debtors, operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

28.     The court in *CoServ* also noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* at 498. *CoServ* provides a three-prong test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id*.

29.     In addition, the Debtors submit that the Court may grant the relief requested herein under the "doctrine of necessity" and to the extent applicable, section 105(a) of the Bankruptcy Code. *In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sept. 21, 2007) (acknowledging the existence of the doctrine of necessity). Section 105(a) of the Bankruptcy

Code empowers bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C § 105(a). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including operation business' going-concern value," on behalf of the debtors' creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

30. Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case where doing so is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Accordingly, the Bankruptcy Code authorizes the postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of a debtor's estates. For the reasons set forth above, and in light of the need for the Debtors to preserve the going concern value of their businesses, the relief requested herein is proper and should be granted.

31. The Debtors' use of estate funds to pay the Insurance Obligations is justified because such obligations are necessary costs of preserving the Debtors' estates. The Insurance Programs are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Policies were allowed to lapse or terminate. Such exposure could detrimentally impact the success of the Chapter 11 Cases.

Maintaining the Insurance Programs, including payment of the Insurance Obligations, whether arising prepetition or postpetition, satisfies each prong of the *CoServ* test. As described above, failing to maintain the Insurance Programs, including by failing to pay the Insurance Obligations, could result in cancellation of the Insurance Policies, in which case the Debtors would not only be in violation of the U.S. Trustee Operating Guidelines, various federal and state laws and

regulations, and various contractual obligations, but the Debtors may also be unable to find alternative insurance coverage or only find such alternatives at a much higher cost than the Debtors currently incur.  Nonpayment of any of the Insurance Obligations could also render the Debtors unable to renew the Insurance Policies and may render the Debtors unable to obtain replacements therefor with respect to future periods.  Therefore, the potential harms and economic disadvantages that would stem from the failure to maintain the Insurance Programs or to honor the Insurance Obligations are grossly disproportionate to the cost of maintaining the Insurance Programs and satisfying the Insurance Obligations.  Finally, the Debtors have assessed the alternatives to honoring the Insurance Obligations and have determined that no practical or legal alternative to payment of such obligations exists that would avoid significant disruption to the Debtors' business operations.

32. The Court should also authorize the Debtors to continue paying the Broker Fees in the ordinary course of business.  The Brokers are familiar with the Insurance Programs and Insurance Obligations.  The Debtors believe that any loss or interruption of the services provided by the Brokers would result in disruption to the Debtors' businesses.

33. For the foregoing reasons: (i) payment of the obligations in connection with Insurance Programs is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties-in-interest in these cases; and (ii) payment of the obligations in connection with the Insurance Programs must be authorized to permit the Debtors to satisfy their fiduciary duties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors must be authorized not only to continue the Insurance Programs but also to pay the Insurance Obligations (including, for the avoidance of doubt, the Brokers Fees) if doing so is necessary, in the Debtors' judgment, to avoid cancellation or interruption of insurance coverage.

Accordingly, the Court should authorize the Debtors to maintain their Insurance Programs and to pay all obligations, including prepetition obligations, related thereto.

### VI. Cause Exists to Authorize the Banks to Honor Checks and Electronic Fund Transfers to Satisfy the Insurance Obligations.

34. The Debtors further request that the Court authorize applicable banks and other financial institutions (collectively, the "***Banks***") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the Insurance Obligations (whether such checks or fund transfers were presented before or after the Petition Date), to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payment. The Debtors also seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or fund transfer requests on account of Insurance Obligations dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

### EMERGENCY CONSIDERATION

35. The Debtors respectfully request emergency consideration of this Motion pursuant to Local Rule 9013-1 and Bankruptcy Rule 6003, which authorize the Court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm. As described in detail above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### DEBTORS' COMPLIANCE WITH BANKRUPTCY RULE 6004(A) AND WAIVER OF BANKRUPTCY RULE 6004(A) AND (H)

36. With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request that the Court find that

notice of this Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. Thus, cause exists for the Court to find that notice of this Motion satisfies Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

37. Nothing in this Motion is intended to be nor shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) an admission that any lien satisfied pursuant to this Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); or (i) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

38. Notice of the Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Agent; (d) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (e) the Insurers, (f); the Brokers; (g) the Premium Financing Provider; (h) the Gaming Regulators; (i) the United States Attorney for the Southern District of Texas; (j) the Internal Revenue Service; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

39. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  July 14, 2025          Respectfully submitted,
        Houston, Texas

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
 ashleyharper@hunton.com
 pguffy@hunton.com

- and

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (*pro hac vice* pending)
Helena G. Tseregounis (*pro hac vice* pending)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
E-mail:  jeff.bjork@lw.com
 helena.tseregounis@lw.com
 nicholas.messana@lw.com

- and –

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
E-mail:  ray.schrock@lw.com
 andrew.sorkin@lw.com

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II
