**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

------------------------------------------------------------ x
: 
In re: : Chapter 11
: 
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
: 
Debtors.[1] : (Joint Administration Requested)
: 
------------------------------------------------------------ x

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING OR
DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION
INVOICES; (II) APPROVING THE DEBTORS' PROPOSED FORM OF
ADEQUATE ASSURANCE; (III) ESTABLISHING PROCEDURES FOR
RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL
ASSURANCE OF PAYMENT; AND (IV) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on July 15, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 15, 2025, at 1:00 p.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

The above-captioned debtors in possession (collectively, the "*Debtors*") respectfully state as follows in support of this motion (this "*Motion*"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "*Proposed Order*"), substantially in the form attached hereto: (a) approving the Debtors' proposed assurance of postpetition payment to the Utility Companies (as defined below); (b) approving the additional assurance procedures described below as the method for resolving disputes regarding adequate assurance of payment to Utility Companies; (c) prohibiting the Utility Companies from altering, refusing, or discontinuing services to, or discriminating against, the Debtors except as may be permitted by the proposed additional assurance procedures; and (d) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 366, and 1107(a) of title 11 of the United States Code (the "*Bankruptcy Code*"), rule 9013-1 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "*Bankruptcy Local Rules*"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

4. On the date hereof (the "*Petition Date*"), the Debtors each commenced with the Court a voluntary case (the "*Chapter 11 Cases*") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession

under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5. Contemporaneously with the filing of the Motion, the Debtors filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability. The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants. The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah to the Debtors' operating properties in Wendover, Nevada.

7. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

3

**I.  The Utility Services**

8. The Debtors incur utility expenses, including electricity, internet, telephone service, water, sewage, waste removal, and other similar services (the "*Utility Services*") from a number of different utility providers (the "*Utility Companies*"). The Debtors generally pay the Utility Companies on a monthly basis. A nonexclusive list of the Utility Companies and the Utility Services they provide is attached to this Motion as **Exhibit A** (the "*Utilities Services List*").[3]

**II.  The Proposed Additional Assurance Procedures**

9. The Debtors intend to pay all postpetition obligations owed to the Utility Companies in the ordinary course of business and in a timely manner. Nevertheless, to provide additional assurance of payment for future services to the Utility Companies, the Debtors propose to deposit approximately $383,650 (the "*Adequate Assurance Deposit*"), which is an amount equal to approximately 50% of the Debtors' historical average monthly cost (based on the 12-month period preceding the Petition Date) of Utility Services (less any existing deposits in favor of any Utility Provider that have not been applied to outstanding prepetition amounts), into a segregated account for the benefit of the Utility Companies (the "*Utility Deposit Account*").[4]

10. The Debtors propose that the Adequate Assurance Deposit may be adjusted by the Debtors to account for any of the following: (i) the extent to which the Adequate Assurance Deposit includes any amount on account of a company that the Debtors subsequently determine is not a "utility" within the meaning of section 366 of the Bankruptcy Code, (ii) the termination of a

---

[3]  For the avoidance of doubt, the presence or absence of the name of any party in **Exhibit A** shall not constitute an admission or stipulation of any kind by the Debtors, including that any party is or is not a "utility" within the meaning of section 366 of the Bankruptcy Code.

[4]  The Debtors proposed Utility Deposit Account is an account held by Debtor Maverick Colorado LLC at U.S. Bank, National Association with the last four digits (*4129). The Debtors' accounts are further described in the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Existing Cash Management System, (B) Maintain Existing Business Forms and Intercompany Arrangements, and (C) Continue Intercompany Transactions; and (II) Granting Related Relief*, filed contemporaneously herewith.

4

Utility Service by a Debtor regardless of any Additional Adequate Assurance Request (as defined below), (iii) the beginning of new Utility Services or to supplement the Utility Services List to include additional Utility Companies that are subject to section 366 of the Bankruptcy Code, (iv) the closure of a utility account with a Utility Company for which funds have been contributed for the Adequate Assurance Deposit, and (v) any other arrangements with respect to adequate assurance of payment reached by a Debtor with individual Utility Companies.  The balance of the Adequate Assurance Deposit will be maintained during the Chapter 11 Cases, subject to adjustment by the Debtors to account for the termination of existing, or beginning of new, Utility Services or entry into other arrangements with respect to adequate assurance of payment reached with individual Utility Companies.

11. The Adequate Assurance Deposit will be placed into the Utility Deposit Account within 20 days after the entry of the Proposed Order and will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Providers on the Utility Services List until the earliest of (a) reconciliation and payment by the Debtors of the Utility Company's final invoice following the Debtors' termination of Utility Services from such Utility Provider, (b) the effective date of any chapter 11 plan confirmed in the Chapter 11 Cases, or (c) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all the assets of the Debtors.  No liens will encumber the Adequate Assurance Deposit or the Utility Deposit Account.

12. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business and their proposed use of cash collateral and debtor-in-possession financing, constitutes sufficient adequate assurance to the Utility Companies.  If any Utility Company believes that additional assurance is

required, it may request the assurance pursuant to the following procedures (the "*Additional Assurance Procedures*"):

    (a)    Except as provided by the Additional Assurance Procedures, the Utility Companies are forbidden from (i) altering, refusing, or discontinuing services to, or discriminate against, the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit or due to the commencement of the Chapter 11 Cases; or (ii) requiring the Debtors to pay a deposit or other security in connection with the provision of postpetition Utility Services, other than the establishment of the Adequate Assurance Deposit.

    (b)    The Debtors shall serve on the Utility Companies copies of this Motion and the Proposed Order within two business days after the entry thereof.

    (c)    The Adequate Assurance Deposit shall be placed into the Utility Deposit Account within 20 days after the entry of the Proposed Order. The funds in the Utility Deposit Account shall constitute adequate assurance for each Utility Company in the amount set forth for such Utility Company in the column labeled "Adequate Assurance Deposit" on the Utility Services List.

    (d)    In the event that a Utility Company asserts that the Adequate Assurance Deposit is not adequate assurance of payment as contemplated by section 366(c)(2) of the Bankruptcy Code, that Utility Company shall serve a written request (an "*Additional Assurance Request*") for adequate assurance in addition to or in lieu of its rights in the Adequate Assurance Deposit. All Additional Assurance Requests shall be delivered by mail and email (where available) to each Utility Notice Party.[5]

    (e)    Any Additional Assurance Request must (i) set forth the location(s) for which Utility Services are provided; (ii) set forth the account number(s) for which Utility Services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposit(s); (iv) set forth what the Utility Company would accept as satisfactory adequate assurance of payment; and (v) provide an email

---

[5] The "*Utility Notice Parties*" are: (a) proposed counsel to the Debtors, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071-1560 (Attn: Jeff Bjork, Helena Tseregounis, and Nicholas Messana) (email: jeff.bjork@lw.com, helena.tseregounis@lw.com, and nicholas.messana@lw.com) and 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004-1304 (Attn: Andrew Sorkin) (email: andrew.sorkin@lw.com); (b) proposed co-counsel to the Debtors, Hunton Andrews Kurth LLP, 600 Travis St., Houston, TX 77002 (Attn: Timothy A. ("Tad" Davidson II, Ashley L. Harper, and Philip M. Guffy) (email: taddavidson@hunton.com, ashleyharper@hunton.com, and pguffy@hunton.com); (c) counsel to the Ad Hoc Group and Backstop Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attn: Ryan P. Dahl, Daniel Gwen, and Margaret Alden) (email: ryan.dahl@ropesgray.com, daniel.gwen@ropesgray.com, and margaret.alden@ropesgray.com); and (d) the Office of the United States Trustee for the Southern District of Texas (the "*U.S. Trustee*"), 515 Rusk Street, Suite 3516, Houston, TX 77002 (Attn: Jayson Ruff and Vianey Garza) (email: jayson.b.ruff@usdoj.gov and vianey.garza@usdoj.gov) (each, a "*Utility Notice Party*").

(f)     An Additional Assurance Request may be made no later than 20 days after entry of the Proposed Order. If a Utility Company does not file and timely serve an Additional Assurance Request, the Utility Company shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

(g)     Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall promptly negotiate with the Utility Company to resolve the Additional Assurance Request.

(h)     Without further order of the Court or notice to the Court, the Debtors may resolve an Additional Assurance Request by entering into agreements granting additional assurance to the requesting Utility Company if the Debtors agree to alternative provisions with the Utility Company; *provided however*, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in these cases and the U.S. Trustee upon request; *provided, further*, that to the extent the Debtors provide a Utility Company with additional adequate assurance of payment, such Utility Company shall promptly return or release, as applicable, such additional adequate assurance of payment on the earliest of (a) reconciliation and payment by the Debtors of the Utility Company's final invoice following the Debtors' termination of Utility Services from such Utility Company, (b) the effective date of any chapter 11 plan confirmed in the Chapter 11 Cases, (c) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all the assets of the Debtors, or (d) the dismissal of the Chapter 11 Cases.

(i)     If the Debtors are not able to reach a resolution with the Utility Company within ten days of the Debtors' receipt of an Additional Assurance Request (or such later date as agreed to by the Debtors and the requesting Utility Company), the Debtors shall request a hearing (the "**Determination Hearing**") before the Court to determine the adequacy of assurance of payment with respect to the particular Utility Company pursuant to section 366(c)(3) of the Bankruptcy Code.

(j)     The Determination Hearing shall be an evidentiary hearing at which the Court shall determine whether the Adequate Assurance Deposit and the additional assurance of payment requested by the Utility Company should be modified pursuant to section 366(c)(3)(A) of the Bankruptcy Code. Pending resolution of any Additional Adequate Assurance Request, the

Utility Company making such request shall be prohibited from altering, refusing, or discontinuing service to the Debtors, or from discriminating against the Debtors with respect to the provision of Utility Services, on account of unpaid charges for prepetition services, the filing of the Chapter 11 Cases, or any objection to the adequacy of the Additional Adequate Assurance Procedures.

**III.    Subsequently Modifications of the Utility Services List**

13.    Although the Debtors have made an extensive and good-faith effort to identify all of the Utility Companies that provide Utility Services on the Utility Services List, certain Utility Companies may not be listed therein. Accordingly, the Debtors reserve the right to amend the Utility Services List to add or delete any Utility Company. To the extent that the Debtors subsequently identify any additional Utility Companies that provide Utility Services to them (a "***Subsequently Identified Utility Company***"), the Debtors propose to add such Subsequently Identified Utility Companies to the Utility Services List and for the terms of any orders entered by the Court with respect to this Motion apply to any of these Utility Companies.

14.    The Debtors shall serve a copy of the Proposed Order as entered upon any Subsequently Identified Utility Company added to the Utility Services List within 2 business days of such addition. Upon such amendment, any Subsequently Identified Utility Company that is added to the Utility Services List will have the right to object to such inclusion within 14 days after it receives notice of this Motion and the Proposed Order. If no objection is timely received by the Debtors, the Debtors request that the provisions of the Proposed Order apply to the Subsequently Identified Utility Company. Should any objection be timely made and received by the Debtors, such Subsequently Identified Utility Company shall be permitted to make an Additional Assurance Request in accordance with the Adequate Assurance Procedures set forth herein. The Debtors further reserve the right to assert or determine that any of the entities now or hereafter listed on the Utility Services List is not a "utility" within the meaning of section 366(a) of the Bankruptcy Code.

15. To the extent necessary, the Debtors will increase the Adequate Assurance Deposit by 50% of the historical average monthly amount paid to any Subsequently Identified Utility Companies. Further, the Debtors will withdraw from the Adequate Assurance Deposit any amounts corresponding to Utility Companies whose Utility Services to the Debtors are terminated or that otherwise are removed from the Utility Services List.

## BASIS FOR RELIEF

16. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

17. The relief requested in this Motion will help ensure the continuation of the Debtors' business at this critical juncture as they transition into chapter 11. The relief requested also provides the Utility Providers with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Providers in a disorganized manner when the Debtors' efforts should be more productively focused on continuing to operate and restructure their businesses for the benefit of all parties in interest.

### A.   The Proposed Adequate Assurance Is Sufficient

18. Section 366 of the Bankruptcy Code is designed to serve the dual purposes of protecting a debtor from being cut off from utility services and providing utility companies with "adequate assurance" that the debtor will be able to pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1977), *as reprinted in* 1978 U.S.C.C.A.N 5963, 6306. To that end, pursuant to section 366(c) of the Bankruptcy Code, during the first 30 days of a chapter 11 case, a utility provider may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on

9

the basis of the commencement of a chapter 11 case or unpaid prepetition amounts, but after the first 30 days, a utility provider may alter, refuse, or discontinue service if a debtor does not provide adequate "assurance of payment" for postpetition utility services in satisfactory form. *See* 11 U.S.C. § 366(c).

19. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A). Section 366(c)(1)(B) of the Bankruptcy Code expressly excludes from such definition an administrative expense priority for a utility's claim. *See* § 366(c)(1)(B). In addition, section 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts are not to consider when evaluating whether a proposed adequate assurance payment is in fact adequate. *See* § 366(c)(3)(B). These factors include (i) the absence of security before the petition date, (ii) the debtor's history of timely payments, and (iii) the availability of an administrative expense priority.

20. Although section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting such section, did not divest the Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Provider. *See* 11 U.S.C. § 366(c). Specifically, section 366(c)(3)(A) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment." 11 U.S.C. § 366(c)(3)(A). Thus, there is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility provider should be

nominal or even zero. *See, e.g.*, *In re SQLC Senior Living Ctr. at Corpus Christi, Inc.*, Case No. 19-20063 (DRJ) (Bankr. S.D. Tex. Feb. 12, 2019) [Docket No. 40]; *see also In re Pac-West Telecomm, Inc.*, Case No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) [Docket No. 39] (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges). Prior to the enactment of section 366(c) of the Bankruptcy Code, courts frequently made such rulings pursuant to section 366(b) of the Bankruptcy Code. *See Va. Elec. & Power Co. v. Caldor, Inc-N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

21. Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is the bankruptcy court—*not* the utility provider—that is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the relationship between the debtor and the utility. *See, e.g.*, *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *see, e.g.*, *In re Heard*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that since the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance").

22. Indeed, section 366 of the Bankruptcy Code only requires that assurance of payment be "adequate," and courts construing section 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997); *see also In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.").

23. Further, courts consider what is "need[ed] of the utility for assurance, and... require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec.*, 117 F.3d at 650. Thus, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (citations omitted).

24. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ability to meet obligations as they come due in the ordinary course combined with their proposed use of cash collateral and debtor-in-possession financing provide assurance of the Debtors' payment of their future obligations to the Utility Providers. To the best of the Debtors' knowledge, there are no material defaults or arrearages for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of the Chapter 11 Cases.

Accordingly, the Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations to the Utility Providers. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *see also In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it.").

### B. The Adequate Assurance Procedures Are Reasonable and Appropriate

25. The Court has the power to approve these Adequate Assurance Procedures pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Utility Services continue while providing a streamlined process for Utility Providers to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance. If a Utility Provider does not believe the Proposed Adequate Assurance is "satisfactory," such Utility Provider may file an objection or an Additional Assurance Request pursuant to the Adequate Assurance Procedures described above.

26. The Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366, and the Court has regularly approved similar procedures in comparable complex Chapter 11 Cases. Accordingly, the Proposed Adequate Assurance Deposit and the Adequate Assurance Procedures are necessary, appropriate,

and in the best interests of the Debtors' estates and all other parties-in-interest in the Chapter 11 Cases. Accordingly, the Court should grant the relief requested herein in full.

## EMERGENCY CONSIDERATION

27. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which authorize the Court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm. As described in detail above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## DEBTORS' COMPLIANCE WITH BANKRUPTCY RULE 6004(A) AND WAIVER OF BANKRUPTCY RULE 6004(A) AND (H)

28. With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. Thus, cause exists for the Court to find that notice of this Motion satisfies Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

29. Nothing in this Motion is intended to be nor shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights

under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) an admission that any lien satisfied pursuant to this Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); or (i) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, nor shall it be construed as, an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

**NOTICE**

30. Notice of the Motion will be given to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Term Loan Agent; (d) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (e) the Utility Companies; (f) the Gaming Regulators; (g) the United States Attorney for the Southern District of Texas; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

31. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and

Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: July 14, 2025
Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
ashleyharper@hunton.com
pguffy@hunton.com]

- and –

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (*pro hac vice* pending)
Helena G. Tseregounis (*pro hac vice* pending)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
E-mail: jeff.bjork@lw.com
helena.tseregounis@lw.com
nicholas.messana@lw.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
E-mail: ray.schrock@lw.com
andrew.sorkin@lw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on July 14, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

<u>/s/ Timothy A. ("Tad") Davidson II</u><br>
Timothy A. ("Tad") Davidson II