**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---------------------------------------------------------- x
:
In re: : Chapter 11
:
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
:
Debtors.[1] : (Jointly Administered)
:
---------------------------------------------------------- x

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO ENGAGE MARNELL GAMING MANAGEMENT**

> **Emergency relief has been requested. Relief is requested not later than 12:00 p.m. (prevailing Central Time) on July 18, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 18, 2025, at 12:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate either in person or by audio/video communication.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this motion (this "***Motion***"):

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto, authorizing the Debtors to engage Marnell Gaming Management or its affiliates ("***Marnell***"), effective as of the Petition Date, to provide essential consulting, staffing, operations management, and related services in connection with the Debtors' gaming operations.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

**BACKGROUND**

4. On July 14, 2025 (the "***Petition Date***"), the Debtors each commenced with the Court a voluntary case (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability. The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants. The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah to the Debtors' operating properties in Wendover, Nevada.

7. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "***First Day Declaration***"), filed on the Petition Date and incorporated herein by reference.[2]

## ENGAGEMENT OF MARNELL

8. The Debtors have faced significant competitive headwinds and operational misalignments in the last few years, have entered into chapter 11 with strained liquidity, and must work quickly to achieve stability and a pathway to maximize the value of their assets and operations. The Debtors accordingly seek to immediately engage Marnell to serve as an independent consultant (or, subject to regulatory approvals, employment as a "key manager", "key

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

employee", "service supplier" or other appropriate denomination under the applicable gaming laws of the various jurisdictions) to help supplement limited operational personnel, identify cost savings, and stabilize operations, through the provision of consulting, management and development services across the Debtors' gaming assets.

9. The Debtors believe that Marnell is well-qualified to assist in addressing these challenges in a value-maximizing manner. Marnell's management and consulting services span decades in the hospitality and casino gaming industries, with a portfolio across several states where the Debtors operate and elsewhere, including Valley View Hotel & Casino, Spotlight 29 Casino, Tortoise Rock, Chin'an Gaming Hall, and tribal casinos in several states. Such services comprise hotel operations, database marketing, gaming operations, hotel operations, food & beverage development and management, entertainment booking and management, finance and accounting, IT implementation and management, master planning, and slot machine leasing. Marnell also has more than 25 years owning and operating casinos, with a portfolio that includes the Rio Hotel & Casino, Saddle West Hotel, Casino & RV Resort, Colorado Belle Hotel and Casino, Edgewater Hotel & Casino, M Resort Spa Casino, and Nugget Casino Resort. Gaming companies like the Debtors routinely engage consultants like Marnell to improve or otherwise refine their gaming and non-gaming operations.

10. The Debtors are seeking to engage Marnell here to, among other things, provide essential supplemental staffing, operations management, and related consulting services designed to maximize the value of the Debtors' estates as the Debtors work to formulate a comprehensive restructuring strategy. Marnell's services would more specifically include consulting (or, subject to a property's or jurisdiction's needs in relation to stabilizing the business and subject to Court approval, employment as a key manager) with respect to:

- review and advisement on annual operating plans and budgets;

- review and advisement on employee staffing;

- strategic and operational advisement concerning the Debtors' gaming operations, marketing, business planning, support, guidance, and policy-making;

- advisement on matters pertaining to capital expenditures and to expansion or improvement of the Debtors' gaming facilities;

- review and advisement on IT systems and implementation;

- advisement concerning long term business and financial planning strategy for the Debtors' gaming operations; and

- such other services and assistance as may be mutually agreed by the parties acting reasonably, from time to time.

In addition to the above, if the Prepetition Lenders or another third party are determined to be the successful bidder in an auction for certain Debtor assets, Marnell may serve, subject to Court approval, as the successor operator for such assets, subject to securing the appropriate regulatory approvals. Marnell's services will always be subject to applicable gaming laws and regulations.

11. As compensation for providing the above services, following fulsome arm's-length negotiation, Marnell has agreed to receive $500,000 per month in fees (pro-rated for the month of July), plus reasonable and documented expenses not to exceed $150,000 per month. The Debtors believe that Marnell's fees are reasonable and in line with fees charged by other gaming consultants in the market, and the Debtors further believe that the value to be provided by Marnell will far exceed the cost of Marnell's services. The DIP Lenders are supportive of the Debtors' engagement of Marnell, including the amount of such fees and expenses.

12. Marnell will work closely with the Debtors to improve operational profitability and stabilize operations. The Debtors believe that Marnell is necessary to maximize value in the Chapter 11 Cases and that employment of Marnell will inure to the benefit of all parties in interest.

13. Additionally, the Debtors believe that Marnell will be well-equipped to assist the Debtors in meeting upcoming DIP milestones. Specifically, the Debtors have a 21-day milestone under their DIP Facility requiring them to have reached agreement with the "Required Backstop Parties" on the terms of an "Acceptable Restructuring." Marnell has extensive experience in the gaming industry, is a "known entity" to key gaming regulators in the jurisdictions in which the Debtors operate, is familiar with the Debtors' assets and operations as a result of substantial prepetition preparatory diligence work, and, based on its institutional knowledge and direct knowledge of the Debtors, is ready to immediately assist. Marnell will work closely with the Debtors to improve operational profitability and help them to formulate an Acceptable Restructuring. The Debtors believe that Marnell is necessary to maximize value in the Chapter 11 Cases and engagement of Marnell will inure to the benefit of all parties in interest.

## BASIS FOR RELIEF

14. Section 363(b)(1) authorizes courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); s*ee also In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances."). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons. *See, e.g., In re BNP Petrol. Corp.*, 642 F. App'x 429, 434-35 (5th Cir. 2016) (citing *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").

15. Where a debtor has articulated a valid business justification for a proposed transaction, courts generally apply the business judgment rule in evaluating such transaction. *See In re Cont'l Airlines, Inc.*, 780 F.2d at 1226 (holding that section 363(b) requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (applying *Continental* to require "articulated business justification" for section 363 transaction); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) ("a § 363 application requires a showing that there is a 'good business reason to grant such an application.'") (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

16. The Debtors have determined, in their business judgment, that engaging Marnell is in the best interests of their estates. As discussed above, the Debtors believe Marnell will provide valuable services that will enhance the value of the Debtors' assets and help them to formulate an Acceptable Restructuring. Further, the DIP Lenders are supportive of the Debtors' employment of Marnell. Marnell's fees are reasonable and commensurate with the fees charged by other gaming consultants in the market. Moreover, the Debtors believe that immediate approval of Marnell's engagement is necessary considering the Acceptable Restructuring milestone under the DIP Facility. Accordingly, the Debtors believe that approval of the Motion is appropriate under section 363(b) of the Bankruptcy Code.

**EMERGENCY CONSIDERATION**

17. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which authorize the Court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm. The Debtors require Marnell to begin work

as soon as possible so that they can have Marnell's assistance in formulating an "Acceptable Restructuring" within the next 21 days and so that they can immediately begin to realize the anticipated costs savings and revenue increases from Marnell's services. If the Debtors are unable to meet the milestone, they are likely to suffer irreparable harm as the DIP Facility will be in default, and the DIP Lenders may be authorized to exercise remedies thereunder. Additionally, the Debtors would like Marnell to be in place prior to beginning the marketing process for their assets so that potential buyers will be aware of Marnell's potential availability as a back-up operator. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## NOTICE

18. Notice of the Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Term Loan Agent; (d) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (e) the Gaming Regulators; (g) the United States Attorney for the Southern District of Texas; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

19. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: July 17, 2025
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com]

- and –

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
E-mail: jeff.bjork@lw.com
       helena.tseregounis@lw.com
       nicholas.messana@lw.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
E-mail: ray.schrock@lw.com
       andrew.sorkin@lw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

    I certify that on July 17, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

<em><u>/s/ Timothy A. ("Tad") Davidson II</u></em><br>
Timothy A. ("Tad") Davidson II