IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
                                  :

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| RUNITONETIME LLC, *et al.*, | : Case No. 25-90191 (ARP) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |

------------------------------------------------------------ x

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF (A) CRITICAL VENDORS, (B) 503(B)(9) CLAIMANTS,
(C) LIEN CLAIMANTS, AND (D) PACA/PASA CLAIMANTS; (II) CONFIRMING
ADMINISTRATIVE EXPENSE PRIORITY; (III) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED
CHECKS AND TRANSFERS; AND (IV) GRANTING RELATED RELIEF**
[Relates to Docket No. 9]

Upon the emergency motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "***Final Order***") (i) authorizing, but not directing, the Debtors to pay the prepetition Essential Claims in the ordinary course of business, (ii) confirming the administrative priority of the Outstanding Orders, (iii) authorizing financial institutions to honor and process related checks and transfers, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion, the First Day Declaration, and the Interim Order entered on July 15, 2025; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay, or cause to be paid, all or part of, and discharge, on a case-by-case basis, the undisputed prepetition Essential Claims described in the Motion (including, but not limited to, the Critical Vendor Claims, 503(b)(9) Claims, Lien Claims, and PACA/PASA Claims) in the ordinary course of business and consistent with their past practices, *provided, however* that payments to Critical Vendors pursuant to this Final Order shall not in the aggregate exceed $7.5 million (inclusive of amounts paid to the Essential Creditors pursuant to the Interim Order), without further order of this Court.

2. The Debtors may require, as a condition to receiving payment on account of any Essential Claims set forth above, that Essential Creditors (a) agree to continue, or recommence, providing goods or services to the Debtors on terms that are as good as or better than the Customary Trade Terms during the pendency of the Chapter 11 Cases and (b) agree that they shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide such goods or services to the Debtors during the course of the Chapter 11 Cases. The Debtors may require, in their sole discretion, that the Customary Trade Terms be made in writing, including by

email or through a Trade Agreement, as condition to payment. If, after receiving a payment under this Final Order, an Essential Creditor ceases to provide Customary Trade Terms, then the Debtors may, in consultation with the Backstop Parties and the Official Committee of Unsecured Creditors (the "Committee"), seek an order from the Court to (a) determine that any payment on a prepetition claim received by such Essential Creditor be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods, or (b) deem such payment to apply instead to any postpetition amount that may be owing to such Essential Creditor.

3. The Debtors are authorized, but not directed, to undertake appropriate efforts to cause the Essential Creditors to enter into a Trade Agreement with the Debtors substantially similar to the form attached as **Exhibit A** to the Motion. The Debtors reserve the right to require additional favorable trade terms with any Essential Creditor as a condition to payment of any Essential Claim. If a creditor is paid on account of a prepetition obligation, then the Committee shall be provided with copies of any Trade Agreement or written verifications related to such Customary Trade Terms and, as applicable.

4. If an Essential Creditor, whether under a Trade Agreement or otherwise, refuses to supply goods or services to the Debtors on Customary Trade Terms following receipt of payment on its Essential Claims or otherwise fails to comply with any Trade Agreement entered into between such Essential Creditor and the Debtors, then the Debtors, reserve the right to take any and all actions necessary to return the parties to the positions they held immediately prior to entry of this Final Order with respect to all prepetition claims, including but not limited to: (a) declaring that any Trade Agreement between the Debtors and such Essential Creditor is or should be terminated; (b) in consultation with the Backstop Parties and the Committee, seeking

entry of an order declaring that payments made to such Essential Creditor on account of its Essential Claims shall be deemed to have been made in payment of then-outstanding (or subsequently accruing) postpetition claims of such Essential Creditor; and (c) in consultation with the Backstop Parties and the Committee, seeking entry of an order directing such Essential Creditor to disgorge any payment made to such Essential Creditor on account of its Essential Claims to the extent that such payments exceed the value of the postpetition claims of such Essential Creditor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defenses. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Essential Creditor. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such payment recipient with a copy of this Final Order (unless previously provided).

5. Notwithstanding the foregoing paragraph, the Debtors may reinstate a Trade Agreement if the underlying default thereunder is fully cured by the Essential Creditor following the Debtors' notification to the Essential Creditor that such default has occurred, or the Debtors reach a favorable alternative agreement with the Essential Creditor.

6. The amount of each Essential Claim set forth in connection with a Trade Agreement shall be used only for purposes of determining the relevant Essential Claim for purposes of this Final Order and shall not be deemed a claim allowed by the Court, and the rights of all interested parties (including the Committee) to object to the allowance of such claim shall be fully preserved. Further, an Essential Creditor's receipt of partial payment of its asserted prepetition claim(s) shall not excuse such Essential Creditor from being required to file a proof of claim in these Chapter 11 Cases or any successor case(s).

7. Before making a payment to an Essential Creditor under this Final Order, the Debtors may, in their discretion, settle all or some of the prepetition claims of such Essential Creditor for less than their face amount without further notice or hearing.

8. Notwithstanding anything in this Final Order to the contrary, the Debtors are not authorized to pay claims of "insider[s]" (as that term is defined in section 101(31) of the Bankruptcy Code), any affiliate of an insider of the Debtors, employees, or "professional persons" (as that phrase appears in section 327(a) of the Bankruptcy Code) pursuant to this Final Order. Nothing herein shall impair or prejudice the rights of the United States Trustee for the Southern District of Texas ("*U.S. Trustee*"), the Committee, or any other party in interest to object to and seek the return of any payment made pursuant to this Final Order to an insider of the Debtors or any affiliate of an insider of the Debtors, and all rights of the Debtors and the relevant insider are reserved to respond to any such objection. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practicable, provide five (5) business days' advance notice to, and opportunity to object by the U.S. Trustee and the Committee; provided, that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

9. The Debtors are authorized, but not directed, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Outstanding Orders consistent with their customary past practice; *provided*, *however*, that the Debtors retain all rights to cancel any Outstanding Orders in the exercise of their business judgment including, but not limited to, Outstanding Orders related to business segments that the Debtors and their advisors determine to exit as part of the Debtors' chapter 11 objectives.

10. The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date.  On the first business day on or following the 15th day of each month and ending upon entry of an order confirming a plan or dismissing or converting the Chapter 11 Cases, the Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the Ad Hoc Group and Backstop Parties, and the Committee covering all payments made pursuant to this Order during the prior month.  The Debtors shall provide the advisors to the Committee with reasonable access to the Debtors and their advisors with respect to such matrix/schedule, and the rights of the Committee to seek additional disclosures from the Debtors in connection with any payments made or to be made pursuant to the Interim Order or this Final Order are expressly reserved and shall not be prejudiced by entry of the Interim Order or this Final Order.

11. The Debtors will ensure that the payments made pursuant to this Final Order are reflected on their books and records such that they are identifiable as payments made on account of prepetition claims.

12. Nothing in the Motion or this Final Order, nor the Debtors' implementation of the relief granted in this Final Order, shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Essential Creditors, including the Debtors' rights to (a) cancel a purchase order, (b) decline the acceptance of goods and/or services, (c) return any defective, nonconforming or unacceptable goods, or (d) contest the amount of any invoice or claim on any grounds.

13. The Banks are further authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payments. The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

14. The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

15. Nothing in the Motion or this Final Order, or any payment made pursuant to this Final Order, is intended to be or shall be deemed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; (h) an admission that any lien satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); or (i) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.  Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

16. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

17. Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

18. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

19. The Debtors are further authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order.

20. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Signed: _____, 2025            _____
                                          UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

**Trade Agreement**

[_____], 2025

TO: [Critical Vendor]
[Name]
[Address]

## **Trade Agreement**

As you may be aware, on July 14, 2025 (the "***Petition Date***"), RunItOneTime LLC and certain of its subsidiaries and affiliates (the "***Debtors***") filed voluntary petitions (the "***Bankruptcy Cases***") under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***").  On the Petition Date, the Debtors requested the Bankruptcy Court's authority to pay certain vendors and service providers in recognition of the importance of our relationship with such vendors and service providers.  On [_____], 2025, the Bankruptcy Court entered an order [Docket No. [ ● ]] (the "***Order***") authorizing the Debtors to, under certain conditions, pay in the ordinary course prepetition claims of certain vendors and service providers that agree to be bound by the terms of the Order and to the terms set forth below.  A copy of the Order is enclosed.

To receive payment in the ordinary course on pre-bankruptcy claims, the Debtors require you to agree to supply goods and/or services to the Debtors based on "Customary Trade Terms." Customary Trade Terms are trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date or, if more favorable, that existed within the six-month period prior to the Petition Date.

For purposes of administration of this trade program as authorized by the Bankruptcy Court (the "***Trade Payment Program***"), the Debtors and you agree as follows:

1. The estimated balance of your prepetition claim (accounting for any setoffs, credits or discounts) (the "***Prepetition Claim***") is $[_____].  Following execution of this Trade Agreement, and in accordance with <u>Schedule 1</u> hereto (the "***Payment Schedule***") the Debtors shall pay you $[_____] on account of the Prepetition Claim (the "***Vendor Payment***") (without interest, penalties, or other charges), and such Vendor Payment shall reduce the Prepetition Claim dollar for dollar.  The Vendor Payment shall be applied first to any portion of the Prepetition Claim that is (a) entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code (as defined in the Order) or (b) secured by statutory or other liens, and then to the remainder of the Prepetition Claim.

2. The Prepetition Claim will be paid in accordance with the Payment Schedule.

3. The open trade balance or credit line you will extend shall be on normal and customary terms on an historical basis for the period prior to the Petition Date or, if more favorable, within the six-month period prior to the Petition Date.

4.  As long as the Vendor Payment is made in accordance with this Trade Agreement and this Trade Agreement is not terminated by either party:

2

    a.    In consideration for the payment described herein, you agree not to file or otherwise assert, directly or indirectly, against any or all of the Debtors, their estates, or any of its assets or property (real or personal), any lien (a "**_Lien_**"), a claim for reclamation (a "**_Reclamation Claim_**"), or a claim under section 503(b)(9) of the Bankruptcy Code, regardless of the statute or other legal authority upon which such Lien Claim, Reclamation Claim, or a claim under section 503(b)(9) of the Bankruptcy Code may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date.

    b.    You shall not require a lump-sum payment upon the effective date of any chapter 11 plan confirmed in the Bankruptcy Cases on account of any outstanding administrative claims that you may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. You agree that such claims will be paid in the ordinary course of business after confirmation of any chapter 11 plan pursuant to the Customary Trade Terms then in effect.

5. You agree that, as a condition to receiving the Vendor Payment, the Debtors are authorized, in accordance with their prepetition practice, to exercise their set off rights, including to set off from payments to you any amounts owed to the Debtors for damages incurred in transit or storage

6. You will hereafter extend to the Debtors all Customary Trade Terms, which are:

**[ADD INDIVIDUALIZED SET OF CUSTOMARY TRADE/SERVICE TERMS OR ATTACH/CROSS-REFERENCE TERM FROM EXISTING AGREEMENT]**

Payment of your Prepetition Claim in the manner set forth in the Order may occur upon execution of this Trade Agreement by a duly authorized representative of your company and the return of this Trade Agreement to the Debtors. Your execution of this Trade Agreement and the return of the same to the Debtors constitute an agreement by you and the Debtors:

(a) to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Prepetition Claim set forth above;

(b) that, for at least the pendency of the Bankruptcy Cases, you will continue to supply the Debtors with goods and/or services under the Customary Trade Terms and any terms set forth herein and that the Debtors will pay for such goods and/or services in accordance with the terms hereof;

(c) that, in addition to any other obligations of confidentiality between you and the Debtors, you agree to hold in confidence and not disclose to any party: (i) this Trade Agreement; (ii) any and all payments made by the Debtors pursuant to this Trade Agreement; (iii) the terms of payment set forth herein; and (iv) the Customary Trade Terms (collectively, the "**_Confidential Information_**"), except that you may disclose this Trade Agreement to your attorneys, insurers, auditors, lenders, and

3

      professionals, each of whom shall maintain the confidentiality of this Trade Agreement; *provided* that, if any party seeks to compel your disclosure of any or all of the Confidential Information, through judicial action or otherwise, or if you intends to disclose any or all of the Confidential Information, you shall promptly provide the Debtors with written notice so that the Debtors may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further,* that, if such remedy is not obtained, you shall furnish only such information as you are legally required to provide;

(d)    that you have reviewed the terms and provisions of the Order and acknowledge that you are bound by such terms;

(e)    that if either the Trade Payment Program or your participation therein terminates as provided in the Order, subject to further order of the Bankruptcy Court, any payments received by you on account of your Prepetition Claim may be deemed to have been in payment of postpetition obligations owed to you, and the Debtors may take any and all appropriate steps to cause you to repay payments made to you on account of your Prepetition Claim to the extent that such payments exceed the postpetition amounts then owing to you, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense;

(f)    if the Debtors fail to pay (i) the Vendor Payment when due or (ii) for goods or services delivered postpetition in accordance with paragraph 6 of this Trade Agreement, and the Debtors fail to cure such default within five (5) business days of written notice to the Debtors detailing the Debtors' default, (a) you may terminate this Trade Agreement, (b) you shall retain the Vendor Payment paid by the Debtors to you, and (c) notwithstanding the passage of any bar date for filing a proof of claim, you are authorized to file a proof of claim in the amount of the Prepetition Claim less any amount of the Vendor Payment paid by the Debtors to you. The parties reserve all rights in connection with such claim; and

(g)    that the Debtors reserve all of their rights with respect to such claims.

    The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order and/or your participation in the Trade Payment Program shall be determined exclusively by the Bankruptcy Court.

5

      Please indicate your agreement to the terms hereof by returning a signed copy of this Trade Agreement to [Name] at (\_\_)_____ or [Name] at (\_\_\_)_____.

Sincerely,

[Debtor Party]

By:
Its:

Agreed and Accepted by:
[Name of Critical Vendor/Service Provider]
By:
Its:
Dated:

## Schedule 1

Payment Schedule

Week 1:     $_____ by _____, 2025

Week 2:     $_____ by _____, 2025

Week 3:     $_____ by _____, 2025

Week 4:     $_____ by _____, 2025

Week 5:     $_____ by _____, 2025

Week 6:     $_____ by _____, 2025

Week 7:     $_____ by _____, 2025

Week 8:     $_____ by _____, 2025

Week 9:     $_____ by _____, 2025

Week 10:    $_____ by _____, 2025

Week 11:    $_____ by _____, 2025

Week 12:    $_____ by _____, 2025