IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
: 
In re: : Chapter 11
:
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
:
Debtors.[1] : (Jointly Administered)
:
------------------------------------------------------------ x

**DEBTORS' MOTION FOR
AUTHORITY TO RETAIN AND COMPENSATE
PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this motion (this "***Motion***"):

**RELIEF REQUESTED**

1. The Debtors hereby seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto, authorizing the Debtors to retain and compensate professionals that they use in the ordinary course of business (the "***Ordinary Course Professionals***"). A non-exhaustive list of (i) each of the Debtors' Ordinary Course Professionals as of the Petition Date and (ii) a

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

description of the services provided to the Debtors by each of the Ordinary Course Professionals is attached to the Order as **Exhibit A** (the "*Ordinary Course Professional Schedule*").

## JURISDICTION AND VENUE

2.  The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory and legal predicates for the relief requested herein are sections 105(a), 327, 328, and 330 of title 11 of the United States Code (the "*Bankruptcy Code*"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "*Bankruptcy Local Rules*"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

4.  On July 14, 2025 (the "*Petition Date*"), the Debtors each commenced with the a voluntary case (the "*Chapter 11 Cases*") under chapter 11 of the Bankruptcy Code in the Court.

5.  The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On July 25, 2025, the Office of the United States Trustee for the Southern District of Texas (the "*U.S. Trustee*") appointed an official committee of unsecured creditors (the "*Committee*") [Docket No. 81]. No trustee or examiner has been appointed in the Chapter 11 Cases.

6.  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

7. The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability. The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants. The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah to the Debtors' operating properties in Wendover, Nevada.

8. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "**First Day Declaration**"), filed on the Petition Date and incorporated herein by reference.[2]

9. Before the Petition Date, the Debtors employed various Ordinary Course Professionals, including attorneys and consultants, in the ordinary course of business to provide services relating to, among other things, regulatory matters, litigation, various other legal services, and other matters requiring the advice and assistance of professionals. The Debtors believe that the postpetition services of such Ordinary Course Professionals are necessary for the continued

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

3

operation of the Debtors' business, as such Ordinary Course Professionals have a great deal of knowledge, expertise, and familiarity with the Debtors and their operations.

## THE COMPENSATION PROCEDURES

10. The Debtors request the following procedures for the retention and compensation of the Ordinary Course Professionals:

    a. Within thirty (30) days of the date on which (i) the Order is entered or (ii) any Ordinary Course Professional begins work for the Debtors, whichever is later, the Debtors shall file a declaration of disinterestedness (the "***Declaration of Disinterestedness***") on the docket of the Chapter 11 Cases, substantially in the form attached to the proposed Order as **Exhibit B**, by which such Ordinary Course Professional will certify that it does not represent or hold any interest adverse to the Debtors or their estates with respect to the matter on which the professional is to be employed.

    b. Any party in interest shall have ten (10) days after filing of the Declaration of Disinterestedness (the "***Objection Deadline***") to file an objection on the docket of the Chapter 11 Cases to the retention, employment, or compensation of the Ordinary Course Professional. The objecting party shall serve any such objection upon the Debtors' counsel and the respective Ordinary Course Professional on or before the Objection Deadline. If an objection is asserted by the Objection Deadline and such objection cannot be resolved, the Debtors shall schedule the matter for hearing before the Court.

    c. If no objections are filed and served by the Objection Deadline, the retention, employment, and compensation of the Ordinary Course Professional shall be deemed approved by the Court without the need for a hearing or further order and the Debtors shall be authorized to pay such Ordinary Course Professional as set forth below.

    d. The Debtors reserve the right to modify the Ordinary Course Professional Schedule as necessary to add or remove Ordinary Course Professionals, from time to time, in their sole discretion. If an Ordinary Course Professional is added to the Ordinary Course Professional Schedule, the Debtors will file a notice on the docket of the Chapter 11 Cases listing the additional Ordinary Course Professionals that the Debtors intend to employ (each, an "***Ordinary Course Professional Notice***"). Additionally, the Debtors will file a Declaration of Disinterestedness on the docket of the Chapter 11 Cases for each additional Ordinary Course Professional, and the same objection procedures described above shall apply.

    e. Subject to the objection procedures described above, and upon receipt of reasonably detailed invoices indicating the nature of the services rendered and

4

    calculated in accordance with such Ordinary Course Professional's standard billing practices (without prejudice to the Debtors' right to dispute any such invoices), the Debtors are authorized to pay compensation and reimburse expenses to each of the Ordinary Course Professionals retained pursuant to the Order in the customary manner and in the full amount billed by each such Ordinary Course Professional up to the monthly amount set forth for such Ordinary Course Professional on **Exhibit A** on average over the preceding three-month period on a rolling basis (the "*Ordinary Course Professional Cap*").

f. The Debtors may increase the Ordinary Course Professional Cap for any Ordinary Course Professional with the consent (email being sufficient) of the U.S. Trustee and the Requisite Supporting Lenders. Absent consent, the Debtors may file a motion seeking Court authority to increase the Ordinary Course Professional Cap for any Ordinary Course Professional.

g. To the extent an Ordinary Course Professional seeks compensation in excess of the Ordinary Course Professional Cap (the "*Excess Fees*"), the Ordinary Course Professional shall file on the docket of the Chapter 11 Cases a Notice of Fees in Excess of the Ordinary Course Professional Cap (the "*Notice of Excess Fees*") which shall include an invoice setting forth, in reasonable detail, the nature of the services rendered and disbursements actually incurred, including all time entries and fees incurred by the Ordinary Course Professional for the relevant month. Interested parties shall then have 14 days to file an objection on the docket of the Chapter 11 Cases to the Notice of Excess Fees. If after 14 days no objection is filed, the Excess Fees shall be deemed approved, and the Ordinary Course Professional may be paid 100% of its fees and 100% of its expenses without the need to file a fee application. For the avoidance of doubt, the Debtors are authorized to pay compensation and reimburse expenses of an Ordinary Course Professional up to the Ordinary Course Professional Cap, notwithstanding the objection period set forth above for any Excess Fees. To the extent an Ordinary Course Professional seeks compensation in excess of the Ordinary Course Professional Cap on more than two occasions, the Debtors shall file an application to employ such Ordinary Course Professional pursuant to sections 327 and 328 of the Bankruptcy Code, as applicable, and such Ordinary Course Professional's subsequent compensation shall be governed by the Court's order, if any, approving such Ordinary Course Professional's employment.

h. The foregoing proposed ordinary course retention and compensation procedures shall not apply to those professionals for whom the Debtors filed (or will file) separate applications for approval of employment, such as the Debtors' proposed bankruptcy counsel and/or financial restructuring advisors nor will they apply to professionals that are being paid by non-Debtor third parties.

5

11. To the extent that any agreement between the Debtors and an Ordinary Course Professional provides for the indemnification by the Debtors of such Ordinary Course Professional in connection with the services that are the subject of this Motion (each such agreement, an "***OCP Agreement***"), the Debtors request that such indemnification provisions are approved, subject to the following modifications, applicable during the pendency of the Chapter 11 Cases:

   a. The Ordinary Course Professional shall not be entitled to indemnification, contribution, or reimbursement pursuant to the OCP Agreement for services other than the services provided under the OCP Agreement, unless such services and the indemnification, contribution, or reimbursement are approved by the Court.

   b. Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the Ordinary Course Professional, or provide contribution or reimbursement to the Ordinary Course Professional, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Ordinary Course Professional's gross negligence, willful misconduct, bad faith, breach of fiduciary duty (if any), or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of the Ordinary Course Professional's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (iii) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible; or (iv) settled before a judicial determination under (i) or (ii), but determined by the Court, after notice and a hearing, to be a claim or expense for which the Ordinary Course Professional should not receive indemnity, contribution, or reimbursement under the terms of the OCP Agreement as modified by the Court.

   c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing the Chapter 11 Cases, the Ordinary Course Professional believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the OCP Agreement (as modified by the Order), including the advancement of defense costs, the Ordinary Course Professional must file an application therefor in the Court, and the Debtors may not pay any such amounts to the Ordinary Course Professional before the entry of an order by the Court approving the payment. All parties in interest shall retain the right to object to any demand by the Ordinary Course Professional for indemnification, contribution, or reimbursement. In the event that the Ordinary Course Professional seeks reimbursement from the Debtors for attorneys' fees and expenses in

connection with the payment of an indemnity claim pursuant to the OCP Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Ordinary Course Professional's own applications, both interim and final, but determined by the Court after notice and a hearing.

12. The Debtors submit that the continued employment and compensation of the Ordinary Course Professionals is in the best interests of their estates, creditors, and other parties in interest. While certain Ordinary Course Professionals may wish to continue to represent the Debtors on an ongoing basis, others may be unwilling to do so if the Debtors cannot pay them on a regular basis, or, given the relatively small fees that may be involved, if they are required to comply with the requirements for retention under Bankruptcy Code section 327(a). If the knowledge, expertise, and familiarity that the Ordinary Course Professionals have regarding the Debtors and their operations are lost, the Debtors will undoubtedly incur additional and unnecessary expenses in getting replacement professionals "up to speed." The Debtors rely on the assistance of the Ordinary Course Professionals for essential business functions and would be unable to operate without their services. The Debtors' estates and their creditors are best served by avoiding any disruption in the professional services required in the ordinary course of the Debtors' businesses.

## BASIS FOR RELIEF

13. Section 327(a) of the Bankruptcy Code requires court approval for the employment of "professional persons" retained to represent or perform services of the estate. In determining whether an entity is a "professional" whose retention must be approved by a court as required by Bankruptcy Code section 327, courts generally consider the following factors:

    a. whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

    b. whether the entity is involved in negotiating the terms of a plan of reorganization;

  c. whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

  d. whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

  e. the extent of the entity's involvement in the administration of the debtor's estate; and

  f. whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See In re Smith*, 524 B.R. 689, 696 (Bankr. S.D. Tex. 2015); *In re Cyrus II P'ship*, No. 05-39857 (MI), 2008 WL 3003824, at *2 (Bankr. S.D. Tex. July 31, 2008) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("the phrase 'professional persons' as used in [Section] 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.")); *In re Lowry Graphics, Inc.,* 86 B.R. 74, 78 (Bankr. S.D. Tex. 1988) ("[A] person will be determined to be a 'professional' from an examination of the relation of the services performed to the administration of the case, rather than from an examination of the type of services rendered by that person").[3]

14. Further, section 327(b) of the Bankruptcy Code authorizes debtors to continue to employ and replace attorneys, accountants, or other professional persons, without the court's approval, if necessary in the operation of the business, and if the debtor has regularly employed such professionals on salary. 11 U.S.C. § 327(b). Moreover, section 327(e) of the Bankruptcy Code provides that "[t]he trustee, with the court's approval, may employ, for a specified special

---

[3] *See also Elstead v. Nolden*, 168 B.R. 226, 230 (Bankr. N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate require prior court approval under Bankruptcy Code section 327); *In re Madison Mgmt. Grp., Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992) (same); *In re Sieling Assocs. L P.*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (same); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (reasoning that there was no need for approval under the Bankruptcy Code section 327 of the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case").

purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtors or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e)

15. Considering all of the aforementioned factors, the Debtors submit that the Ordinary Course Professionals are not "professionals" within the meaning of section 327 of the Bankruptcy Code whose retention must be approved by the Court. In particular, the Ordinary Course Professionals will not be involved in the administration of the Chapter 11 Cases but rather will provide services that had already been commenced before the Chapter 11 Cases, in connection with the Debtors' ongoing business operations and services ordinarily provided by in-house counsel or other non-bankruptcy professionals. Nevertheless, out of an abundance of caution, the Debtors seek the relief requested in this Motion to avoid any subsequent controversy as to the Debtors' employment and payment of the Ordinary Course Professionals during the Chapter 11 Cases. Moreover, the Debtors will request specific court authority under section 327 of the Bankruptcy Code to retain any professionals involved in the actual administration of the Chapter 11 Cases.

16. The Debtors and their estates would be well served by the continued retention of the Ordinary Course Professionals, because of their prior relationships with the Debtors and their understanding of the Debtors and their operations. Accordingly, the Debtors submit that the relief requested herein is in the best interest of all creditors and parties in interest and will avoid any disruption of the services provided by the Ordinary Course Professionals.

## NOTICE

17. Notice of this Motion will be given to the parties on the Debtors' Master Service List and the Ordinary Course Professionals. A copy of this Motion is available on (a) the Court's

website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  August 8, 2025  
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com]

- and –

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Email:  jeff.bjork@lw.com
       helena.tseregounis@lw.com
       nicholas.messana@lw.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  ray.schrock@lw.com
       andrew.sorkin@lw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on August 8, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II
