IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ------------------------------------------------------------ x : | | |
| In re: | : : | Chapter 11 |
| RUNITONETIME LLC, *et al.*, | : : | Case No. 25-90191 (ARP) |
| Debtors ¹ | : : | (Jointly Administered) |
| ------------------------------------------------------------ x | : | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF LATHAM & WATKINS LLP
AS BANKRUPTCY CO-COUNSEL EFFECTIVE AS OF THE PETITION DATE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully request entry of an order authorizing the Debtors to employ and retain Latham & Watkins LLP ("***L&W***") effective as of the Petition Date (as defined below). In support of this application (the "***Application***"), the Debtors rely on and incorporate by reference (a) the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "***First Day Declaration***"), filed on the Petition Date, (b) the declaration of Helena Tseregounis, a partner of L&W, which is attached hereto as **Exhibit A** (the "***Tseregounis Declaration***"), and (c) the declaration of Jeff Seery, Chief Restructuring Officer of RunItOneTime

---

¹   A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/.  The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

LLC, which is attached hereto as **Exhibit B** (the "***Retention Declaration***"). In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (this "***Court***") has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and this Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are section 327(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

4. On July 14, 2025 (the "***Petition Date***"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (collectively, the "***Chapter 11 Cases***"). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 25, 2025, the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") appointed an official committee of unsecured creditors (the "***Creditors' Committee***").

5. Additional information regarding the Debtors' business, capital structure, and the events leading up to the Petition Date is set forth in the First Day Declaration.

**RELIEF REQUESTED**

6. The Debtors seek entry of an order (the "*Order*"), substantially in the form attached hereto, authorizing the employment and retention of L&W as co-counsel for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions of that certain amended engagement letter dated April 24, 2025 (the "***Engagement Letter***"), a copy of which is attached as **Exhibit 1** to the Tseregounis Declaration and incorporated herein by reference.

**L&W's QUALIFICATIONS**

7. The Debtors seek to retain L&W because of L&W's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of L&W's knowledge of the Debtors' business and financial affairs.

8. L&W and its partners have represented numerous debtors in their bankruptcy matters, including 2U, Inc., Allen Systems Group, Inc., Alta Mesa Resources, Inc., Audacy, Inc., Barretts Minerals, Inc., Chaparral Energy, Inc., Dayton Superior Corporation, DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), DocuData Solutions, L.C., Emerge Energy Services LP, Enduro Resource Partners LLC, First Mode Holdings, Inc., Global Eagle Entertainment Inc., GNC Holdings, Inc., Hexion Holdings LLC, Hi-Crush Inc., IG Design Group Americas, Inc., Illinois Power Generating Company, Imerys Talc America, Inc., JOANN Inc., Libbey Glass Inc., Lincoln Power, L.L.C., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Lumileds Holding B.V., Mallinckrodt plc, MLCJR LLC, Monitronics International, Inc., Nine Point Energy Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC, Panda Temple Power, LLC, Rentech WP U.S. Inc., Robertshaw US Holding Corp., RunItOneTime LLC, Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Starry Group Holdings, Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy Services, Inc., The Container Store Group,

3

Inc., Virgin Orbit Holdings, Inc., Vital Pharmaceuticals, Inc., Weatherford International plc, Wolfspeed, Inc., and Zen JV, LLC.

9. For a number of years, L&W has represented the Debtors with respect to a wide range of legal matters, including, among other things, debt financing and corporate and real estate matters. Moreover, since early 2025, the Debtors and L&W have worked together closely in an effort to address the Debtors' financial issues, including by engaging in negotiations with the Debtors' key stakeholders regarding the Debtors' capital structure and restructuring options and assisting the Debtors with exploring potential out-of-court transactions and ultimately preparing the Chapter 11 Cases, including negotiating the transaction support agreement. As a result, L&W possesses an in-depth knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the legal issues that might arise in the context of the Chapter 11 Cases. Accordingly, the Debtors believe that L&W is both well-qualified and uniquely able to represent them in the Chapter 11 Cases and that such representation is critical to the Debtors' efforts to successfully reorganize while maximizing value for their estates.

## SERVICES TO BE PROVIDED

10. The Debtors desire to employ L&W under a general retainer because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Cases. To engage alternative counsel at this stage of the Debtors' cases would be disruptive and inefficient, and would likely delay the Debtors' progress toward a successful sale or reorganization.

11. Consistent with the Engagement Letter, the Debtors expect L&W to provide the following legal services:

    a) advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b) advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c) advise the Debtors and take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved;

d) analyze proofs of claim filed against the Debtors and object to such claims as necessary;

e) represent the Debtors in connection with obtaining authority to continue using cash collateral and obtain postpetition financing;

f) attend meetings and negotiate with representatives of creditors, interest holders, and other parties in interest;

g) analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

h) prepare pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

i) advise the Debtors in connection with any potential sale of assets;

j) take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

k) appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

l) advise on corporate, litigation, regulatory, finance, tax, employee benefits, and other legal matters; and

m) perform all other necessary legal services for the Debtors in connection with the Chapter 11 Cases.

12. Concurrently with the filing of this Application, the Debtors anticipate filing an application to retain Hunton Andrews Kurth LLP ("*Hunton*") as their bankruptcy co-counsel and conflicts counsel. Because L&W and Hunton will have well-defined and distinct roles, each counsel will not duplicate the services the other provides to the Debtors. L&W will coordinate

with Hunton and any other counsel the Debtors retain in the Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

13. The Debtors also have filed or intend to file applications to employ other professionals in the Chapter 11 Cases. L&W has advised the Debtors that it intends to carefully monitor the efforts of these other retained professionals and coordinate with such professionals to delineate clearly their respective duties in order to prevent duplication of effort, whenever possible. The efficient coordination of the efforts of the Debtors' attorneys and other professionals will greatly add to the effective administration of the Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

14. L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

15. L&W's current hourly rates are set forth in the Tseregounis Declaration. Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions.[2] Except as may otherwise be set forth in the Tseregounis Declaration, L&W did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement, and none of the L&W professionals

---

[2] L&W increases the hourly billing rate of attorneys and paraprofessionals in the form of (a) step increases historically awarded in the ordinary course of business on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines (as defined below)). As set forth in the Order, L&W will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with the Court.

included in this engagement will vary his or her rate based on the geographic location of the Chapter 11 Cases.

16. Other than (a) the adjustments described above and as set forth in the Tseregounis Declaration and (b) a postpetition 50% discount applied to rates charged for non-working travel time, L&W's hourly rates and the financial terms of the engagement proposed herein are consistent with the rates and terms of L&W's prepetition engagement. As described in the Retention Declaration, the Debtors have reviewed and approved L&W's standard rate structure and determined that it is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

17. Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services. It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

18. During the Chapter 11 Cases, L&W will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such applications will constitute a request for interim payment against L&W's reasonable fees and expenses to be determined at the conclusion of the Chapter 11 Cases.

**COMPENSATION RECEIVED BY L&W FROM THE DEBTORS**

19. As set forth in the Tseregounis Declaration, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $3,443,684.72 for services performed and expenses incurred, and to be performed and incurred, including in preparation for the commencement of the Chapter 11 Cases. L&W wrote-off and waived any fees owing in excess of its retainer as of the Petition Date.

**L&W'S DISINTERESTEDNESS**

20. To the best of the Debtors' knowledge, and except as otherwise disclosed in the Tseregounis Declaration, the partners, counsel, and associates of L&W (a) do not have any connection with any of the Debtors, their affiliates, their creditors, any other party in interest, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of Texas or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtors' estates. The Debtors will utilize Hunton or retain separate conflicts counsel as necessary if neither L&W nor Hunton is available for a particular matter.[3]

21. As disclosed in the Tseregounis Declaration, L&W has in the past represented, currently represents, and likely in the future will represent, certain parties in interest in the Chapter 11 Cases. Except as set forth in the Tseregounis Declaration, all such representations are or were

---

[3] In the event the Debtors seek to employ and retain separate conflicts counsel in connection with the Chapter 11 Cases to handle matters that the Debtors may encounter that cannot be handled appropriately by L&W or Hunton because of a conflict of interest, then the Debtors intend that the services of such conflicts counsel shall complement, and not duplicate, the services to be rendered by L&W and Hunton. Moreover, the responsibilities of such conflicts counsel shall be confined to discrete legal matters that are distinct from the matters handled by L&W or Hunton. Conflicts counsel shall act on its own and will not act under the direct supervision of L&W. Indeed, the Debtors are extremely mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication.

in connection with matters wholly unrelated to the Debtors and the Chapter 11 Cases. Pursuant to section 327(c) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' co-counsel merely because it has represented or currently represents certain parties in interest in matters unrelated to the Chapter 11 Cases.

22. The Debtors understand that L&W will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in the Chapter 11 Cases and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a) to disclose any material developments regarding the Debtors or any other pertinent relationships that come to L&W's attention.

## BASIS FOR RELIEF

23. The Debtors seek retention and employment of L&W as their co-counsel pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

24. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

25. The Debtors submit that for all the reasons stated above and in the Tseregounis Declaration and the Retention Declaration, the retention and employment of L&W is necessary and in the best interest of the Debtors, their estates, and their creditors and should be approved. Further, as stated in the Tseregounis Declaration, L&W is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and L&W does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Tseregounis Declaration.

## **NOTICE**

26. Notice of this Application will be given to the parties on the Debtors' Master Service List. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed Order granting the relief requested in this Application and such other and further relief as the Court may deem just and proper.

Dated: August 13, 2025

*/s/ Jeff Seery*
Name: Jeff Seery
Title:  Chief Restructuring Officer

**CERTIFICATE OF SERVICE**

      I certify that on August 13, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

                                          */s/ Timothy A. ("Tad") Davidson II*
                                          Timothy A. ("Tad") Davidson II