## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

------------------------------------------------------------ x
: 
In re: : Chapter 11
: 
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
: 
Debtors.[1] : (Jointly Administered)
: 
------------------------------------------------------------ x

### DEBTORS' APPLICATION FOR THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KPMG LLP TO PROVIDE AUDIT, TAX COMPLIANCE AND TAX CONSULTING SERVICES TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***"), respectfully state the following in support of this application (the "***Application***"):

### RELIEF REQUESTED

1. By this Application, the Debtors respectfully request entry of an order, substantially in the form attached hereto (the "***Order***"), authorizing the employment and retention of KPMG LLP ("***KPMG***"), effective as of the petition date, to provide audit, tax compliance and tax consulting services to the Debtors as described in the five (5) engagement letters between KPMG

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

and the Debtors (the "*Engagement Letters*")[2] attached hereto as **Exhibit B** (**Exhibits B-1-through B-5)**. In support of the Application, the Debtors submit the declaration of Ryan J. Kelly (the "*Kelly Declaration*"), attached hereto as **Exhibit A**.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 327(a), 328, and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "*Bankruptcy Code*"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "*Bankruptcy Local Rules*"), and the Procedures for Complex Cases in the Southern District of Texas (the "*Complex Case Procedures*").

## BACKGROUND

4. On July 14, 2025, (the "*Petition Date*"), the Debtors filed voluntary petitions in this Court commencing these chapter 11 cases.

5. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On July 25, 2025, the Office of the United States Trustee for the Southern District of Texas (the "*U.S. Trustee*") [Docket

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letters.

No. 81]. No trustee or examiner has been requested, and no committee has been appointed in these chapter 11 cases.

6. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

7. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), which is fully incorporated herein by reference.

## KPMG'S RETENTION

8. The Debtors respectfully request entry of an order authorizing the Debtors to retain and employ KPMG to provide audit, tax compliance and tax consulting services to the Debtors in accordance with the terms and conditions set forth in this Application, the Kelly Declaration, and the Engagement Letters.

9. As detailed in the Kelly Declaration, KPMG is a professional firm providing audit, tax, and advisory services. The Debtors have selected KPMG to provide audit, tax compliance and tax consulting services because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation, and operational controls for large, sophisticated companies both in chapter 11 cases as well as outside of chapter 11 cases. The Debtors have employed KPMG since 2021 and KPMG is qualified to continue to provide such services to the Debtors. As such, retaining KPMG is an efficient and cost-effective means for the Debtors to obtain these necessary services.

**Scope of Services**

10. Subject to approval of the Application, and consistent with the terms of the Engagement Letters, KPMG will, to the extent necessary, appropriate, and feasible, provide the following services:[3]

**Audit Services**

A. Audit of consolidated balance sheets of the Debtors, specifically Maverick Gaming LLC, as of December 31, 2025 and 2024, the related consolidated statements of operations, members' equity and cash flows for each of the years in the two-year period ended December 31, 2025 and the related notes to the financial statements.

B. KPMG will apply agreed-upon procedures to document compliance with the Minimum Internal Control Standards ("***MICS***") required by regulation 6.909(9) of the Nevada Gaming Commission and Nevada State Gaming Board (collectively, the "***Regulators***") of the Debtors, specifically Maverick Gaming, LLC, and (i) its licensed Wendover, Nevada gaming establishments, which are owned by Red Garter Operator, LLC and Wendover Nugget Operator, LLC, and (ii) its Elko, Nevada gaming establishment, which is owned by Red Lion Operators, LLC, (collectively the "***Licensees***") for the year ending December 31, 2025 for the intended purpose of evaluating the Licensees' compliance with the applicable status, regulations, and MICS. The Company and Licensees are responsible for compliance with applicable statuses, regulations, and MICS during the year ending December 31, 2025. The procedures agreed upon are as follows:

   i. CPA's Report on Applying Agreed-Upon Procedures:

      a. KPMG will obtain the internal audit workpapers for the twelve-month period January 1, 2025 through June 30, 2025 and July 1, 2025 through December 31, 2025 for the applicable areas and determine whether the Certified Public Accountants Minimum Internal Control Standards ("***CPA MICS***") compliance checklists were included in the internal audit workpapers and all steps described in the CPA MICS compliance checklists were performed and the checklists were either initialed or signed by an internal audit representative;

      b. For the internal audit workpapers obtained in Step 1, KPMG will reperform 3% of each set of procedures for the slot and table game departments and 5% of the procedures for the

---

[3] If there is any inconsistency between the description of the services in the applicable Engagement Letter and in this Application, the description in the applicable Engagement Letter shall control.

       other departments included in the CPA MICS compliance checklists performed by internal audit; and

      c. KPMG will complete the CPA MICS compliance checklist "Utilization of Internal Audit".

  ii. CPA Regulation 6.090(9) Report Procedures:

      a. KPMG will request a copy of the Licensees' submitted system of internal control, adopted pursuant to Regulation 6.090(3) (the "*System*") from Debtors' management; KPMG will also request, from Debtors' management, correspondence received by the licensee from the Regulators representing variations from the MICS adopted by the Regulators;

      b. Via the world wide web, KPMG will also obtain, from the Regulators, a copy of the MICS published by the Regulators and in effect during the period from January 1, 2025 through December 31, 2025 and a copy of regulation 6.090 of the Regulators;

      c. KPMG will compare the detailed controls and procedures, provided by the MICS, obtained in procedure 5, or approved variations from the MICS, obtained in procedure 4, to the detailed controls and procedures described in the System, obtained in procedure 4, to determine whether the required controls and procedures specified in the MICS were included in the System. We will also compare the System obtained in procedure 1 to the requirements of regulations 6.090(2)(a), (b) and (c);

      d. KPMG will inquire of and request from Debtors' management, correspondence between the Licensees and the Regulators related to the Licensees' election to utilize internal audit to substitute for CPA work;

      e. As required by the "CPA MICS Compliance Reporting Requirements" effective beginning January 1, 2018, for situations where the licensee has made an election to utilize internal audit to substitute for CPA work, KPMG will perform observations and complete the applicable observation checklists; and

      f. In accordance with the "CPA MICS Compliance Reporting Requirements" effective beginning January 1, 2018, KPMG will complete the "Internal Audit CPA MICS Compliance Checklists", as it relates to the internal audit function for the

>licensee, for the year ended December 31, 2025, if applicable.

**Tax Compliance Services**

    A. <u>U.S. Federal, State and Local Income and Franchise Tax Returns</u>

        i. KPMG will prepare the U.S. federal, state and local income and franchise tax returns (the "***Returns***") and supporting schedules for the 2024 and 2025 tax year(s), as described and detailed in the tax compliance engagement letter dated March 3, 2025 (the "***Tax Compliance EL 1***"). Specifically, KPMG shall prepare the Returns set forth in appendices in the Tax Compliance EL 1.

    B. <u>Succeeding Year Estimated Tax Payments, Extensions</u>

        i. KPMG will prepare first quarter estimated tax payments and request extensions of the time to file the Returns for the tax year immediately succeeding the last tax year included in the Tax Compliance EL 1, subject to fee adjustments as described in the fees section of Tax Compliance EL 1 and approved by the Debtors in writing (email acceptable).

    C. <u>Succeeding Year Planning Activities</u>

        i. KPMG will provide preliminary engagement planning activities related to the Returns for the tax year immediately succeeding the last tax year covered by Tax Compliance EL 1.

    D. <u>U.S. Federal Corporate Alternative Minimum Tax</u>

        i. For each year covered under Tax Compliance EL 1, the Debtors and KPMG will agree in writing (email acceptable) the additional fees KPMG will incur to compute the Debtors' CAMT analysis, calculations, and reporting, as applicable, as part of preparing the Returns and extensions included in the aforementioned EL.

    E. <u>U.S. Tax Forms 945/1099 Series and Forms 1042/1042-S</u>

        i. KPMG will prepare and transmit original and amended, as required, tax information returns for the 2019-2023 tax year, as described in the engagement letter dated July 11, 2025, (the "***Tax Compliance EL 2***"), (collectively, the "***Returns***"); specifically, KPMG shall prepare the following Returns:

            a. W2-G / Form 1042-S remediation;

            b. Form 945; and

        c. Form 1042.

F. <u>Additional Information Reporting and Withholding Tax Compliance Scope</u>

    i. If the Debtors identify additional tax returns requiring amendment or initial filings are identified, at the request and approval of the Debtors, KPMG will prepare and submit such forms.

G. <u>Succeeding Year Planning Activities</u>

    i. KPMG will provide preliminary engagement planning activities related to the Returns for the tax year immediately succeeding the last year covered by the Tax Compliance EL 2.

**Tax Consulting Services**

<u>Distressed Company Services</u>

A. KPMG shall analyze U.S. federal, state, local, and international tax implications of the Debtors' potential restructuring of its debt and/or capital structure (the "***Potential Restructuring***"). Services may include, but are not limited to, the following:

    i. Analysis of section 382 issues related to potential restructuring alternatives, including a sensitivity analysis to reflect the section 382 impact of the proposed and/or hypothetical equity transactions;

    ii. Analysis of net unrealized built-in gains and losses and notice 2003-65 as applied to the ownership change, if any, resulting from or in connection with the Potential Restructuring;

    iii. Analysis of the Debtors' tax attributes, including net operating losses, tax basis in assets, and tax basis in subsidiaries' stock as relevant to the Potential Restructuring;

    iv. Analysis of cancellation of debt income, including the application of section 108 and consolidated tax return regulations relating to the restructuring of non-intercompany debt and the completed capitalization/settlement of intercompany debt;

    v. Analysis of application of the attribute reduction rules under section 108(b) and treasury regulation section 1.1502-28, including a benefit analysis of sections 108(b)(5) and 1017(b)(3)(D) elections as related to the Potential Restructuring;

    vi. Analysis of relevant tax elections available and filing of any necessary election statements;

    vii. Analysis of tax implications of any internal reorganizations and restructuring alternatives;

    viii. Analysis of cash tax modeling of the tax benefits or tax costs of restructuring alternatives;

    ix. Analysis of tax implications of any dispositions of assets and/or subsidiary stock pursuant to the Potential Restructuring;

    x. Analysis of potential bad debt, worthless stock, and retirement of tax losses associated with the Potential Restructuring; and

    xi. Analysis of tax treatment of restructuring related costs.

B. Tax Structuring Alternatives

    i. Provide observations and recommendations on the tax profile of the intended resulting operating structure and also in connection with the execution of the Potential Restructuring and any transaction documents, including intercompany agreements, financing, and management incentive plans; and

    ii. Evaluate structural alternatives and prepare a set of structure slides to outline the tax steps needed to be taken to meet the desired tax transaction end state in a variety of potential scenarios (in coordination with your legal counsel).

C. Transaction Execution Consultation

    i. Read and comment on tax aspects of drafts of the transaction agreements prepared by the Debtors and/or the Debtors' legal counsel;

    ii. Read and comment on tax aspects of draft disclosures, draft presentations describing the Potential Restructuring, and draft partnership operating agreements prepared by the Debtors and/or the Debtors' legal counsel/financial advisors;

    iii. Assist the Debtors, from a tax structuring perspective, in discussions with creditors (and any other third parties) tax counsel; and

    iv. Prepare technical memoranda to summarize the tax transaction structure and document the resolution of significant tax matters that may arise over the course of the engagement.

D. Additional Transaction Services

> i. At the Debtors' request, KPMG will provide tax advice with respect to other tax matters associated with the Potential Restructuring, post-acquisition business activities or operation of the structure.

E. KPMG shall provide routine general tax consulting on matters that may arise for which the Debtors seek advice, written and oral, and that are not the subject of a separate engagement letter.

11. In addition to the foregoing, KPMG will provide such other consulting, advice, research, planning, and analysis regarding audit, tax compliance and tax consulting services as may be necessary, desirable or requested from time to time by the Debtors. Should KPMG and the Debtors enter into any additional engagement letters and/or statement(s) of work regarding additional services to be provided to the Debtors during these chapter 11 cases, KPMG and the Debtors will follow the procedure for authorization to provide such additional services as set forth in the Court's order approving the Application.

## No Duplication of Services

12. KPMG's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases. KPMG has informed the Debtors that it understands that the Debtors have retained, and may retain, additional professionals during the term of the engagement and will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Professional Compensation

13. Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures and such other procedures as may be fixed by order of the Court, the Debtors will compensate KPMG in accordance with the terms and conditions of the Engagement Letters, which, in relevant part, provide for the following compensation structure:

**Audit Services**

14. As further described in the audit engagement letters dated July 30, 2025, KPMG and the Debtors have agreed to (i) a fixed fee of $495,000 for services relating to audit of consolidated balance sheets of Maverick Gaming LLC and (ii) a fixed fee of $45,000 related to performing procedures to document compliance with the MICS, as defined above, (collectively the "*Audit Fixed Fees*").[4] No portion of the Audit Fixed Fees were paid prepetition.

15. To the extent that the Debtors require KPMG to perform services that are incremental to or outside the scope of (a) the continuing annual audit requirements or (b) the agreed upon procedures, such work is not included in the Audit Fixed Fees described above and therefore are described in the audit engagement letters as "Out-of-Scope Services". For such Out-of-Scope Services, KPMG will be compensated based on hourly rates, the majority of which reflect a reduction of approximately 40% from KPMG's normal and customary rates, depending on the types of services to be rendered. The hourly rates for any Out-of-Scope Services rendered by KPMG in these chapter 11 cases are as follows:

| Audit Out of Scope Services | Discounted Audit Hourly Rates | Discounted Specialist Hourly Rates |
|---|---|---|
| Partners | $715 | $870 |
| Managing Directors | $685 | $850 |
| Senior Managers | $600 | $820 |
| Managers | $530 | $615 |
| Senior Associates | $480 | $450 |
| Associates | $380 | $335 |

---

[4] The Engagement Letters (*see* **Exhibits B-4 & B-5**) provide for payment of these audit services pursuant to installment schedule(s). Notwithstanding the requirement under the Engagement Letters for payment of 30% of the fixed fee amount upon execution of the Engagement Letters, KPMG will not seek prepayment and will only invoice and seek payment of amounts due under the Engagement Letters for contracted services actually provided to the Debtors.

**Tax Compliance Services**

16.     KPMG and the Debtors have agreed to a fixed fee of $375,000 for the 2024 tax year, and $200,000 for the 2025 tax year for services related to Tax Compliance EL 1. No portion of the fixed fees for 2024 or 2025 were paid prepetition. Subject to the Court's approval and pursuant to the terms and conditions of the Tax Compliance EL 1, tax compliance services will be billed as follows for the 2024 tax year; and

| Progress bill to be mailed on | Amount to be billed |
|---|---|
| April 15, 2025 | $200,000 |
| May 15, 2025 | $75,000 |
| July 15, 2025 | $75,000 |
| Upon Completion of the engagement | Balance due |

tax compliance services for the 2025 tax year will be billed as follows:

| Progress bill to be mailed on | Amount to be billed |
|---|---|
| March 15, 2026 | $100,000 |
| June 15, 2026 | $75,000 |
| Upon Completion of the engagement | Balance due |

17.     As further described in the Tax Compliance EL 1, to the extent the Debtors requests KPMG to prepare additional tax returns, extensions or estimates for any jurisdiction (state or local) and/or legal entities not identified in Tax Compliance EL 1, the Debtors shall pay $5,000 per federal return (including additional proformas), $3,000 per state, local or franchise return, and $5,000 per quarterly estimate.

18.     As further detailed in the Tax Compliance EL 2, the information reporting and withholding tax compliance services will be provided on a fixed fee basis, not to exceed $142,770 (plus the fixed fees described below for any additional filings requested by the Debtors). Those additional fees are as follows:

11

A. <u>2019-2023 Form W2-G/Form1042-S remediation</u> - approximate fees for 9,277 forms at $10/Form ($92,770)

B. <u>Form 945</u> – 5 amended forms 945 at $5,000/Form ($25,000)

C. <u>Form 1042</u> – 5 amended forms 1042 at $5,000/Form ($25,000)

**Tax Consulting Services**

19.　KPMG's requested compensation for tax consulting services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate, and the Debtors have agreed to compensate KPMG at such rate, as follows:

| Professional Level | Discounted Rate (Range) |
|---|---|
| Partners | $943 - $1,615 |
| Managing Directors | $920 - $1,437 |
| Directors/Senior Managers | $858 - $1,233 |
| Managers | $666 - $1,122 |
| Senior Associates | $484 - $850 |
| Associates | $361 - $519 |

The majority of fees to be charged for tax consulting services reflect a reduction of approximately 15% - 35% from KPMG's normal and customary rates. KPMG has further agreed that its fees for tax consulting services related to Tax Compliance EL 2 will not be more than $300,000 without receiving written approval from the Debtors and are specific to the tax controversy services and the review of previous W-2G and form 1042-S filings.

20.　Prior to any increases in KPMG's rates for any individual staff member that is providing services in these cases, KPMG shall file a supplemental declaration with this Court and

provide 10 business days' notice to the Debtors and the U.S. Trustee. The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

21.     KPMG also will seek reimbursement for reasonable and necessary costs and expenses incurred, including but not limited to meals, lodging, travel, photocopying, delivery service, postage, vendor charges, value added tax, reasonable and documented outside counsel legal fees and expenses, and other out-of-pocket costs and expenses incurred in providing professional services.

22.     KPMG intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and the orders of this Court.  Such applications will include time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  It is not the general practice of KPMG professionals, to keep detailed records similar to those customarily kept by attorneys.  Because KPMG does not ordinarily maintain contemporaneous time records in one-tenth hour increments, to the extent that KPMG is being paid a fixed or contingent fee, KPMG requests authorization to keep time records related to such services in summary format in half-hour increments.  Specifically, KPMG requests that, for all services rendered on a fixed fee basis, it be permitted to file time records in half-hour increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the

Debtors. For all services rendered on an hourly basis, KPMG will maintain detailed records in one-tenth hour increments.

23. KPMG's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letters, which KPMG has agreed to modify during the course of these chapter 11 cases as set forth in the Order, and in accordance with Bankruptcy Local Rule 2016-1, the Complex Case Procedures, and any procedures established by order of the Court. KPMG has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

24. On the Petition Date, the Debtors did not owe KPMG any unpaid fees or expenses. In connection with this Application, if it is determined that the Debtors did owe KPMG any unpaid fees or expenses, KPMG waives any amounts owed for such services rendered prior to the Petition Date.

25. According to KPMG's books and records, during the 90-day period prior to the Petition Date, KPMG received $740,738 from the Debtors for professional services performed and expenses incurred as follows:

| Invoice Number | Invoice Date | Amount Billed | Date Invoice Paid | Amount Paid |
|---|---|---|---|---|
| 8005821760 | 1/7/2025 | $214,836.00 | 4/29/2025 | $214,836.00 |
| 8005880649 | 2/11/2025 | $95,185.00 | 4/29/2025 | $95,185.00 |
| 8004997349 | 9/1/2024 | $13,228.00 | 4/29/2025 | $13,228.00 |
| 8005653095 | 9/16/2024 | $68,339.00 | 4/29/2025 | $68,339.00 |
| 8005653096 | 9/16/2024 | $23,119.00 | 4/29/2025 | $23,119.00 |
| 8005656152 | 9/18/2024 | $205,000.00 | 4/29/2025 | $100,000.00 |
| 8005723075 | 11/1/2024 | $75,000.00 | 4/29/2025 | $75,000.00 |
| 8005848390 | 1/23/2025 | $10,099.00 | 7/11/2025 | $10,099.00 |
| 8005848391 | 1/23/2025 | $33,901.00 | 7/11/2025 | $33,901.00 |
| 8005879598 | 2/11/2025 | $70,000.00 | 7/11/2025 | $70,000.00 |
| 8006111011 | 6/10/2025 | $25,259.00 | 7/11/2025 | $25,259.00 |

| 8006155848 | 7/7/2025 | $25,000.00 | 7/11/2025 | $25,000.00 |

26. Except as set forth herein (a) no commitments have been made or received by KPMG with respect to compensation or payment in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code; and (b) there is no agreement or understanding between KPMG and any other entity, other than a member, partner, or regular associate of KPMG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

**KPMG's Disinterestedness**

27. KPMG has reviewed the list of parties-in-interest provided by the Debtors. To the best of KPMG's knowledge, as of the date hereof, and except to the extent disclosed in the Kelly Declaration, KPMG: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estate; and (c) has no connection to the Debtors, their creditors, or related parties.

28. Given the large number of parties-in-interest in these chapter 11 cases, and despite the efforts to identify and disclose KPMG's relationships with parties-in-interest in these chapter 11 cases, KPMG is unable to state with certainty that every client relationship or other connection has been disclosed in the Kelly Declaration. To the extent that any new relevant facts or relationships bearing on matters described herein during the period of KPMG's retention are discovered or arise, the Debtors are advised that KPMG will use reasonable efforts to promptly file a supplemental declaration.

**Indemnification**

29. As part of the overall compensation provided to KPMG under the terms of the Engagement Letters, the Debtors have agreed to certain indemnification and reimbursement obligations with respect to the services (the "***Indemnification Provisions***").

30. The Engagement Letters were negotiated by the Debtors and KPMG at arm's-length and in good faith. The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the engagement covered by the Engagement Letters, both out-of-court and in chapter 11 cases.

**BASIS FOR RELIEF**

31. Retention of KPMG to provide audit, tax compliance and tax consulting services to the Debtors under the terms described here is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

32. In addition, the Debtors seek approval of the Fee and Expense Structure and the Engagement Letters (including the Indemnification Provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a

fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, on flexible terms that reflect the nature of their services and market conditions.  The Debtors submit that the terms and conditions of KPMG's retention as described herein are reasonable, and the terms are substantially similar to those which KPMG applies to its other bankruptcy and non-bankruptcy clients for engagements of this size and character.

33. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code to read as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).  It is thus clear that a debtor may retain a professional on a fixed or percentage fee basis with Court approval, such as the Fee and Expense Structure for KPMG in the Engagement Letters.

34. As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, KPMG intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and any other applicable procedures and orders of the Court, with certain limited modifications.

35. Based on the foregoing, the Debtors have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case

Procedures to support entry of an order authorizing the Debtors to retain and employ KPMG in these chapter 11 cases on the terms described herein and in the Engagement Letters.

## NOTICE

36. Notice of the Application will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Agent; (d) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (e) the Gaming Regulators; (f) the United States Attorney for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

37. A copy of this Application is available on (a) the Court's website at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order granting the relief requested in this Application and such other relief as may be just and proper.

Signed:  August 13, 2025                     Respectfully Submitted,

                                             /s/ *Jeff Seery*
                                             Jeff Seery
                                             Chief Restructuring Officer

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II