IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
:
In re: : Chapter 11
:
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
:
Debtors.[1] : (Jointly Administered)
:
------------------------------------------------------------ x

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLC ADVISORS & CO., LLC AND GLC SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (the "***Debtors***") respectfully state the following in support of this application (this "***Application***"),

**RELIEF REQUESTED**

1. By this Application, the Debtors request entry of an order, substantially in the form attached hereto (the "***Proposed Order***"), authorizing the Debtors to retain and employ GLC Advisors & Co., LLC and GLC Securities, LLC (together, "***GLC***") as investment banker for the Debtors, effective as of the Petition Date (defined below), in accordance with the terms and conditions of that certain engagement letter, dated and effective as of April 17, 2025, as amended

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

by that certain Letter Agreement, dated as of August 12, 2025 (collectively, the "**Engagement Letter**" or the "**Agreement**"); both of which are attached hereto as **Exhibit A** and incorporated herein by reference.

2. In support of this Application, the Debtors submit the *Declaration of Michael Sellinger in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of GLC Advisors & Co., LLC and GLC Securities, LLC as Investment Banker for the Debtors and Debtors in Possession, Effective as of the Petition Date* (the "**Sellinger Declaration**"), attached hereto as **Exhibit B** and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Application under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**").

## BACKGROUND

5. On July 14, 2025 (the "**Petition Date**"), the Debtors each commenced with the Court a voluntary case (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in the Court.

6. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On July 25, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "**Committee**") [Docket No. 81].  No trustee or examiner has been appointed in the Chapter 11 Cases.

7. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

8. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "**First Day Declaration**"), filed on the Petition Date and incorporated herein by reference.

## GLC'S QUALIFICATIONS

9. GLC is a leading independent investment banking firm, with offices in New York, San Francisco, Los Angeles and Denver. GLC is frequently ranked among the top ten restructuring advisors in the United States by Refinitiv (f/k/a Thomson Reuters). GLC's professionals include those who have previously served as the heads of restructuring and leveraged finance teams at: Credit Suisse First Boston LLC; Donaldson, Lufkin & Jenrette Securities Corporation; Morgan Stanley & Co. International PLC; Smith Barney Inc.; and UBS Investment Bank. GLC is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings.

10. GLC and its professionals have worked with financially troubled companies and their stakeholders in a variety of industries in complex financial restructurings, both in chapter 11 cases and out-of-court proceedings. GLC's professionals have served as advisors to companies, creditors, and other stakeholders in dozens of restructurings.  More specifically, GLC has acted as

3

the investment banker and/or financial advisor to debtors, creditors, ad hoc groups and creditors' committees, as applicable, in the following cases: *In re Meier's Wine Cellars Acquisition, LLC*, No. 24-11575 (Bankr. D. Del. Sept. 3, 2024); *In re Near Intelligence, Inc.*, No. 23-11962 (Bankr. D. Del. Jan 9, 2024); *In re Invacare Corp.*, No. 23-90068 (Bankr. S.D. Tex. Jan. 31, 2023); *In re Nogin, Inc.*, No. 23-11945 (Bankr. D. Del. Dec. 5, 2023); *In re Carestream Health, Inc.*, No. 22-10778 (Bankr. D. Del. Aug. 23, 2022); *In re Stimwave Techs. Inc.*, No. 22-10541 (Bankr. D. Del. June 15, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (Bankr. D. Del. Nov. 16, 2021); *In re Basic Energy Servs., Inc.*, No. 16-12320 (Bankr. D. Del. Oct. 25, 2016); *In re Greensill Cap. Inc.*, No. 21-10561 (Bankr. S.D.N.Y. Mar. 25, 2021); *In re Alpha Media Holdings LLC*, No. 21-30209 (Bankr. E.D. Va. Jan. 25, 2021); *In re Guitar Center, Inc.*, No. 20-34656 (Bankr. E.D. Va. Nov. 21, 2020); *In re The Hertz Corp.*, No. 20-11247 (Bankr. D. Del. May 22, 2020); *In re Southern Foods Group, LLC*, No. 19-36313 (Bankr. S.D. Tex. Nov. 12, 2019); *In re uBiome, Inc.*, No. 19-11938 (Bankr. D. Del. Sept. 4, 2019); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (Bankr. N.D. Ohio Mar. 31, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (Bankr. S.D. Tex. Mar. 14, 2018); *In re Brookstone Holds. Corp.*, No. 18-11780 (Bankr. D. Del. Aug. 2, 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (Bankr. E.D. Va. Sept. 19, 2017); *In re The Fin. Oversight and Mgmt. Bd. for Puerto Rico*, No. 17-3283 (D.P.R. May 3, 2017); *In re Fallbrook Techs. Inc.*, No. 18-10384 (Bankr. D. Del. Feb. 26, 2018); *In re UCI Int'l, LLC,* No. 16-11354 (Bankr. D. Del. June 2, 2016); *In re RCS Cap. Corp.*, No. 16-10223 (Bankr. D. Del.); *In re Essar Steel Algoma Inc., et al.*, No. 15-12271 (Bankr. D. Del. Jan. 31, 2016); *In re Colt Hold. Comp. LLC*, No. 15-11296 (Bankr. D. Del. June 14, 2015); *In re RadioShack Corp.*, No. 15-10197 (Bankr. D. Del. Feb. 5, 2015); *In re Caesars Ent. Operating Co., Inc.*, No. 15-01145 (Bankr. N.D. Ill. Jan. 15, 2015); *In re LightSquared Inc.*, No. 12-12080 (Bankr. S.D.N.Y. May 14, 2012); *In re Ahern Rentals, Inc.*, No.

4

11-53860 (Bankr. D. Nev. Dec. 22, 2011); *In re The McClatchy Company*, No. 20-10418, (Bankr. S.D.N.Y.); *In re Station Casinos, Inc.*, No. 09-52470 (D. Nev.); *In re The Majestic Star Casino, LLC*, No. 09-14136 (Bankr. D. Del.).

11. Since its retention on or about April 2025, GLC has provided extensive services in connection with the Debtors' strategic alternatives process, including: (a) familiarizing itself with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and projected cash flow; (c) assisting the Debtors in evaluating strategic and financing alternatives; (d) negotiating with key capital structure constituents, including the Debtors' prepetition secured lenders; (e) initiating a broad marketing and sale process for substantially all of the Debtors' core assets; and (f) helping the Debtors prepare for a potential chapter 11 filing, including seeking debtor-in-possession financing.

12. The Debtors have selected GLC as their investment banker based upon, among other things: (1) GLC's extensive knowledge of the Debtors; (2) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities; and (3) GLC's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these. In light of the size and complexity of the Debtors' Chapter 11 Cases, the resources, capabilities and experience of GLC in advising the Debtors as investment banker are crucial to the success of the Debtors' Chapter 11 Cases. An experienced investment banker in the restructuring space, such as GLC, fulfills a critical need that complements the services offered by the Debtors' other professionals. For these reasons, the Debtors require GLC's investment banking services and restructuring experience.

## **SERVICES TO BE PROVIDED**

13. Subject to further order of the Court, and as more fully described in and consistent with the Engagement Letter, GLC's services prior to and during the Chapter 11 Cases may include the following, to the extent necessary and appropriate:

   a. advising and assisting the Company in examining, analyzing, developing, structuring and negotiating the financial aspects of any potential or proposed strategy for a Transaction;[2]

   b. assisting the Company in soliciting, coordinating and evaluating indications of interest and proposals, tenders and consents in connection with any Transaction (except in connection with a Transaction intended to comply with the requirements of Section 3(a)(9) of the Securities Act of 1933, as amended);

   c. providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

   d. attending meetings of and advising and otherwise communicating with the Company's Board of Directors, creditor groups and other interested parties, as GLC and the Company determine to be necessary or desirable; and

---

[2] As used in the Engagement Letter, Transaction means "the consummation of any of the following whether through one or more transaction(s) or series of transactions, (i) any new debt and/or equity financing, including a rights offering or the issuance or placement, whether public or private, of debt, equity or equity-linked securities, instruments or obligations (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt or other financing, including any "debtor in possession financing" or "exit financing" in connection with a chapter 11 plan or any bankruptcy case ('***Bankruptcy Case(s)***') filed by or against one or more of the entities comprising the Company under chapter 11 of title 11 of the United States Code (the '***Bankruptcy Code***'), whether from new or existing financing providers (a "Financing Transaction"); (ii) any merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or exchange offer, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving a material portion of the business, assets or equity interests, or similar transaction, involving a material portion of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code (each, a '***Sale Transaction***'); or (iii) any restructuring, reorganization and/or recapitalization, including through a plan of reorganization or liquidation (a '***Plan***') (each, a '***Restructuring***') of the Company's outstanding equity, indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), put rights associated with outstanding securities, or other liabilities or obligations (collectively, the '***Existing Obligations***') that is achieved, without limitation, through (1) a solicitation of waivers, consents, acceptances or authorizations from the holders of any Existing Obligations; (2) rescheduling of the maturities or other terms of any Existing Obligations; (3) an amendment or modification of the terms of any Existing Obligations, including, relating to interest rates, repurchase, settlement or forgiveness of Existing Obligations; (4) conversion of any Existing Obligation into equity (other than a conversion on existing terms); (5) an exchange offer involving the issuance of new securities in exchange for any Existing Obligations; (6) any change of control transaction, sale, acquisition or merger, (7) any refinancing or reinstatement; (8) waiver, forbearance or other modification of any financial or operating covenant, or any other provision in respect of any Existing Obligations, or (9) other similar transaction or series of transactions."

      e. providing such other financial advisory services as may be agreed in writing between GLC and the Company.

14. The Debtors submit that it is necessary that they employ GLC to render the foregoing professional services. The Debtors believe that GLC will provide these necessary services in a cost-effective, efficient and timely manner and will not duplicate the services that other professionals will provide to the Debtors in the Chapter 11 Cases. Specifically, GLC will carry out unique functions and the Debtors will coordinate with GLC and their other professionals retained in the Chapter 11 Cases to avoid any unnecessary duplication of services.

## PROFESSIONAL COMPENSATION[3]

15. GLC's decision to advise and assist the Debtors in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code. As more fully described in the Engagement Letter, in consideration of the services provided by GLC, the Debtors have agreed to pay GLC during the Chapter 11 Cases according to the following terms (the "***Fee and Expense Structure***"):[4]

      a. <u>Monthly Advisory Fees</u>: a monthly advisory fee of $150,000 (each, a "***Monthly Advisory Fee***"), payable in advance for the period commencing on the Effective Date of the Engagement Letter, with the first payment due upon execution of the Agreement and subsequent payments due on each monthly anniversary of the Effective Date of the Engagement Letter. Each Monthly Advisory Fee is earned in full when due. In addition, a one-time credit of 50% of the Monthly Advisory Fees in excess of $550,000 actually paid to GLC under the Agreement will be applied against the Restructuring Fee, on a dollar-for-dollar basis up to 100% of the Restructuring Fee.

      If the Company has entered into one or more Transaction agreements and/or a Plan collectively relating to a sale or disposition of substantially all of the equity or assets

---

[3] Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms in the Engagement Letter.

[4] The summary of the Fee and Expense Structure in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained in this Application and the Sellinger Declaration and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern.

7

of the Company and the only remaining condition precedent of the Company's obligations to closing of such Transactions and/or consummation of such Plan (to the extent the conditions require the Company's performance or action) are obtaining any governmental approvals or consents, then any unpaid Monthly Advisory Fees accrued shall remain due but no further Monthly Advisory Fee shall accrue from the time the last of such Transaction agreements or Plan is entered into until the last to occur of the closing of any applicable Transaction of consummation of the Plan.  During such period, GLC shall not be required to perform any services under the Agreement, but the Agreement shall otherwise remain in full force and effect.

b. Financing Transaction Fee: a fee equal to $100,000 (the "*Financing Transaction Fee*") which the parties agree has been earned prior to the date of the Agreement.  The Financing Transaction Fee shall be payable in cash in full at the next closing of the Company's debtor-in-possession Financing Transaction.

c. Sale Transaction Fee: a fee equal to 1.5% of the Aggregate Consideration (as defined on Schedule II of the Engagement Letter) (the "*Sale Transaction Fee*") of each Sale Transaction; provided, however, that for any Sale Transaction that is a credit bid by existing secured creditors of the Company (a "*Credit Bid Sale Transaction*"), the Sale Transaction Fee shall be reduced to a fee equal to 0.5% of the Aggregate Consideration. Each Sale Transaction Fee shall be earned upon the entry of a sale order by the bankruptcy court for the applicable Transaction and payable upon consummation of each Transaction.  For the avoidance of doubt, the PokerCo Sale Transaction Fee will be payable upon consummation of the PokerCo Sale Transaction.

   Sale Transaction Fees shall be credited against the Restructuring Fee as follows:

   (i) A one-time credit of 50% of the Sale Transaction Fee paid to GLC by the Company as a result of the sale of PokerCo to the stalking horse bidder as such sale is currently constructed will be applied once against any Restructuring Fee earned and payable to GLC on a dollar-for-dollar basis up to 100% of such Restructuring Fee. For the avoidance of doubt, if PokerCo is sold for Aggregate Consideration in excess of $16,000,000, there shall be no credit applied against the Restructuring Fee; and

   (ii) For any Sale Transaction not addressed in clause (i), a one-time credit of 100% of any Sale Transaction Fee paid to GLC by the Company will be applied once against any Restructuring Fee earned and payable to GLC on a dollar-for-dollar basis up to 100% of such Restructuring Fee.

d. Restructuring Fee: a fee of $2,000,000 (payable directly out of the gross proceeds of any Restructuring, if available) which shall be earned upon the entry of a sale order by the bankruptcy court and payable upon consummation of the Restructuring (the "*Restructuring Fee*"). For the avoidance of doubt, the following will not be considered a Restructuring and no Restructuring Fee will be due as a result: (i) a sale of PokerCo, by itself, (ii) a rejection, assumption, or modification of any contracts or leases or (iii) a conversion of the chapter 11 cases to cases under chapter 7.

  e. <u>Expense Reimbursement</u>: GLC shall be entitled to monthly reimbursement from the Company of reasonable out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Letter (including, without limitation, travel fees, document production fees, GLC's reasonable out-of-pocket fees and expenses for outside legal counsel and other professional advisors incurred in connection with the negotiation and performance of the Engagement Letter and the matters contemplated thereby, and sales, use or similar tax incurred thereon, and including, in connection with any Bankruptcy Case(s), GLC's retention in such case(s) and any fee issues or disputes that may arise, including defending its fee applications), whether or not a Transaction occurs or is consummated.

  f. <u>Termination Fee</u>: If, during the term of GLC's engagement or as set forth in the last sentence of Section 4(b) of the Engagement Letter, the Company and/or any of its subsidiaries or affiliates receives compensation pursuant to any provision contained in such agreement related thereto (the "***Termination Payment***"), then a cash fee equal to 10% (the "***Termination Fee***") of the Termination Payment, which shall be payable to GLC promptly following the Company's and/or any of its subsidiaries or affiliates' receipt of such Termination Payment, provided that the Termination Fee will not exceed the Transaction Fee that would have been payable had such Transaction been completed, and any Monthly Advisory Fees paid will be credited without duplication and only to the extent not previously credited. For purposes of calculating the Termination Fee, the Termination Payment shall include any judgment for damages, any amount or other consideration received by the Company and/or its subsidiaries or affiliates in settlement of any dispute as a result of such termination or other failure to consummate the Transaction, as well as the fair value of any options granted to the Company and/or its subsidiaries or affiliates (pursuant to any cross option agreement, comparable provision or otherwise).

16. GLC's strategic and financial expertise, as well as its capital markets knowledge, financing skills and restructuring capabilities were important factors to the Debtors in determining the Fee and Expense Structure. Given the numerous issues that GLC may be required to address in the Chapter 11 Cases, GLC's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for GLC's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors believe that the Fee and Expense Structure in the Engagement Letter is reasonable.

17. The Debtors submit that GLC's employment and compensation arrangements are competitive with those entered into by other investment banking firms when rendering comparable services. The Debtors, in consultation with their advisors, compared GLC's fee proposal to

comparable precedents to determine reasonableness of the Fee and Expense Structure. After such comparison, followed by discussions and arm's-length negotiations, the Debtors concluded that the Fee and Expense Structure is in fact reasonable under the standards set forth below.

18. To the best of the Debtors' knowledge, information and belief, no promises have been received by GLC as to compensation in connection with the Chapter 11 Cases other than as outlined in the Engagement Letter, and GLC has no agreement with any other entity to share any compensation received with any person other than the principals and employees of GLC.

19. GLC intends to submit monthly, interim and final applications for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, including any order approving this Application.

## **WAIVER OF COMPLIANCE WITH TIME-DETAIL REQUIREMENTS**

20. It is not the general practice of investment banking firms such as GLC to keep detailed time records similar to those customarily kept by attorneys. Similarly, GLC does not ordinarily keep time records on a "project category" basis, and GLC's compensation is based on a fixed rate and/or fixed-percentage. For these reasons, the Debtors respectfully request that GLC's restructuring professionals only be required to maintain summary records in half-hour (0.50) increments describing, in a summary format, each professional's tasks on a daily basis, including reasonably detailed descriptions of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. To the extent that GLC would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or other

applicable procedures and orders of the Court, or encouraged to do so by the U.S. Trustee Guidelines, the Debtors respectfully request that the Court waive such requirements.

## INDEMNIFICATION

21. As part of the overall compensation payable to GLC under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution and reimbursement obligations set forth in the Engagement Letter, including the Indemnification Agreement attached as Schedule I to the Engagement Letter. Pursuant to the Indemnification Agreement, the Debtors have agreed, among other things, to indemnify, defend, and hold harmless GLC and its affiliates and their respective directors, officers, partners, members, trustees, managers, controlling persons, employees, attorneys, and other agents, advisors and representatives of any of the foregoing and each other person, if any, controlling, controlled by or under common control with GLC or any of its affiliates (GLC and each such person and entity being referred to as an "***Indemnified Person***"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "***Expenses***") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation, whether or not any Indemnified Person is a party, whether or not brought by the Company, the Company's equityholders, the Company's affiliates, creditors or any other third parties (collectively, "***Actions***"), in each case, arising out of, related to or in connection with

  a. (i) any oral or written information provided by or at the request of the Company, its affiliates or their respective directors, officers, partners, members, trustees, managers, controlling persons, employees, attorneys, advisors, representatives or agents which information either they provide to GLC or they or GLC provide to any third parties or (ii) any other action or failure to act by the Company, its affiliates or their respective

directors, officers, employees or agents, or by any Indemnified Person at the request, direction, or with the consent of the Company or one or more members of its board of directors, or

      b.      the Agreement, any actual or potential Transaction, any advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement or any actual or potential Transaction, the transactions contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "**Services**"); provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any of the advice, actions, inactions or Services referred to above other than an action or failure to act undertaken at the request or with the consent of the Company. The Company shall reimburse each Indemnified Person for all Expenses, including reasonable fees and expenses of counsel, incurred in connection with enforcing such Indemnified Persons' rights under the Agreement, including without limitation, all rights to payment of fees and expenses and all indemnification, contribution and reimbursement rights under Schedule I to the Engagement Letter.

22.      However, notwithstanding anything to the contrary in the Engagement Letter or any agreements incorporated by reference in the Engagement Letter, upon entry of an order approving this Application, the Debtors' agreement to indemnify and hold GLC harmless will be modified as follows during the pendency of the Chapter 11 Cases:

      a.      No Indemnified Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

      b.      The Debtors shall have no obligation to indemnify any Indemnified Person or provide contribution or reimbursement to any Indemnified Person, for any claim or expense to the extent it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Indemnified Person's gross negligence, bad faith, willful misconduct, fraud, breach of fiduciary duty (if any) or self-dealing (if found to be applicable) (ii) for a contractual dispute in which the Debtors allege breach of an Indemnified Person's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to sub paragraph (c) hereof to be a claim or expense for which the Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by the Proposed Order; and

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including, without limitation, the advancement of defense costs, GLC must file an application before the Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by the Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request fees and expenses by any Indemnified Person for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to, the Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

23. The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and GLC at arm's length and in good faith, and the Debtors respectfully submit that the indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the Proposed Order. The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

## GLC'S DISINTERESTEDNESS

24. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Sellinger Declaration: (a) GLC has no relevant connection with the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of U.S. Trustee, or any other party with an actual or potential interest in the Chapter 11 Cases (or their respective attorneys or accountants); (b) GLC (and GLC's professionals) are not creditors, equity security holders, or insiders of any of the Debtors; (c) neither GLC nor any of its professionals is or was, within two years of the Petition Date, a director, officer, or employee of any of the Debtors;

13

and (d) neither GLC nor any of its professionals hold or represent an interest materially adverse to any of the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason. Accordingly, based upon its review of interested parties in the Chapter 11 Cases, GLC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and GLC's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

25. Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts to identify and disclose GLC's relationships with parties in interest, GLC is unable to state with absolute certainty that every client relationship or other connection has been disclosed in the Sellinger Declaration. GLC will make continued inquiries following the filing of this Application to monitor for any matters that might affect its disinterested status. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of GLC's retention are discovered or arise, GLC will use reasonable efforts to promptly file a supplemental declaration.

26. In addition, the Debtors shall use commercially reasonably efforts to coordinate with their professionals, including GLC, to avoid any duplication of services provided by any of their retained professionals in the Chapter 11 Cases.

27. According to the Debtors' books and records, during the 90-day period before the Petition Date, GLC received the following from the Debtors: $400,000.00 in monthly fees and $7,411.08 in expense reimbursements. Within one year prior to the Petition Date, the Debtors paid GLC $400,000.00 in fees. As of the Petition Date, the Debtors did not owe GLC for any fees or expenses incurred prior to the Petition Date. It is possible that certain expenses that were incurred

by GLC that are reimbursable were not yet reflected on GLC's books and records as of the Petition Date. Upon entry of an order approving the Application, GLC will waive any claim for such unreimbursed expenses in excess of amounts paid to GLC prepetition.

## BASIS FOR RELIEF

**A.    Retention and Employment of GLC is Permitted Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code**

28.    The Debtors seek approval of the retention and employment of GLC pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in carrying out its duties. 11 U.S.C. § 327(a).

29.    In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." *Id.* § 328(a). Thus, section 328(a) permits the Court to approve the terms of GLC's engagement as set forth in the Engagement Letter, including the Fee and Expense Structure and the indemnification and contribution provisions.

30.    Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys

and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

31. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by GLC, (ii) GLC's substantial experience with respect to financial advisory and investment banking services, and (iii) the Fee and Expense Structure typically utilized by GLC and other leading financial advisors and investment bankers.

## NOTICE

32. Notice of this Application will be given to the parties on the Debtors' Master Service List. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: August 13, 2025                     */s/ Jeff Seery*
                                           Jeff Seery
                                           Chief Restructuring Officer