**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------- x
                                        :

In re:                                :     Chapter 11
                                        :

RUNITONETIME LLC, *et al.*,        :     Case No. 25-90191 (ARP)
                                        :

             Debtors.[1]            :     (Jointly Administered)
                                        :
---------------------------------------------------------- x

**DEBTORS' APPLICATION TO EMPLOY AND RETAIN TRIPLE P TRS, LLC AS**
**RESTRUCTURING ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**EFFECTIVE AS OF THE PETITION DATE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

       The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this application (this "***Application***"):

**RELIEF REQUESTED**

       1.       By this Application, the Debtors seek entry of an order, substantially in the form attached hereto (the "***Proposed Order***"), authorizing the Debtors to (a) to retain and employ Triple P TRS, LLC ("***Portage Point***") as restructuring advisor for the Debtors, effective as of July 14, 2025 (the "***Petition Date***") and in accordance with the terms and conditions of that certain

---

[1]    A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

engagement letter dated as of June 10, 2025, which is attached hereto as **Exhibit A** and incorporated herein by reference (the "***Engagement Letter***").[2]

2.      In support of this Application, the Debtors rely upon and incorporate by reference, the *Declaration of Thomas Studebaker in Support of the Application to Employ and Retain Triple P TRS, LLC as Restructuring Advisor to the Debtors and Debtors in Possession, Effective as of the Petition Date*, which is attached hereto as **Exhibit B** (the "***Studebaker Declaration***").

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Application under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 327(a), 328(a), 1107, and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rules 2014-1, 2016-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

---

[2]    The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Order, shall control.  The Debtors reserve the right to amend, restate, supplement, or modify the Engagement Letter, as the case may be, and any such amended, restated, supplemented, or modified Engagement Letter will be filed with the Court.  Capitalized terms used but not defined herein have the meanings given to them in the Engagement Letter or in the First Day Declaration (defined below), as applicable.

## BACKGROUND

5.      On the Petition Date, the Debtors each commenced with the Court a voluntary case (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code in the Court.

6.      The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On July 25, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "***Committee***") [Docket No. 81].  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

8.      The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "***First Day Declaration***"), filed on the Petition Date and incorporated herein by reference.

## PORTAGE POINT'S QUALIFICATIONS

9.      Portage Point is a restructuring and turnaround management firm whose professionals have a wealth of experience in providing restructuring advisory services and enjoy an excellent reputation for services they have rendered on behalf of debtors and creditors throughout the United States.

10.      Professionals currently employed by Portage Point have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *In re MP Reorganization*, Case No. 25-10211 (BLS) (Bankr D. Del. Mar. 10, 2025); *In re Digital Media Sols., Inc.*, Case No. 24-90468 (ARP) (Bankr. D. Del. Nov. 1, 2024); *In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex.

Oct. 3, 2024); *In re Blink Holdings, Inc.*, Case No. 24-11686 (JKS) (Bankr. D. Del. Sep. 5, 2024);

*In re Appgate, Inc.*, Case No. 24-10956 (CTG) (Bankr. D. Del. June 13, 2024); *In re Source Supply*

*Enters., Inc.*, Case No. 24-11054 (BLS) (Bankr. D. Del. June 13, 2024); *In re Ambri, Inc.*, Case

No. 24-10952 (LSS) (Bankr. D. Del. May 28, 2024); *In re Nogin, Inc*., Case No. 23-11945 (CTG)

(Bankr. D. Del. Dec. 5, 2023); *In re AppHarvest Prods., LLC*, Case No. 23-90745 (CML) (Bankr.

S.D. Tex. Sept. 12, 2023); *In re Center for Autism and Related Disorders, LLC*, Case No. 23-

90709 (CML) (Bankr. S.D. Tex. Aug. 8, 2023); *In re Benitago Inc.*, Case No. 23-11394 (SHL)

(Bankr. S.D.N.Y Aug. 31, 2023*); *In re Plastiq*, Case No. 23-10174 (BLS) (Bankr. D. Del. June

19, 2023); *In re Big Village Holding LLC*, Case No. 23-10174 (CTG) (Bankr. D. Del. Mar. 6,

2023); *In re IEH Auto Parts Holding LLC* (*Auto Plus*), Case No. 23-90054 (Bankr. S.D. Tex.

Jan. 31, 2023); *In re MusclePharm Corp.*, Case No. 22-14422 (NMC) (Bankr. D. Nev. Feb. 14,

2023); *In re Performance Powersports Grp. Inv., LLC*, Case No. 23-10047 (LSS) (Bankr. D. Del.

Jan. 16, 2023); *In re Compute North Holdings, Inc., et al.,* Case No. 22-90273 (MI) (Bankr. S.D.

Tex. October 24, 2022); *In re Pipeline Health Sys., LLC*, Case No. 22-90291 (MI) (Bankr. S.D.

Tex. Oct. 2, 2022) (Independent Board Member and Restructuring Committee Chair); *In re*

*Compute North Holdings, Inc.*, Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sept. 22, 2022); *In re*

*Voyager Digit. Holdings LLC*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 5, 2022)

(Independent Board Member and Restructuring Committee Chair); *In re VJGJ, Inc. (f/k/a Teligent,*

*Inc.)*, Case No. 21-11332 (BLS) (Bankr. D. Del. Oct. 14, 2021); *In re Alex and Ani, LLC*, Case

No. 21-10918 (CTG) (Bankr. D. Del. July 15, 2021); *In re Intelsat S.A., et al.,* Case No. 20-32299

(KLP) (Bankr. E.D. Va. July 2, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, Case No.

21-10474 (MFW) (Bankr. D. Del. March 29, 2021); *In re Bouchard Transp., Co., Inc.*, Case No.

20-34682 (DRJ) (Bankr. S.D. Tex. Nov. 23, 2020); *In re Hornbeck Offshore Servs., LLC*, Case No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020).

11.     Since June 2025, Portage Point has provided restructuring advisory services to the Debtors.   In providing such prepetition professional services, Portage Point has acquired knowledge of the Debtors and their businesses, and developed familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.   Likewise, in providing prepetition services to the Debtors, Portage Point and its personnel (the "***Portage Point Professionals***") have worked closely with the Debtors' senior management and other advisors to understand the Debtors' business.   For these reasons, Portage Point is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of the Chapter 11 Cases. The retention of Portage Point on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## SERVICES TO BE PROVIDED

12.     The terms of the Engagement Letter shall govern the Debtors' retention of Portage Point except as explicitly set forth herein or in any order granting this Application.

13.     Among other things, the Portage Point Professionals will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans, and supporting negotiations among the Debtors, their advisors and their creditors with respect to an overall exit strategy for their Chapter 11 Cases.

14.     Portage Point will provide such restructuring support services as Portage Point and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to:

   a.     assisting in the evaluation and / or development of a short-term cash flow model and / or related liquidity management tools for the Company for such purpose(s) as the Company may require;

   b.     assisting in the evaluation and/or development of various strategic and/or financial alternatives and financial analyses for such purpose(s) as the Company may require;

   c.     assisting the Company in its engagement and negotiations with its various constituents, including, without limitation, holders of the Company's debt or equity, the Company's employees, and the Company's customers, vendors, and other commercial counterparties (collectively, "*Constituents*"); which assistance may include, without limitation, meeting with Constituents, developing presentations and providing management with financial analytical assistance necessary to facilitate such negotiations;

   d.     assisting in the evaluation and implementation of contingency planning related to Company's commencing or otherwise becoming the subject of a case under chapter 11 of title 11 of the United States Code (any such case, a "*Chapter 11 Case*");

   e.     assisting in obtaining and presenting information required by parties in interest in a Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "*Bankruptcy Court*");

   f.     assisting in the preparation of other business, financial and/or other reporting related to a Chapter 11 Case, including, but not limited to, development and execution of asset sales, a chapter 11 plan of reorganization for the Company (a "*Plan*"), and a disclosure statement for the Plan;

   g.     providing testimony and other litigation support if requested by the Company or its legal counsel; and

   h.     assisting with such other matters as may be requested by the Company that are within Portage Point's expertise and otherwise mutually agreeable to Portage Point and the Company.

15.     The foregoing services are necessary to enable the Debtors to pursue and consummate the value-maximizing transactions contemplated in the Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

16.     Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in Schedule 1 of the Engagement Letter (the "*Fee and Expense Structure*").

17.     Portage Point's current standard hourly rates for restructuring advisory services, are as follows:

| Title | Hourly Rate (USD) |
|---|---|
| CEO | $1,150 |
| Service Line Leader | $950 - $995 |
| Managing Director | $895 - $950 |
| Director | $695 - $780 |
| Vice President | $550 - $675 |
| Associate | $395 - $450 |

In the ordinary course of its business, Portage Point may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates have become effective.  Portage Point shall provide ten (10) business days' notice to the Debtors, the Office of the United States Trustee for the Southern District of Texas (the "*U.S. Trustee*"), and the Committee before any increases in the hourly rates set forth in the Application or the Engagement Letter are implemented.  Portage Point's hourly rates are typically adjusted

quarterly to reflect the advancing expertise, capabilities, and seniority of Portage Point's professionals as well as general economic factors.

18.     The foregoing are Portage Point's current customary hourly rates, and the Debtors and Portage Point respectfully submit that such rates are reasonable.  In addition to compensation for professional services rendered by Portage Point's personnel, Portage Point will seek reimbursement for reasonable and necessary expenses incurred in connection with the Chapter 11 Cases, including but not limited to data sets, reports, technology, outside copy services, travel, lodging, meals, outside counsel, and services of outside vendors.

19.     The Debtors understand that Portage Point intends to apply to the Court for allowance of compensation and reimbursement of expenses for its restructuring advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Bankruptcy Local Rules, orders of this Court, and guidelines established by the U.S. Trustee.

20.     The Debtors submit that the Fee and Expense Structure is reasonable, market-based, and designed to compensate Portage Point fairly for its work and to cover fixed and routine overhead expenses.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Portage Point and the fee structures typically utilized by leading advisory firms of similar stature to Portage Point for comparable engagements.  The Fee and Expense Structure is consistent with Portage Point's normal and customary billing practices for cases of this size and complexity and that require the level and scope of services outlined herein.

## PORTAGE POINT'S PREPETITION COMPENSATION

21.     Prior to the Petition Date, Portage Point received advance payments totaling $550,000 (the "**_Retainer_**").  Portage Point's fees and reimbursable expenses for the prepetition period totaled approximately $518,144.  The portion of the Retainer not applied to prepetition fees

and disbursements is currently estimated to be approximately $31,856.  To the extent there are any additional fees and expenses that were incurred prepetition but not yet applied against Portage Point's Retainer, Portage Point will apply such fees and expenses against Portage Point's Retainer and hold the remaining portion of the Retainer as security until Portage Point's final fees and expenses are awarded by the Court.

22.     Pursuant to Bankruptcy Rule 2016(b), Portage Point has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with Portage Point professionals or (b) any compensation another person or party has received or may receive from the Debtors.

## NO DUPLICATION OF SERVICES

23.     The Debtors believe that the services provided by Portage Point will not duplicate the services that other professionals will be providing to the Debtors in the Chapter 11 Cases. Specifically, Portage Point will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in the Chapter 11 Cases to avoid the unnecessary duplication of services.

## INDEMNIFICATION PROVISIONS

24.     As part of this Application, the Debtors also request that the Court approve the indemnification provisions set out in the Engagement Letter (the "***Indemnification Provisions***"). The terms and conditions of the Engagement Letter, including the Indemnification Provisions set forth therein, were negotiated by the Debtors and Portage Point at arm's length and in good faith. The Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Portage Point's proposed retention, and as modified by the Order requested herein, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Portage Point's services for a successful result in these cases.

As set forth in the Proposed Order, during the pendency of the Chapter 11 Cases, the Engagement

Letter's indemnification provisions shall be subject to the following:

a.     subject to the provisions of subparagraphs (b) and (c), *infra*, the Debtors are
authorized to indemnify, and shall indemnify, Portage Point in accordance
with the Engagement Letter for any claim arising from related to or in
connection with the services provided for, whether pre-petition or post-
petition, in the Engagement Letter;

b.     the Debtors shall have no obligation to indemnify Portage Point for any
claim or expense that is either (i) judicially determined (the determination
having become final) to have resulted primarily from Portage Point's gross
negligence, willful misconduct, breach of fiduciary duty (if any), bad faith,
or fraud unless the Court determines that indemnification would be
permissible under applicable law or (ii) settled prior to a judicial
determination as to Portage Point's gross negligence, willful misconduct,
breach of fiduciary duty (if any), bad faith, or fraud, but determined by the
Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be
a claim or expense for which Portage Point should not receive
indemnification, contribution, or reimbursement under the terms of the
Engagement Letter; and

c.     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan
in these cases (that order having become a final order no longer subject to
appeal), and (ii) the entry of an order closing the Chapter 11 Cases, Portage
Point believes that it is entitled to the payment of any amounts by the
Debtors on account of the Debtors' indemnification, contribution, or
reimbursement obligations under the Engagement Letter, including without
limitation the advancement of defense costs, Portage Point must file an
application therefore in this Court, and the Debtors may not pay any such
amounts to Portage Point before the entry of an order by this Court
approving the payment.  This subparagraph (c) is intended only to specify
the period of time during which the Court shall have jurisdiction over any
request for indemnification, contribution, or reimbursement by Portage
Point and not a provision limiting the duration of the Debtors' obligation to
indemnify Portage Point.

## PORTAGE POINT'S DISINTERESTEDNESS

25.     To the best of the Debtors' knowledge and except to the extent disclosed herein and

in the Studebaker Declaration:  (a) Portage Point is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code

and supplemented by section 1107(b) of the Bankruptcy Code and does not hold or represent an

interest materially adverse to the Debtors' estates; (b) Portage Point has no connection to the Debtors, their creditors, or other parties-in-interest in the Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed by the U.S. Trustee's office; and (c) does not hold any interest adverse to the Debtors' estates.

26.     As set forth in further detail in the Studebaker Declaration, Portage Point has certain connections with creditors, equity security holders, and other parties-in-interest in the Chapter 11 Cases.  All of these matters, however, are unrelated to the Chapter 11 Cases.  Portage Point does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or the Chapter 11 Cases.

27.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Portage Point's retention are discovered or arise, Portage Point will use reasonable efforts to promptly file a supplemental declaration disclosing the same.

## **BASIS FOR RELIEF**

28.     The Debtors submit that the retention of Portage Point under the terms described herein is appropriate under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

a.      is not a creditor, an equity security holder, or an insider;

b.      is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

c.      does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct

or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

29.     Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  Portage Point's prepetition relationship with the Debtors is therefore not an impediment to Portage Point's retention as Debtors' postpetition restructuring advisor.

30.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of Portage Point's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.

31.     The Debtors selected Portage Point as their restructuring advisor because of Portage Point's experience and reputation for providing restructuring advisory services in large, complex chapter 11 cases, such as the Debtors' cases.  Furthermore, Portage Point has performed substantial prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, Portage Point's professionals have worked closely with the Debtors' management and their other advisors. Accordingly, Portage Point has experience, expertise, and relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in the Chapter 11 Cases.  The Debtors submit that the retention of Portage Point on the terms and conditions set forth herein are

necessary and appropriate, in the best of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

32.     The Debtors submit that the terms of the Engagement Letter were negotiated in good faith and at arms' length between the Debtors and Portage Point and reflect the extensive work and substantial commitment undertaken by Portage Point before the Petition Date, as well as the Debtors' evaluation of the extensive work and substantial commitment remaining to be completed by Portage Point during the Chapter 11 Cases.  The Debtors submit that the terms and conditions of the Engagement Letter, including the Fee and Expense Structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that Portage Point may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, (b) Portage Point's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (c) Portage Point's substantial experience with respect to the provision of restructuring advisory services, (d) the market prices for Portage Point's services for engagements of this nature, and (e) the fee structures typically utilized by Portage Point and other restructuring advisory firms in bankruptcy or otherwise.

33.     The Debtors request that Portage Point's retention be made effective as of the Petition Date to allow Portage Point to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Application.  The Debtors submit that, under the circumstances, and to avoid harm to the Debtors' estates that may occur if Portage Point is not immediately retained, retroactive approval to the Petition Date is warranted.

## **NOTICE**

34.     Notice of this Application will be given to the parties on the Debtors' Master Service List.    A  copy  of  this  Motion  is  available  on  (a)  the  Court's  website,  at

www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent,

Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

[*Remainder of page intentionally left blank*]

The Debtors respectfully request entry of the Order granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

Signed:  August 13, 2025                    Respectfully submitted,

                                            /s/ *Jeff Seery*
                                            Jeff Seery
                                            Chief Restructuring Officer

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on August 13, 2025 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II