**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

----------------------------------------------------------- x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
RUNITONETIME LLC, *et al.*,                                 :   Case No. 25-90191 (ARP)
                                                            :
Debtors.[1]                                                 :   (Jointly Administered)
                                                            :
----------------------------------------------------------- x

**ORDER (I) ESTABLISHING BIDDING, NOTICING, AND ASSUMPTION AND**
**ASSIGNMENT PROCEDURES, AND (II) GRANTING RELATED RELIEF**
**[Relates to Motion at Docket No. 93]**

Upon the emergency motion (the "***Motion***")[2] of the Debtors for entry of an order
(this ***Order***") (a) authorizing and approving the proposed bidding procedures, attached to this
Order as **Exhibit 1** (the "***Bidding Procedures***"), in connection with the Sale; (b) approving the
procedures for the Debtors to select one or more Stalking Horse Bidders for certain of the Debtors'
Assets and enter into related Stalking Horse Agreements containing Bid Protections, to the extent
set forth in the Bidding Procedures; (c) authorizing and approving the Assumption and Assignment
Procedures, including the form and manner of the Cure Notice; (d) authorizing and approving the
form and manner of notice of the Auction, the Sale, and the Sale Hearing(s), including the Sale
Notice; (e) establishing certain dates and deadlines in connection with the Sale process, including
the Sale Hearing(s); and (f) granting related relief, all as more fully set forth in the Motion; and
the Court having reviewed the Motion, and the First Day Declaration; and the Court having

---

[1]   A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and
      noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE
      144th Street, Kirkland, Washington 98304.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Motion.

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Order; and upon the record herein; and after due deliberation thereon; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby:[3]

### FOUND AND DETERMINED THAT:

A.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders and granting Bid Protections; (ii) the Sale Notice; (iii) the Assumption and Assignment Procedures and the Cure Notice; and (iv) the scheduled date of the Auction and the Sale Hearing.

B.      *Bidding Procedures*. The Bidding Procedures are fair, reasonable, and appropriate under the circumstances, comply with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and are designed to maximize the recovery

---

[3]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

on, and realizable value of, the Assets, as determined by the Debtors in an exercise of their business judgment.

C.     *Stalking Horse Bid Protections.* Any Break-Up Fee and Expense Reimbursement Amount (together, the "***Bid Protections***"), to the extent afforded by the Debtors to a Stalking Horse Bidder subject to the terms of this Order and in accordance with the Bidding Procedures and payable under the terms of a Stalking Horse Agreement, are fair, reasonable, and appropriate in light of the proposed Sale and shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

D.     *Notice Procedures.* The form and manner of notice for the Sale process, including the Sale Notice, the Cure Notice, and other forms of notice under the Bidding Procedures, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (1) the date, time, and place of the Auction (if one is held); (2) the approval of the Bidding Procedures and certain dates and deadlines related thereto; (3) the objection deadlines related to the Sale and the date, time, and place of the Sale Hearing; (4) reasonably specific identification of the Assets for sale; (5) representations describing any Sale Transactions as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens; and (6) notice of the proposed assumption and assignment of the Assigned Contracts and the rights, procedures, and deadlines for objecting thereto. No other or further notice of the Sale shall be required.

E.     *Assumption and Assignment Procedures.* The Assumption and Assignment Procedures are fair, reasonable, appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Cure Notice is reasonably calculated to provide

3

counterparties to the Assigned Contracts with proper notice of (a) the intended assumption and assignment of their executory contracts or unexpired leases, (b) any Cure Costs payable thereto, and (c) the Assumption and Assignment Procedures.

F.     *Other Findings.* The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS THEREFORE ORDERED THAT:**

## I.     The Bidding Procedures

1.     The Bidding Procedures, substantially in the form attached to this Order as **Exhibit 1**, are approved in their entirety and incorporated into this Order by reference, as though fully set forth herein. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

## II.     Important Dates and Deadlines

2.     *Competitive Bidding*. The following dates and deadlines regarding competitive bidding are hereby established, in each case subject to any extension in accordance with the Bidding Procedures:

(a)     Indication of Interest Deadline: August 20, 2025, at 4:00 p.m. (prevailing Central Time), shall be the deadline by which all Indications of Interest must be **actually received** by the Debtors, as further described in the Bidding Procedures.

(b)     Bid Deadline: September 17, 2025, at 4:00 p.m. (prevailing Central Time), shall be the deadline by which all Bids must be **actually received** by the Debtors, as further described in and subject to the Bidding Procedures.

(c)   Auction. The Auction, if any, shall be held on September 19, 2025, at 10:00 a.m. (prevailing Central Time) at a location designated by the Debtors (in consultation with the Consultation Parties) and as further described in the Bidding Procedures or via a virtual meeting (either telephonic or via videoconference) the information to join which virtual meeting shall be provided by the Debtors to each Qualified Bidder prior to the Auction.

3.   Sale Objection Deadline. Any and all objections to the Sale or any Sale Transaction must (a) be in writing, (b) state, with specificity, the legal and factual bases for such objection; (c) comply with the Bankruptcy Code; the Bankruptcy Rules, the Bankruptcy Local Rules and all orders of this Court entered in the Chapter 11 Cases; (d) be filed with this Court by the later of the date that is three days after the filing of the Notice of Successful Bidder or September 23, 2025 at 4:00 p.m. (prevailing Central Time) (the "*Sale Objection Deadline*") and (e) be served upon the following parties (collectively, the "*Objection Notice Parties*"): (1) proposed counsel to the Debtors, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071-1560 (Attn: Helena Tseregounis, and Nicholas Messana) (helena.tseregounis@lw.com, and nicholas.messana@lw.com) and 1271 Avenue of the Americas, New York, New York 10020 (Attn: Andrew Sorkin) (andrew.sorkin@lw.com); (2) proposed co-counsel to the Debtors, Hunton Andrews Kurth LLP, 600 Travis St., Houston, Texas 77002 (Attn: Timothy A. "Tad" Davidson II, Ashley L. Harper, and Philip M. Guffy) (taddavidson@hunton.com, ashleyharper@hunton.com, and pguffy@hunton.com); (3) counsel to the Ad Hoc Group and Backstop Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704 (Attn: Ryan P. Dahl, Daniel Gwen, and Margaret Alden) (ryan.dahl@ropesgray.com, daniel.gwen@ropesgray.com, and margaret.alden@ropesgray.com); (4) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Jayson Ruff and Vianey Garza) (jayson.b.ruff@usdoj.gov and vianey.garza@usdoj.gov); (5) proposed counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 300 Colorado Street, Suite 1800, Austin, Texas 78701 (Attn: Lorenzo

Marinuzzi) (lmarinuzzi@mofo.com) and 250 West 55th Street, New York, New York 10019 (Attn: Doug Mannal, Theresa Foudy, Benjamin Butterfield, and Raff Ferraioli) (dmannal@mofo.com, tfoudy@mofo.com, bbutterfield@mofo.com, and rferraioli@mofo.com); and (6) any Successful Bidder(s). Any party or entity who fails to timely file an objection conforming with the requirements and deadlines set forth in this paragraph 3 shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of any Assets free and clear of all liens, claims, encumbrances, and other interests.

4.      Sale Hearing. The Sale Hearing to approve the Sale of the Assets and related Sale Transactions shall be held on or before September 26, 2025, at 10:00 a.m. (prevailing Central Time); *provided*, *however*, that the Sale Hearing may be continued by the Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, from time to time, either by Court docket entry or by the Debtors filing a notice on the Court's docket, without further notice to creditors or parties in interest; *provided, further* that the Debtors, in consultation with the Consultation Parties, reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s).

5.      The dates and deadlines set forth in this Order are subject to modification by the Debtors in consultation with the Consultation Parties and in accordance with the Bidding Procedures.

### III.   Supporting Shareholder and Management

6.      Any Insider or Affiliate (as those terms are defined in the Bankruptcy Code), or member of the Debtors' current or former management team, including, but not limited to, Mr. Eric Persson (the "***Supporting Shareholder***"), either as an individual or through a person or entity affiliated with the respective member of the Debtors' current or former management, participating in a bid to purchase the Assets, shall be excluded from evaluating bids from other parties and shall

not be entitled to receive any non-public information regarding any such competing bids and shall not advise the Debtors on the same.

## IV.    Procedures for Designation of a Stalking Horse Bidder.

7.      The Debtors, in consultation with the Consultation Parties, may, in the exercise of their business judgment and as they may reasonably determine to be in the best interests of their estates, select a Stalking Horse Bidder or Stalking Horse Bidders for any groupings or subgroupings of the Assets, for the purposes of establishing one or more Stalking Horse Bids with respect to such Assets and provide any such Stalking Horse Bidder with Bid Protections pursuant to a Stalking Horse Agreement and consistent with the designation procedures set forth in the Bidding Procedures and this Order (such procedures, the "***Stalking Horse Designation Procedures***").

8.      Any designation of Stalking Horse Bidder for any assets shall be made no later than 4:00 p.m. (prevailing Central Time) on September 2, 2025 (the "***Stalking Horse Designation Deadline***"). The Debtors shall file a notice of such Stalking Horse Agreement (the "***Stalking Horse Notice***") with the Court and provide such Stalking Horse Notice to: (a) the parties identified on the Master Service List; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Agent; (d) counsel to the Committee; (e) all Interested Parties; and (f) all parties reasonably known to the Debtors to assert an interest in the assets. Parties in interest shall then have until 4:00 p.m. (prevailing Central Time) on September 8, 2025 (the "***Stalking Horse Objection Deadline***") to object to the Debtors' designation of such Stalking Horse Bidder(s) and any Bid Protections offered to such Stalking Horse Bidder(s).

9.      In the event that the Debtors designate a Stalking Horse Bidder and the Stalking Horse Bidder is not the Successful Bidder with respect to the Stalking Horse Bid, the Debtors shall be authorized, but not directed, to make certain payments under the Stalking Horse Bid in

consideration of its being the Stalking Horse Bidder, including (a) any Break-Up Fee and (b) any Expense Reimbursement Amount (together, the "**Bid Protections**"). The amount of any consensual Break-Up Fee and Expense Reimbursement Amount shall, in the aggregate, not exceed 1.5% of the cash portion of the applicable Transaction Purchase Price (as defined below) for such Stalking Horse Bid, with such amount to be paid solely in accordance with the terms and conditions set forth in the applicable Stalking Horse Agreement. The sole remedy against the Debtors of any Stalking Horse Bidder in connection with its Stalking Horse Bid shall be the return of the applicable deposit (if applicable) and the Bid Protections (if any) in the event that the applicable Stalking Horse Agreement is terminated pursuant to the applicable provisions of such agreement.

10.     The following parties shall not be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment: any (a) party making a credit bid (irrespective of whether it is a Stalking Horse Bidder), (b) Insider or Affiliate, and any other person or entity that is, or is otherwise affiliated with, any member of the Debtors' current or former management team; *provided*, *however*, that solely with respect to any stalking-horse bid submitted for the PokerCo assets by the Supporting Shareholder or its designee (a "**Supporting Shareholder Stalking Horse Bid**"), the Debtors may, pursuant to these Stalking Horse Designation Procedures, seek approval of the bid protections for the Supporting Shareholder or its designee contemplated by the Transaction Support Agreement (including the expense reimbursement and overbid protections specified therein) (such bid protections, the "**Supporting Shareholder Bid Protections**"); *provided further* that nothing in the Bidding Procedures or this Order shall be deemed to permit or approve any Bid Protections (including the Supporting Shareholder Bid Protections), and the rights of all parties in interest, including the Committee, to object to any Stalking Horse Bid (including the Supporting Shareholder Stalking Horse Bid) and/or

proposed Bid Protections (including the Supporting Shareholder Bid Protections), pursuant to and in accordance with the Stalking Horse Designation Procedures, are expressly reserved in all respects; and (c) bidder other than a Stalking Horse Bidder (each on the terms described herein and in the Bidding Procedures).

11.     If there is no objection timely filed to any Stalking Horse Notice prior to the Stalking Horse Objection Deadline, including with respect to the Bid Protections or the Supporting Shareholder Bid Protections (or if such an objection is timely filed but is consensually resolved before a hearing thereon), the designation of the Stalking Horse Bid and Stalking Horse Bidder and associated Bid Protections or Supporting Shareholder Bid Protections (as modified by any such consensual resolution) shall be deemed approved with no further action needed by the Court. If a timely filed objection is consensually resolved, the Debtors shall promptly file a notice on the docket identifying the objection that has been resolved, and such notice shall include the revised stalking horse bid documents and a brief description of the modifications, if any. If such an objection is timely filed and not consensually resolved, the Court will schedule a hearing to resolve such an objection, subject to its availability.

12.     For the avoidance of doubt, (a) the Debtors shall not be required to file a separate motion to seek approval of (i) any Bid Protections that do not, in the aggregate, exceed 1.5% of the cash portion of the applicable Transaction Purchase Price (as defined below) for such Stalking Horse Bid or (ii) the Supporting Shareholder Bid Protections; and (b) the approval of any such Bid Protections or Supporting Shareholder Bid Protections shall be governed in all respects by the Stalking Horse Designation Procedures, including the objection procedures set forth therein.

13.     Notwithstanding anything herein or in the Bidding Procedures to the contrary, if any objection is filed to the Debtors' designation of a Supporting Shareholder Stalking Horse Bid

in any respect, including with respect to the Supporting Shareholder Bid Protections, such objection shall be heard by the Court no later than September 12, 2025 (subject to Court availability).

14.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable following the entry of this Order, the Debtors will cause the Sale Notice to be served upon the following parties, and their respective counsel, if known (collectively, the "***Sale Notice Parties***"): (a) the Objection Notice Parties; (b) all entities reasonably and actually known by the Debtors to have expressed a bona fide interest in acquiring any of the Assets during the year preceding the date hereof; (c) all entities known by the Debtors to have asserted any claims, liens, interests, or encumbrances in or upon any of the Assets, (d) all known parties to executory contracts or unexpired leases to be assumed and assigned, or rejected, as part of the Sale; (e) counsel to the Committee, (f) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including any such gaming regulatory authorities; (g) each governmental agency that has a reasonably known interest with respect to the Sale and the transactions provided thereunder; (h) the United States Attorney for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Federal Trade Commission; and (k) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice.

15.     In addition, as soon as practicable, after entry of this Order, the Debtors will publish the Sale Notice, with any modification necessary for ease of publication, once in the national edition of *The New York Times* or a similarly nationally circulated news publication and once in a locally circulated publication in each of Washington and Nevada, to provide notice to any other potential interested parties and interested parties whose identities are unknown to the Debtors.

## V.      The Assumption and Assignment Procedures

16.      The procedures set forth below regarding the assumption and assignment of the executory contracts or unexpired leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder(s), pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "***Assumption and Assignment Procedures***") are hereby approved to the extent set forth herein.

17.      These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale, subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (as defined below) (the "***Cure Costs***"):

(a)      **Contracts Schedule and Cure Notice**. No later than September 8, 2025 (the "***Cure Notice Deadline***"), the Debtors shall (i) serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the ***"Cure Notice"***), via first-class mail on all counterparties to all potential contracts or leases that may be assumed and assigned by any Stalking Horse Bidder(s) or any Qualified Bidder(s) in connection with the Sale (the "***Assigned Contracts***") and (ii) shall provide a copy of the Cure Notice to any Stalking Horse Bidder and the Consultation Parties, which copy may be provided via email and to such parties' legal counsel. The Cure Notice shall inform each recipient of the timing and procedures relating to the potential assumption and assignment of the Assigned Contracts to a Successful Bidder or Successful Bidders upon entry of the Sale Order, and, to the extent applicable, (1) the Debtors' good faith estimates based on the Debtors' books and records of the Cure Costs (if any) as of the date of the Cure Notice or Supplemental Cure Notice, as applicable, required in connection with the executory contract or unexpired lease, as applicable, (2) the Cure Objection Deadline, and (3) the applicable Sale Objection Deadline; *provided*, *however*, that service of a Cure Notice does not constitute an admission that any contract or lease is an executory contact or unexpired lease, respectively, or that the stated Cure Cost related to any contract or lease constitutes a claim against the Debtors or a right against any Stalking Horse Bidder (all rights with respect thereto being expressly reserved). Further, the inclusion of a contract or lease, as applicable, on the Cure Notice is not a guarantee that such contract or lease, as applicable, will ultimately be assumed and assigned.

(b)      **Cure Payments and Adequate Assurance of Future Performance.** The payment of the applicable Cure Costs by any party, as applicable, shall (i) effect a cure of all

monetary defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(c) **Modifications**. Until three business days prior to the Sale Hearing, the Debtors reserve the right, in consultation with the Successful Bidder(s) once selected, and are authorized, but not directed, to (i) designate additional Assigned Contracts, (ii) eliminate Assigned Contracts from those to be assumed and assigned to a Successful Bidder, or (iii) modify the previously stated Cure Cost associated with any contract or lease identified on a Cure Notice; *provided* that the Debtors may designate or eliminate any collective bargaining agreement until consummation of the Sale.

(d) **Supplemental Notice**. In the event that (i) any contract or lease is added or removed from the list of Assigned Contracts or (ii) any previously stated Cure Costs are modified, the Debtors will promptly, and in any event no later than two days after the Debtors, in consultation with the applicable Stalking Horse Bidder(s), Qualified Bidder(s), or Successful Bidder(s), make such determination, serve a supplemental cure notice (each, a "***Supplemental Cure Notice***") on each impacted counterparty. Each Supplemental Cure Notice will include the same information with respect to the applicable contract or lease as is required to be included in the Cure Notice.

(e) **Objections**. The deadline to object to the Debtors' proposed Cure Costs is the date that is 14 days after service of the Cure Notice or Supplemental Cure Notice, as applicable (the "***Cure Objection Deadline***"); *provided* that if previously stated Cure Costs are modified resulting in a Supplemental Cure Notice, the Cure Objection Deadline shall be 14 days after the service of the original Cure Notice. Following the Auction (if any), the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder(s) and Backup Bidder(s) (if selected) with respect to each Sale Transaction as soon as reasonably practicable after closing of the Auction with respect to such Sale Transaction, if any, and in any event not later than one day after the closing of the Auction. In the event there is no Auction with respect to a Sale Transaction, the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder on September 19, 2025. The deadline to object to the Sale or any Sale Transaction, the proposed order(s) approving any Successful Bid(s), the identity of the Successful Bidder(s), or adequate assurance of future performance with respect to a counterparty's contract or lease provided by the Successful Bidder(s) is the later of the date that is three days after the filing of the Notice of Successful Bidder or September 23, 2025, at 4:00 p.m. (prevailing Central Time) (the "***Sale Objection Deadline***"). All objections shall: (1) be in writing, (2) state, with specificity, the legal and factual bases for such objection, (3) if such objection is to the Cure Cost, state with specificity what Cure Cost the counterparty believes is required (in all cases, with appropriate documentation in support thereof), (4) comply with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all orders of the Court entered in these Chapter 11 Cases, and (5) be filed with the Court and served on the Objection Notice Parties by the applicable objection deadline. Any objections to the assumption and

assignment of the Assigned Contracts will be heard at the Sale Hearing (to the extent such hearing has not occurred as of the applicable Cure Objection Deadline) or at a later hearing, as determined by the Debtors. The Debtors further request the ability to settle on a consensual basis any dispute regarding Cure Costs or the assumption or assignment of an Assigned Contract on any basis without further order of the Court.

For the avoidance of doubt, in the event that a party receives a Supplemental Cure Notice that either (i) designates the contract or lease as an Assigned Contract for the first time or (ii) decreases the previously stated Cure Costs associated with any such contract or lease, the Cure Objection Deadline shall be extended to no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days after the filing and service of such Supplemental Cure Notice, solely to the extent such objection relates to the newly-designated Assigned Contract or the Cure Cost, as applicable.

(f)     **Reservation of Rights**. The inclusion of an Assigned Contract, or Cure Costs with respect thereto on a Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such Assigned Contract is an executory contract or unexpired lease of the Debtors within the meaning of section 365 of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Assigned Contract listed on the Cure Notice or any Supplemental Cure Notice. The Debtors' inclusion or exclusion of any Assigned Contract on a Cure Notice or any Supplemental Cure Notice shall not be a guarantee that such contract or lease ultimately will or will not be an Assigned Contract. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, the rights of all parties are fully reserved with respect to any additional or incremental default that occurs with respect to an executory contract following the filing of the Cure Notice or Supplemental Cure Notice, as applicable, and prior to the effective date of assumption.

18.     Unless a counterparty to an Assigned Contract files an objection to the Cure Cost of its Assigned Contract by the Cure Objection Deadline, such counterparty will be (a) deemed to have consented to such Cure Cost, and (b) forever barred and estopped from objecting to the Cure Costs; *provided, however*, that notwithstanding anything to the contrary in this Order or the Bidding Procedures, the rights of all parties are fully reserved with respect to any additional or incremental default that occurs with respect to an executory contract following the filing of the Cure Notice or Supplemental Cure Notice, as applicable, and prior to the effective date of assumption.

19.     Unless a counterparty to an Assigned Contract files an objection to the proposed assumption and assignment of its Assigned Contract by the Sale Objection Deadline, such counterparty shall be (a) deemed to have consented to (i) the assumption and assignment of such Assigned Contract, and (ii) the related relief requested in the Motion, and (b) forever barred and estopped from objecting to the assumption and assignment of the Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code, and from asserting any additional cure or other amounts against the Debtors or the Buyer with respect to such party's Assigned Contract.

## VI.    Related Relief

20.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, (a) the right of any party to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in this Order shall be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in this Order shall prejudice any party in interest's rights to object to a credit bid (subject to the limitations set forth in this Order, the Bidding Procedures, the DIP Orders, or any other party's right to oppose such objection); *provided, however*, notwithstanding anything to the contrary contained herein, subject to the terms of the DIP Orders, including those regarding Challenges (as defined in the DIP Orders), the DIP Lenders, the DIP Agent (acting on behalf of the DIP Lenders), the Prepetition Lenders, and the Prepetition Agent (acting on behalf of the Prepetition Lenders) (together, the "***Existing Lenders***") or a designee of the foregoing shall be deemed Qualified Bidders for all purposes and shall have the right to bid or credit bid all or any portion of the loans under the DIP Facility and the Prepetition Credit Agreement subject to section 363(k) of the Bankruptcy Code with respect to some or all of the Assets, and any such bid will be considered a

Qualified Bid to the extent such bid is received by the Bid Deadline. Nothing herein or in the Bidding Procedures shall affect or in any way limit the right or ability of any party in interest, including the Committee, to object to the right of Existing Lenders to credit bid, including the nature, amount, or scope of such credit bid, subject to the applicable provisions of the DIP Orders *provided* that if the Committee commences a timely Challenge in accordance with the DIP Orders, then the Existing Lenders will not be permitted to credit bid on the Assets subject to such timely Challenge (but will be permitted to credit bid for all other Assets constituting the Existing Lenders' collateral that is not subject to a timely Challenge) until such time that the Challenge has been resolved by the Court or as agreed by the parties.

21.     Upon reasonable request, the Debtors shall provide to the Consultation Parties and their advisors regular reports concerning the Sale process, including parties contacted, proposals received, and any due diligence requested by potential purchasers.

22.     All rights of the Debtors, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to modify the Bidding Procedures in good faith to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the Sale of the Assets, including, without limitation: (i) extending the any of the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction (if held) without further notice; (iii) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction or adjourning the Sale Hearing in open court (if held); (iv) canceling the Auction or electing not to hold an Auction; (v) rejecting any or all Bids or Qualified Bids; (vii) adjusting the applicable Minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind basis," are reserved to the

extent set forth in the Bidding Procedures. The Debtors shall provide reasonable notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder(s).  Any such modifications shall be deemed to be incorporated into this Order.

23.      Nothing in this Order or the Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to the Bidding Procedures or the Sale process, to the extent such board of directors, board of managers, or such similar governing body determines in good faith, after consultation with the Debtors' advisors, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

24.      In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects.  In the event of any inconsistencies between this Order and the Bidding Procedures, the Order shall govern in all respects.

25.      All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

26.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

27.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

28.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Agreement or an Asset Purchase Agreement with any otherwise Successful Bidder(s).

Signed: _____, 2025

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---------------------------------------------------------- x
                         :

In re:                     :    Chapter 11

                        :

RUNITONETIME LLC, *et al.*,     :    Case No. 25-90191 (ARP)

                        :

         Debtors.[1]      :    (Jointly Administered)

                        :

---------------------------------------------------------- x

## BIDDING PROCEDURES

On [_____], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered an order [Docket No. [__]] (the "***Bidding Procedures Order***")[2] in the jointly administered chapter 11 cases (the "***Chapter 11 Cases***") filed by RunItOneTime LLC and its debtor affiliates (collectively, the "***Debtors***"), which, among other things, (a) approved these bidding procedures (the "***Bidding Procedures***"); (b) authorized the Debtors to designate qualified bidders as stalking horse bidders; and (c) certain other relief sought in the Bidding Procedures Motion. Pursuant to the Bidding Procedures Order, any stalking horse bid designated by the Debtors, shall be subject to higher or better offers, the outcome of an auction (if any), and the approval of the Court.

The Bidding Procedures set forth the process by which the Debtors are authorized to solicit bids for and, if necessary, conduct an auction (the "***Auction***") for the sale or disposition of certain or all of the Debtors' assets (the "***Assets***") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "***Sale Transaction***" and collectively, the "***Sale***"). In addition, no later than the Stalking Horse Designation Deadline (defined below), the Debtors may, but are not required to, designate a stalking-horse bidder or stalking horse bidders, in consultation with the Consultation Parties, with respect to certain or all of the Assets, in each case on the terms described herein.

## I.    Description of the Assets

The Debtors are initiating a marketing and sale process their Assets, which comprise three principal segments:

---

[1]  A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the *Debtors'* <u>Emergency</u> *Motion for an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving the Sale of Substantially All of the Debtors' Assets, and (III) Granting Related Relief* [Docket No. 93] (the "***Bidding Procedures Motion***"), as applicable.

(a)     "***PokerCo***" to be composed of Aces Poker Lakewood, Aces Poker Mountlake Terrace, Caribbean Casino, Caribbean Cardroom, including working capital required to operate the businesses (to the extent available);

(b)     "***LeaseCo***" to be composed of the Debtors' properties subject to the Blue Owl Master Lease, and, subject to and in accordance with notice issued on the LeaseCo Marketing Determination Date, non-PokerCo Washington properties subject to leases with other landlords; and

(c)     "***MainCo***" to be composed of the remainder of the Debtors' existing businesses, interests, and tangible and intangible assets.

Bids on individual assets within these segments (each, a "***Partial Bid***") are acceptable to the Debtors, in consultation with the Consultation Parties; *provided* that with respect to Partial Bids, if the Debtors do not receive Qualified Bids for all of the Assets within a particular segment, the Debtors reserve the right, in consultation with the Consultation Parties, not to consider or otherwise proceed to an Auction (as defined below) for such Partial Bids.

The Debtors are in current discussions with the landlord for certain of the LeaseCo Assets and have not yet initiated a marketing process for the LeaseCo Assets. The Debtors, in consultation with the Consultation Parties, shall make a determination as to the marketing of the LeaseCo Assets no later than August 20, 2025 (the "***LeaseCo Marketing Determination Date***"). If the Debtors decide to commence a marketing process for the LeaseCo Assets on or before the LeaseCo Marketing Determination Date, the Debtors shall promptly file a notice indicating such determination and provide no less than 25 days for such marketing, and notwithstanding anything in these Bidding Procedures to the contrary, any interested party that submits a Bid (as defined below) for the LeaseCo Assets will be eligible for consideration as a Qualified Bidder for the LeaseCo Assets.

**Any party interested in submitting a bid for any of the Assets should contact the Debtors' investment banker, GLC Advisors & Co., 600 Lexington Avenue, New York, New York 10022, Attn: Mack Rossoff (mack.rossoff@glca.com), Michael Sellinger (michael.sellinger@glca.com), Tim Hagamen (tim.hagamen@glca.com), and Daniel Grundei (daniel.grundei@glca.com).**

## II.    Important Dates and Deadlines

The key dates for the sale process are set forth below. The Debtors, in consultation with the Consultation Parties and subject to the terms of the Transaction Support Agreement and the DIP Orders,[3] may extend any of the deadlines, or delay any of the applicable dates, set forth herein or in the Bidding Procedures Order.

---

[3]    "***DIP Orders***" has the meaning ascribed to it in that certain Senior Secured Superpriority Priming Debtor-in-Possession Credit Agreement, dated as of July 28, 2025, among the Debtors, the DIP Lenders, and the DIP Agent (as may be amended, supplemented, modified, or restated from time to time, the "***DIP Credit Agreement***").

| Event | Proposed Date |
|-------|---------------|
| **LeaseCo Marketing Determination Date** | Wednesday, August 20, 2025 |
| **Indication of Interest Deadline[4]** | Wednesday, August 20, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Stalking Horse Designation Deadline** | Tuesday, September 2, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Stalking Horse Objection Deadline** | Monday, September 8, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Cure Notice Deadline** | Monday, September 8, 2025 |
| **Bid Deadline** | Wednesday, September 17, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Auction(s) (if necessary)** | Friday, September 19, 2025, at 10:00 a.m. (prevailing Central Time) |
| **Deadline to File Notice of Successful Bidder[5]** | As soon as reasonably practicable after the close of the Auction with respect to the applicable Sale Transaction, and, in any event, no later than 5:00 p.m. (prevailing Central Time) on the date that is one day after the close of such Auction. In the event there is no Auction with respect to a Sale Transaction, the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder on September 19, 2025. |

---

[4]   For the avoidance of doubt, to the extent the Debtors, in consultation with the Consultation Parties, determine to commence a marketing process for the LeaseCo Assets, the Indication of Interest Deadline shall not apply, and all Bids for LeaseCo shall be subject to the Bid Deadline.

[5]   In the event that an Auction is cancelled, including, without limitation, because only one Qualified Bid (including a Stalking Horse Bid or credit bid) with respect to a Sale Transaction is received by the Bid Deadline, the Debtors shall file a Notice of Successful Bidder promptly identifying such Qualifying Bid as the Successful Bidder with respect to such Sale Transaction, but in no event later than September 19, 2025. To the extent there are no Qualified Bids or Stalking Horse Bids received with respect to certain of the Debtors' Assets, the Debtors will determine the next phase of the Sale and chapter 11 process in consultation with the Required DIP Lenders and the Committee (each, as defined below).

| Event | Proposed Date |
|---|---|
| **Cure Objection Deadline[6]** | By 4:00 p.m. (prevailing Central Time) on the day that is 14 days after service of the Cure Notice or a Supplemental Cure Notice, as applicable |
| **Sale Objection Deadline[7]** | The later of the date that is three days after the filing of the Notice of Successful Bidder or Tuesday, September 23, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Sale Hearing (subject to Court availability)** | No later than Friday, September 26, 2025[8] |

## III.   Participation Requirements

### A.   Prospective Bidder Requirements

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in the Assets or any portion of the Assets (an "***Interested Party***"), must deliver to the Debtors' investment banker, GLC Advisors & Co. ("***GLC***") (i) an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors[9] and (ii) any other information that the Debtors may reasonably request (the "***Preliminary Bid Documents***").

If the Debtors, in consultation with their advisors, determine that an Interested Party has timely delivered adequate Preliminary Bid Documents, such Interested Party shall be eligible to receive due diligence information as described below (each such Interested Party after timely delivering adequate Preliminary Bid Documents, a "***Prospective Bidder***"); *provided* that the Debtors will notify any Interested Party that has not submitted adequate Preliminary Bid Documents so that such Interested Party has the opportunity to remedy any inadequacies and become a Prospective Bidder. The Debtors, in consultation with their advisors, will determine

---

[6]   The Cure Objection Deadline applies to any objections to the Debtors' proposed Cure Costs as of the date of the Cure Notice or Supplemental Cure Notice (each as defined below), as applicable (each such objection, a "***Cure Objection***").

[7]   The Sale Objection Deadline applies to any objections to the Sale or to the assumption and assignment of the Assigned Contracts other than Cure Objections.

[8]   The Sale Hearing may be continued by the Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, from time to time, either by Court docket entry or by the Debtors filing a notice on the Court's docket, without further notice to creditors or parties in interest. Further, the Debtors reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s); *provided* that the Debtors shall not reduce the time provided herein for a party in interest to file any objection to the Sale absent further order of the Court.

[9]   Prospective Bidders may obtain a form of confidentiality agreement by requesting a copy from GLC.

whether each Interested Party has submitted adequate Preliminary Bid Documents and notify such Interested Party accordingly.

For the avoidance of doubt, the Existing Lenders or their designee or any Stalking Horse Bidder designated by the Debtors in consultation with the Consultation Parties and pursuant to these Bidding Procedures will be deemed to be a Prospective Bidder.

**B.      Due Diligence**

Only Prospective Bidders shall be eligible to receive due diligence information and reasonable access to the Debtors' confidential electronic data room concerning the Assets (the "***Data Room***"). The Debtors, with the aid of their advisors, shall coordinate all reasonable requests from Prospective Bidders for additional information and due diligence access, including reasonable access to management; *provided* that the Debtors may withhold or limit access by any Prospective Bidder (including its affiliates and any related persons) to the Data Room or other due diligence materials if any due diligence information is determined to be business sensitive, proprietary, or otherwise not appropriate for disclosure to Prospective Bidders that are customers or competitors of the Debtors or affiliates thereof, and other industry participants.  The Debtors shall promptly notify the Committee following a determination to withhold or limit access by any Prospective Bidder to the Data Room pursuant to this paragraph.

The due diligence period will end on the Bid Deadline (as defined below) and, following the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed appropriate by the Debtors in consultation with the Consultation Parties.

Each Prospective Bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of their bid before making any such bid, (b) has relied solely upon its own independent review, investigation, or inspection of any documents or the assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the applicable Purchase Agreement (as defined below).

Each Prospective Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due-diligence access by the Debtors or their advisors regarding the ability of such Prospective Bidder or Qualified Bidder to consummate its contemplated transaction. Failure by a Prospective Bidder or Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Prospective Bidder or Qualified Bidder or that a bid made by such Prospective Bidder or Qualified Bidder is not a Qualified Bid (as defined below).

1.      **Indications of Interest**

Prior to **August 20, 2025, at 4:00 p.m. (prevailing Central Time)** (the "***Indication of Interest Deadline***"), a Prospective Bidder (other than the Existing Lenders or their designee and the Supporting Shareholder (as defined below) or his designee) is required to submit a non-binding written indication of interest (a "***Indication of Interest***") that is acceptable to the Debtors, in consultation with the Consultation Parties. Each Indication of Interest must include the following information:

(a)     **Identity.** Disclosure of the identity of the Prospective Bidder, including its legal name, jurisdiction, and form of organization, and, as requested by the Debtors, details regarding the ownership and capital structure of the Prospective Bidder, including a description of any and all connections that the Interested Party (including its affiliates and any related persons) may have to (i) the Debtors, (ii) any current or former directors and officers of the Debtors, (iii) the Debtors' non-Debtor affiliates, and (iv) the Debtors' primary creditors as identified by the Debtors.

(b)     **Assets.** A description of the key components of the Prospective Bidder's potential bid, including the specific Assets sought by the potential bid and any material Assets or liabilities excluded by such bid.

(c)     **Purchase Price.** The proposed purchase price in U.S. dollars, including the amount and type of consideration (including a breakdown of the cash and non-cash components of the consideration and any liabilities to be assumed).

(d)     **Financing Sources.** Evidence acceptable to the Debtors demonstrating the financial wherewithal of the Prospective Bidder to close the transaction, including whether any third-party financing is required in connection with the bid and, if so, identification of the sources of such third-party financing and status of commitments (including the expected timing and process) from such sources for the amount of financing required to complete the Sale Transaction contemplated by such bid.

(e)     **Prospective Plans.** Each indication of interest must disclose a Prospective Bidder's proposed plans for the business including, (i) if applicable, any steps to achieve compliance with all required gaming regulatory approvals (including the identity of any proposed successor operator of the Assets under the proposed Sale Transaction, if known), and (ii) intentions for employees (including unionized employees).

(f)     **Timing.** Each Indication of Interest must provide an estimate of the amount of time a Prospective Bidder requires to complete its due diligence review of the Debtors, obtain all necessary internal and external approvals, including regulatory approvals, execute a definitive agreement, and close the Transaction.

(g)     **Contact Information and Advisors.** Each Indication of Interest must include the name, telephone number, and email address of the contact person(s) who will be available to discuss the Indication of Interest.  The Indication of Interest must also

list which external advisors have been retained to support any further diligence efforts and the submission of a binding proposal.

(h) **Material Assumptions, Conditions, and Other Information.** Any other material information, assumptions or conditions (including an outline of any remaining due diligence that the Prospective Bidder deems necessary to submit a binding proposal), and any other information that a Prospective Bidder considers relevant for the Debtors and their advisors in evaluating such Indication of Interest or that a Prospective Bidder believes will distinguish its organization and capabilities in consummating the Transaction.

Notwithstanding the foregoing, the Debtors shall (i) not prohibit any Prospective Bidder from receiving due diligence information solely on the basis that the Prospective Bidder did not submit an Indication of Interest by the Indication of Interest Deadline, and (ii) in consultation with the Consultation Parties, retain the ability to consider a timely Bid submitted by a Prospective Bidder that did not submit an Indication of Interest by the Indication of Interest Deadline or otherwise.

## 2. No Communications Among Bidders

There must be no communications with respect to bids or potential bids between and amongst Prospective Bidders (including the any Stalking Horse Bidders or Qualified Bidders), or between Prospective Bidders and the Consultation Parties, unless the Debtors, in consultation with the Consultation Parties, have authorized such communication in writing in advance or with the participation of representatives of the Debtors or their advisors. Should any Prospective Bidder attempt to communicate directly with a Consultation Party, such Consultation Pary shall immediately inform Debtors' counsel and financial advisor of such communication and include the Debtors' counsel or financial advisor in any future communications between the Prospective Bidder and Consultation Party. The Debtors reserve the right, in consultation with the Consultation Parties and in their reasonable business judgment, to disqualify any Prospective Bidders that have engaged in communications between or amongst themselves without the participation of the Debtors (or a representative of the Debtors) or the Debtors' prior written consent. The Debtors further reserve their right, in their reasonable business judgment, to strip any Consultation Party that violates this provision of its consultation rights hereunder.

## IV. Supporting Shareholder and Management

Any Insider or Affiliate (as those terms are defined in the Bankruptcy Code), or member of the Debtors' current or former management team, including, but not limited to, Mr. Eric Persson (the "***Supporting Shareholder***"), either as an individual or through a person or entity affiliated with the respective member of the Debtors' current or former management, participating in a bid to purchase the Assets, shall be excluded from evaluating bids from other parties on behalf of the Debtors and shall be screened from receipt of any non-public information regarding any such competing bids and shall not advise the Debtors on the same.

**V.      Procedures for Designation of Stalking Horse Bids**

The Debtors, in consultation with the Consultation Parties, may, in the exercise of their business judgment and as they may reasonably determine to be in the best interests of their estates, select a stalking horse bidder or stalking horse bidders (each, a "***Stalking Horse Bidder***") for any groupings or subgroupings of the Assets for the purposes of establishing one or more minimum acceptable bids with which to begin the applicable Auction with respect to certain or all of the foregoing Assets (each, a "***Stalking Horse Bid***"). The Debtors may provide any such Stalking Horse Bidder with Bid Protections (described below) pursuant to an agreement with such Stalking Horse Bidder (the "***Stalking Horse Agreement***") and consistent with the designation procedures set forth in these Bidding Procedures and the Bidding Procedures Order (such procedures, the "***Stalking Horse Designation Procedures***").

Any designation of Stalking Horse Bidder for any assets shall be made no later than 4:00 p.m. (prevailing Central Time) on September 2, 2025 (the "***Stalking Horse Designation Deadline***"). The Debtors shall file a notice of such Stalking Horse Agreement (the "***Stalking Horse Notice***") with the Court and provide such Stalking Horse Notice to: (a) the parties on the Debtors' Master Service List; (b) counsel to the Ad Hoc Group and Backstop Parties; (c) counsel to the Prepetition Agent; (d) counsel to the Committee; (e) all Interested Parties; and (f) all parties reasonably known to the Debtors to assert an interest in the assets. Parties in interest shall then have until 4:00 p.m. (prevailing Central Time) on September 8, 2025 (the "***Stalking Horse Objection Deadline***") ") to object to the Debtors' designation of such Stalking Horse Bidder(s) and any Bid Protections offered to such Stalking Horse Bidder(s).

In the event that the Debtors designate a Stalking Horse Bidder and the Stalking Horse Bidder is not the Successful Bidder with respect to the Stalking Horse Bid, the Debtors shall be authorized, but not directed, to make certain payments in consideration of its being the Stalking Horse Bidder, including (a) any break-up fee (the "***Break-Up Fee***") and (b) any reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in connection with such Stalking Horse Bid (the "***Expense Reimbursement Amount***"). The amount of any consensual Break-Up Fee and Expense Reimbursement Amount shall, in the aggregate, not exceed 1.5% of the cash portion of the applicable Transaction Purchase Price (as defined below) for such Stalking Horse Bid, with such amount to be paid solely in accordance with the terms and conditions set forth in the applicable Stalking Horse Agreement and as approved by the Bankruptcy Court in the Bidding Procedures Order (the "***Bid Protections***"). The sole remedy against the Debtors of any Stalking Horse Bidder in connection with its Stalking Horse Bid shall be the return of the applicable deposit (if applicable) and the Bid Protections, in the event that the applicable Stalking Horse Agreement is terminated pursuant to the applicable provisions of such agreement.

The following parties shall not be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment: any (a) party making a credit bid (irrespective of whether it is a Stalking Horse Bidder), (b) Insider or Affiliate, and any other person or entity that is, or is otherwise affiliated with, any member of the Debtors' current or former management team; *provided*, *however*, that solely with respect to any stalking-horse bid submitted for the PokerCo assets by the Supporting Shareholder or its designee (a "***Supporting Shareholder Stalking Horse Bid***"), the Debtors may, pursuant to these Stalking Horse Designation Procedures, seek approval of the bid protections for the Supporting Shareholder

or its designee contemplated by the Transaction Support Agreement (including the expense reimbursement and overbid protections specified therein) (such bid protections, the "***Supporting Shareholder Bid Protections***"); *provided further* that nothing in these Bidding Procedures or the Bidding Procedures Order shall be deemed to permit or approve any Bid Protections (including the Supporting Shareholder Bid Protections), and the rights of all parties in interest, including the Committee, to object to any Stalking Horse Bid (including the Supporting Shareholder Stalking Horse Bid) and/or proposed Bid Protections (including the Supporting Shareholder Bid Protections), pursuant to and in accordance with the Stalking Horse Designation Procedures, are expressly reserved in all respects; and (c) bidder other than a Stalking Horse Bidder (each on the terms described herein and in the Bidding Procedures).

If there is no objection timely filed to any Stalking Horse Notice prior to the Stalking Horse Objection Deadline, including with respect to the Bid Protections or the Supporting Shareholder Bid Protections (or if such an objection is timely filed but is consensually resolved before a hearing thereon), the designation of the Stalking Horse Bid and Stalking Horse Bidder and associated Bid Protections or Supporting Shareholder Bid Protections (as modified by any such consensual resolution) shall be deemed approved with no further action needed by the Court. If a timely filed objection is consensually resolved, the Debtors shall promptly file a notice on the docket identifying the objection that has been resolved, and such notice shall include the revised stalking horse bid documents and a brief description of the modifications, if any. If such an objection is timely filed and not consensually resolved, the Court will schedule a hearing to resolve such an objection, subject to its availability.

## VI.   Qualified Bid Requirements

To be eligible for consideration as a Qualified Bid to participate in any Auction, each Prospective Bidder must deliver to the Debtors a written, irrevocable offer, solicitation, or proposal to acquire Assets (each, a "***Bid***") no later than **4:00 p.m. (prevailing Central Time) on September 17, 2025** (the "***Bid Deadline***"). To constitute a Qualified Bid, a Bid must satisfy each of the following conditions:

(a)   **Bid Irrevocable.** Each Bid (other than a credit bid by the Existing Lenders or their designee) must provide that it is irrevocable and binding in all respects until the closing of the Sale Transaction if such Prospective Bidder is the Successful Bidder, and that the Prospective Bidder agrees to serve as a backup bidder if such bidder's Bid is selected as the next highest or otherwise next best bid after the Successful Bid.

(b)   **Assets and Liabilities.** Each Bid must clearly identify the following: (i) the Assets to be purchased; and (ii) the liabilities and obligations to be assumed, including any indebtedness to be assumed, if any.

(c)   **Designation of Assigned Contracts and Leases.** Each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the bidder wishes to be assumed and assigned to the bidder at closing. The Bid must confirm that the bidder will be responsible for any Cure Costs associated with such assumption, and

include a good faith estimate of such Cure Costs (which estimate may be provided by the Debtors).

(d)    **Purchase Price.** Each Bid (other than a credit bid by the Existing Lenders or their designee) must be for cash. The Bid must clearly set forth the cash purchase price, and any other non-cash consideration (with the form of such consideration specified), to be paid (the "***Transaction Purchase Price***").

(e)    **Consolidated Bid.** Each Bid for less than all of the Assets must identify whether or not the Prospective Bidder is willing to aggregate its Bid into an acceptable consolidated bid with other Prospective Bidders.

(f)    **Employment and Employee Obligations.** Each Bid must (i) specify the treatment and hiring of the Debtors' employees, including any unionized employees, and (ii) as applicable, the treatment of the Debtors' collective bargaining agreement ("***CBA***") with each union party thereto (the "***Unions***"), including whether the Prospective Bidder will provide for the assumption of the CBA (and if so, including a statement of any proposed modifications or terms) and the assumption of relevant pension plans. Any Prospective Bidders must include the Debtors and their counsel and proposed counsel for the Committee in any communications with the Unions regarding any bids or potential bids or otherwise in connection with any proposal regarding any of the Assets.

(g)    **Minimum Bid.** Each Bid submitted must either: (i) provide for the payment of aggregate consideration, in the Debtors' good-faith business judgment, in consultation with the Consultation Parties, the value of which is in excess of at least the sum of (x) the purchase price under the applicable Stalking Horse Agreement) and (y) any Bid Protections approved by the Court; or (ii) propose an alternative transaction that, in the Debtors' good faith business judgment, in consultation with the Consultation Parties, provides higher value or better terms than any Stalking Horse Bid, if any, and, after taking into account, in light of the Bids submitted for the Assets, is determined by the Debtors, in consultation with the Consultation Parties, to be in the best interests of the Debtors' estates.

(h)    **Deposit.** Each Bid (except a credit bid by the Existing Lenders or their designee) must be accompanied by a good faith deposit in the form of cash in an amount equal to not less than 10% of the cash portion of the Transaction Purchase Price of the Bid, to be held in an escrow account to be identified and established by the Debtors (the "***Deposit***"); *provided* that the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Deposit on a case-by-case basis.

(i)    **Executed Agreement.** Each Bid must be based on the proposed purchase agreement with respect to such Assets, which will be posted to the Data Room by the Debtors (a "***Purchase Agreement***"), and must include executed transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate a Sale Transaction (a

"**_Modified Purchase Agreement_**"). Each Bid must also include a copy of the Modified Purchase Agreement marked against the respective Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Debtors may determine how such Bid compares to the terms of competing Bids). Each Modified Purchase Agreement must provide a commitment to close as soon as practicable but in any event within five business days after all closing conditions are satisfied.

(j)    **Regulatory and Third-Party Approvals.** Each Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary regulatory (including all applicable gaming regulatory approvals) and antitrust filings and pay the fees associated with such filings and (ii) identifying all required governmental and regulatory approvals (including all applicable gaming regulatory approvals) and an explanation or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals (including and disclosure of the identity of any proposed successor operator of the Assets under the proposed Sale Transaction) and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals.

(k)    **Financial and Adequate Assurance Information.** Each Bid must include written evidence that the Debtors reasonably conclude, in consultation with the Consultation Parties, demonstrates that the bidder has the necessary financial ability to timely close the proposed Sale Transaction and provide adequate assurance of future performance with respect to any lease or contract to be assumed and assigned in connection with the proposed Sale Transaction (such information, "**_Adequate Assurance Information_**"). Such information may include, inter alia, the following:

(i)    a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction contemplated by the Modified Purchase Agreement;

(ii)    contact names, telephone numbers, and email addresses for verification of financing sources;

(iii)    evidence of the bidder's internal financing resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of the proposed Sale Transaction's type from one or more reputable financing sources in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the payment of Cure Costs), in each case, as are required to timely close the Sale Transaction;

(iv)    a description of the bidder's pro forma capital structure; and

(v)  any other financial disclosure or credit quality support information or enhancement requested by the Debtors demonstrating that such bidder has the ability to timely close the proposed Sale Transaction in accordance with the Bidding Procedures.

(l)  **Credit Bid.** Persons or entities holding a perfected security interest in the Assets (each, a "***Secured Creditor***") may, subject to section 363(k) of the Bankruptcy Code and the terms of the DIP Orders (including with respect to any Challenge), seek to submit a credit bid on such Assets, to the extent permitted by applicable law, any Bankruptcy Court orders and the documentation governing the Debtors' secured debt (including any amounts required to be paid pursuant to any intercreditor agreements); *provided*, *however*, no creditor may credit bid any amounts on account of a make-whole, prepayment premium, or similar claims unless such claims have been allowed by order of the Court.

(m)  **Contingencies; No Financing or Diligence Outs.** A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

(n)  **Identity.** Each Bid must fully disclose the legal identity of each person or entity (including such entity's shareholders, partners, investors, and ultimate controlling entities) bidding for the Assets or otherwise participating in the Auction in connection with such Bid (including any parent companies, equity holders, or other financial backers), and the complete terms of any such participation and must also disclose any connections, arrangements or agreements, whether oral or written, (a) with the Debtors, any other known bidder, and any officer or director of the foregoing and (b) concerning a collaborative or joint bid or any other combination concerning the proposed Bid. Each such Bid must also include contact information for the specific person(s) the Debtors should contact regarding the Bid and the Prospective Bidder.

(o)  **Representations and Warranties; As-Is, Where-Is; No Collusion.** Each Bid must include the following representations and warranties:

(i)  expressly state that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Assets prior to submitting its Bid,

(ii)  a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, or inspection of any relevant documents and the Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, by the Debtors or the Debtors' advisors regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except, solely with respect to the Debtors, as expressly stated in the representations and warranties contained in the Prospective Bidder's

12

Modified Purchase Agreement ultimately accepted and executed by the Debtors,

(iii) the Prospective Bidder's agreement to not use information obtained from the Data Room or the diligence process in connection with, or related to, any litigation or other legal actions between such Prospective Bidder (including its affiliates and any related persons) and any Debtor, any current or former directors and officers of the Debtors, the Debtors' non-Debtor affiliates, or any of the Existing Lenders; and

(iv) acknowledgement in writing that (A) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Prospective Bidders or Qualified Bidders to control price; and (B) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

(p) **Authorization.** The Bid must include evidence that the Prospective Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtors with respect to the submission, execution, and delivery of its Bid and the Modified Purchase Agreement, participation in the Auction (if any), and closing of the proposed Sale Transaction(s) contemplated in such Bid.

(q) **No Bid Protections or Fees.** Each Bid (other than a Stalking Horse Bid, subject to these Bidding Procedures and the Bidding Procedures Order) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than a Stalking Horse Bidder, subject to these Bidding Procedures and the Bidding Procedures Order) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of an Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

(r) **Time Frame for Closing.** Each Bid must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations in the Debtors' business judgment) to be consummated, if selected as the Successful Bid, within a time frame reasonably acceptable to the Debtors in consultation with the Consultation Parties, and, in any event, subject to the Milestones contained in the DIP Orders. The Prospective Bidder must commit to closing the proposed Sale Transaction(s) contemplated by the Bid as soon as practicable and provide perspective on any potential regulatory issues that may arise in connection with such Prospective Bidder's acquisition of the Assets including timing for resolution thereof. Each Bid shall state the expected date of closing of the Sale Transaction.

(s)     **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Adherence to Bidding Procedures.** Each Bid must include (i) a statement that the Prospective Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code; and (ii) a statement that the Prospective Bidder agrees to be bound by, and has complied with, the Bidding Procedures Order, the Bankruptcy Code, and applicable non-bankruptcy law (including any applicable gaming laws or requirements).

(t)     **Back-Up Bidder Commitment.** Each Bid (other than a credit bid by the Existing Lenders or their designee) must include a written commitment by the applicable Prospective Bidder to serve as a Back-Up Bidder (as defined below) in the event that such Prospective Bidder's bid is not selected as the Successful Bid.

(u)     **Other Information.** The Bid contains such other information as may be reasonably requested by the Debtors and the Consultation Parties, with such requests made through the Debtors.

A Bid received that meets the above requirements, as determined by the Debtors, in consultation with their advisors and the Consultation Parties, in the Debtors' reasonable business judgment will constitute a "***Qualified Bid***" for such Assets (and the Prospective Bidder submitting such Qualified Bid will constitute a "***Qualified Bidder***"); *provided* that, if the Debtors receive a Bid that does not meet the requirements for a Qualified Bid, the Debtors may provide the Prospective Bidder with the opportunity to remedy any deficiencies before the Auction to render such Bid a Qualified Bid; *provided*, *further*, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access requested by the Debtors to the satisfaction of the Debtors, the Debtors may, after consulting with the Consultation Parties, disqualify any Qualified Bidder and Qualified Bid and such Qualified Bidder will not be entitled to attend or participate in the Auction (if any). The Debtors may also, after consulting with the Consultation Parties, waive or modify any of the above requirements in the exercise of their reasonable business judgment.

The Debtors reserve the right, in the exercise of their business judgment and in consultation with the Consultation Parties, to work with (A) Prospective Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any); *provided, however*, the Debtors reserve the right, in the exercise of their business judgment, to condition any pairing or combination of Bids as set forth in this paragraph on conditions, pertaining to the ultimate disposition of any Assets sought by the relevant Bid(s) or otherwise, as the Debtors believe, in consultation with their advisors and the Consultation Parties, is in the best interests of the Debtors and their estates.

Notwithstanding anything to the contrary in these Bidding Procedures, (a) the Existing Lenders or their designee credit bidding pursuant to Section VIII of these Bidding Procedures and shall be deemed to be a Qualified Bidder, and any credit bid submitted by the Existing Lenders or their designee pursuant to Section VIII of the Bidding Procedures shall be deemed to be a Qualified Bid and (b) any Stalking Horse Bidder(s) shall be deemed to be a Qualified Bidder, and any

Stalking Horse Bid(s) shall be deemed to be a Qualified Bid, such that such Qualified Bidders shall not be required to submit an additional Qualified Bid.

## VII. Bid Review Process

The Debtors will evaluate Bids submitted by the Bid Deadline, in consultation with the Consultation Parties, and may, based upon their evaluation of each Bid, engage in negotiations with Prospective Bidders who submitted Bids, as the Debtors deem appropriate in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law. The Debtors, in consultation with the Consultation Parties, will evaluate whether a Bid constitutes a Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation, (a) the amount of the purchase price set forth in the Bid, including, for the avoidance of doubt, whether the purchase price provides for the full or partial satisfaction of the DIP Obligations, the Prepetition Secured Obligations, and any ordinary course operational liabilities and accrued and unpaid administrative claims; (b) the risks and timing associated with consummating a sale transaction(s) with the Prospective Bidder; (c) any Assets included in or excluded from the Bid, including any proposed assumed contracts or leases; (d) any liabilities and obligations assumed as part of the Bid; (e) the ability to obtain any and all necessary regulatory approvals (including gaming regulatory approvals) for the proposed Sale Transaction, including any considerations related to the timing of such approvals or potential risk of non-approval, (f) the net benefit to the Debtors' estates, (g) the tax consequences of such Bid, and (h) the impact on employees (including unionized employees) and the proposed treatment of employee obligations, including assumption of collective bargaining agreements and other employee-related agreements, as applicable.  For the avoidance of doubt, the Debtors shall promptly produce to the Consultation Parties copies of all bids, indications of interest, and other documentation submitted by any Prospective Bidder.

The Debtors and their advisors (in consultation with the Consultation Parties) will determine which Potential Bidders are Qualified Bidders and whether Bids submitted constitute Qualified Bids. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors. As soon as reasonably practicable, and by no later than 24 hours before the commencement of the Auction, the Debtors shall notify each Prospective Bidder whether such party is a Qualified Bidder. If any Bid is determined by the Debtors (in consultation with the Consultation Parties) not to be a Qualified Bid, the Debtors will refund such Prospective Bidder's Deposit on or before the date that is five business days after the Bid Deadline.

Between the date that the Debtors notify a Prospective Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors (email being sufficient) in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

If only one Qualified Bid, including, without limitation, a Stalking Horse Bid, is received by the Bid Deadline, then the Debtors may cancel the Auction and designate the applicable Qualified Bid as the Successful Bidder(s), and the Debtors may immediately pursue entry of an order by the Court, in form and substance acceptable to the applicable Qualified Bidder, approving the Sale Transaction to the applicable Qualified Bidder at the Sale Hearing (as defined below).

## VIII.   Right to Credit Bid

Any Qualified Bidder who is a Secured Creditor shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured, and subject to the right of the Committee and any party in interest to contest the right of any Secured Creditor to credit bid unless, in the case of the Existing Lenders, as limited by the terms of the DIP Orders; *provided* that if the Committee commences a timely Challenge in accordance with the DIP Orders, then the Existing Lenders will not be permitted to credit bid on the Assets subject to such timely Challenge (but will be permitted to credit bid for all other Assets constituting the Existing Lenders' collateral that is not subject to a timely Challenge) until such time that the Challenge has been resolved by the Court or as agreed by the parties.

Notwithstanding anything to the contrary contained herein, subject to the terms of the DIP Orders, including those regarding Challenges, the DIP Lenders, the DIP Agent (acting on behalf of the DIP Lenders), the Prepetition Lenders, and the Prepetition Agent (acting on behalf of the Prepetition Lenders) (together, the "***Existing Lenders***") or a designee of the foregoing shall be deemed Qualified Bidders for all purposes and shall have the right to bid or credit bid all or any portion of the loans under the DIP Facility and the Prepetition Credit Agreement subject to section 363(k) of the Bankruptcy Code with respect to some or all of the Assets, and any such bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline. If the Existing Lenders submit a credit bid for particular assets, including any credit bid by a designee of the Existing Lenders (including, without limitation, MC BidCo, as defined in the Transaction Support Agreement), with respect to all or any portion of the DIP Obligations or Prepetition Secured Obligations, then the Existing Lenders shall cease to be Consultation Parties with respect to such Assets; *provided* further that, excluding any credit bid by the Existing Lenders, a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid, which, for the avoidance of doubt, shall include, among other things, satisfaction of the DIP Obligations and Prepetition Secured Obligations and comply with the terms of any order approving (a) the DIP Motion, the DIP Documents, and the Prepetition Credit Documents and (b) the Bidding Procedures and the Bidding Procedures Order. In the event the Existing Lenders or their designee credit bid pursuant to Section VIII of these Biddings Procedures, such Existing Lenders or their designee must submit an executed Purchase Agreement and Modified Purchase Agreement prior to the Bid Deadline to be considered a Qualified Bid. Further, if a credit bid submitted by the Existing Lenders has not been withdrawn prior to the commencement of the Auction, such bid shall become irrevocable, subject to the terms of these Bidding Procedures.

If the Existing Lenders submit a credit bid for any or all of the Debtors' Assets that constitute their collateral as a Stalking Horse Bid with respect to such Assets and the Debtors designate the Existing Lenders as a Stalking Horse Bidder with respect to such Assets, the Existing Lenders shall thereafter cease to be Consultation Parties with respect to such Assets.

Nothing herein shall affect or in any way limit the right or ability of any party in interest, including the Committee, to object to the right of the Existing Lenders to credit bid, including the nature, amount, or scope of such credit bid, subject to the applicable provisions of the DIP Orders and the Challenge Period (as defined therein), as the same may be modified in accordance with their terms. Notwithstanding anything to the contrary herein, if the Committee commences a timely Challenge in accordance with the DIP Orders, then the Existing Lenders will not be permitted to credit bid on the Assets subject to such timely Challenge (but will be permitted to credit bid for all other Assets constituting the Existing Lenders' collateral that is not subject to a timely Challenge) until such time that the Challenge has been resolved by the Court or as agreed by the parties.

## IX.   Auction

The Debtors may, in consultation with the Consultation Parties, conduct any Auction in any manner to facilitate a Sale Transaction for all or different subgroupings of the Assets and individual Assets, including conducting multiple Auctions for different subgroupings of the Assets and individual Assets. If two or more Qualified Bids (including a Stalking Horse Bid or credit bid) are received by the Bid Deadline, the Debtors may conduct the Auction with respect to the Debtors' Assets subject to such Qualified Bids. If only one Qualified Bid (including a Stalking Horse Bid or credit bid) with respect to a Sale Transaction is received by the Bid Deadline, the Debtors may, after consulting with the Consultation Parties, select the Modified Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder with respect to the applicable Sale Transaction, and will promptly file the Notice of Successful Bidder with respect to such Sale Transaction, but in no event later than September 19, 2025. To the extent there are no Qualified Bids or Stalking Horse Bids with respect to certain of the Debtors' assets, the Debtors will determine the next phase of the Sale and chapter 11 process in consultation with the Required DIP Lenders (as defined in the DIP Term Sheet annexed to the DIP Credit Agreement) and the Committee.

Prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' reasonable business judgment (in consultation with the Consultation Parties) (the "*Baseline Bid*") with respect to a proposed Sale Transaction, and provide copies of the Modified Purchase Agreement supporting the Baseline Bid to all Qualified Bidders who have submitted a Qualified Bid with respect to the proposed Sale Transaction. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid with respect to a proposed Sale Transaction shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid;

(c) the number, type and nature of any changes to the Purchase Agreement or Stalking Horse Agreement, as applicable, requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed Sale Transaction (including obtaining any required regulatory approvals, including any required gaming regulatory approvals) and the timing thereof; (f) the net benefit to the Debtors' estates; and (g) the tax consequences of such Qualified Bid.

### A.     Participation and Attendees

The Auction (if held) shall take place on **September 22, 2025, at 10:00 a.m. (prevailing Central Time)**, at a location designated by the Debtors (in consultation with the Consultation Parties) or via a virtual meeting (either telephonic or via videoconference) the information to join which virtual meeting shall be provided by the Debtors to each Qualified Bidder prior to the Auction. The applicable Auction may be postponed, adjourned or cancelled as the Debtors (in consultation with the Consultation Parties) deem appropriate. Reasonable notice as is reasonably practicable under the circumstances of such postponement or adjournment and the time and place for the commencement or resumption of the applicable Auction or cancellation shall be given to all Qualified Bidders.

The Debtors, with the assistance of their advisors, shall direct and preside over the Auction. Only the Debtors, the Consultation Parties (including the members of the Committee), the Unions, and any Qualified Bidders that have submitted Qualified Bids by the Bid Deadline, in each case, along with their representatives and counsel, are eligible to attend the Auction, subject to other limitations as may be reasonably imposed by the Debtors (in consultation with the Consultation Parties) in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference. Only Qualified Bidders (including any Stalking Horse Bidders) will be entitled to make any further Bids at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (a) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (b) each Qualified Bid that it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

### B.     Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment (in consultation with the Consultation Parties):

1.     **Baseline Bids**. Bidding shall commence at the amount of the Baseline Bid.

2.     **Minimum Overbid**. Bidding shall commence at the amount of the Baseline Bid(s). Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid(s). The Debtors shall, in consultation with the Consultation Parties, determine and announce at the outset of the Auction the minimum required increments for successive Qualified Bids (the "***Minimum***

***Overbids***"). The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

3. **Highest or Best Offer**. After the first round of bidding and between each subsequent round of bidding, the Debtors (in consultation with the Consultation Parties) shall announce the bid that they believe in their reasonable business judgment to be the highest or otherwise best offer for the relevant Assets (the "***Leading Bid***") and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid. All participating Qualified Bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds.

4. **Rejection of Bids**. The Debtors may, in their reasonable business judgment (in consultation with the Consultation Parties) reject, at any time before entry of an order of the Court approving a Qualified Bid, any bid that the Debtors determine is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

5. **Additional Information**. The Debtors (in consultation with the Consultation Parties) shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any bid made by a Qualified Bidder during the Auction.

6. **Modification of Procedures**. The Debtors may announce at the Auction modified or additional procedures for conducting the Auction, or otherwise modify the Bidding Procedures, in consultation with the Consultation Parties to the extent any such modifications are material.

7. **Remaining Terms Are the Same as for Qualified Bids:** Except as modified herein or by the Debtors at the Auction, in consultation with the Consultation Parties, an Overbid at an Auction must comply with the conditions for a Qualified Bid set forth above, *provided*, *however*, that no additional Deposit shall be required beyond the Deposit previously submitted by a Qualified Bidder, *provided* that the Successful Bidder (other than the Existing Lenders or their designee in connection with a credit bid) with respect to a Sale Transaction shall be required to make a representation at the end of an Auction that it will provide any additional deposit necessary so that its Deposit is equal to 10% of the cash portion of the Transaction Purchase Price of the Bid.

The Auction shall include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; *provided* that any Overbid made by a Qualified Bidder (including with respect to any Backup Bid) must remain open and binding on the Qualified Bidder until the close of the Auction, and, if selected as a Successful Bid, until the closing of the Sale Transaction contemplated by such Successful Bid. The Debtors may, in their reasonable business judgment (in consultation with the Consultation Parties), negotiate with any and all Qualified Bidders participating in the Auction.

### C.    Adjournment of the Auction

The Debtors reserve the right, in their reasonable business judgment (in consultation with the Consultation Parties), consistent with, and subject to, the Milestones under the DIP Orders, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale Transaction(s) at the prevailing bid amount.

## X.    Successful Bidder

Immediately prior to the conclusion of the Auction, the Debtors shall (a) determine (in consultation with the Consultation Parties) consistent with the Bidding Procedures, which Bid constitutes the highest or otherwise best Bid with respect to each Sale Transaction (each such bid, a "***Successful Bid***" and such Qualified Bidder's purchase agreement, the "***Successful Bidder Purchase Agreement***"); and (b) notify all Qualified Bidders at the Auction for the Assets under a Sale Transaction of the identity of the bidder that submitted the Successful Bid (each such bidder, the "***Successful Bidder***") and the amount of the purchase price and other material terms of the Successful Bid with respect to such Sale Transaction.

The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) (the "***Notice of Successful Bidder***") with respect to each Sale Transaction as soon as reasonably practicable after closing of the Auction with respect to such Sale Transaction, if any, and in any event not later than one day after the closing of the Auction. In the event there is no Auction with respect to a Sale Transaction, the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder on September 19, 2025.

The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing. The Debtors shall seek approval by the Court to consummate the Backup Bid, solely in the event the Successful Bidder fails to close the transaction as provided in the Successful Bid and with all rights reserved against the Successful Bidder.

Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors may not consider any Bids submitted after the conclusion of an Auction with respect to the Assets subject to such Auction (such Bid, a "***Late Bid***"). Notwithstanding anything in the Bidding Procedures to the contrary, a Bid shall not be considered a Late Bid if such Bid does not apply to the Assets that were the subject of an Auction, as applicable.

## XI.    Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction for the Assets under a Sale Transaction, as determined by the Debtors in the exercise of their reasonable business judgment (in consultation with the Consultation Parties) (the "***Backup Bid***"), shall be required to serve as a backup bidder (the "***Backup Bidder***") with respect to such Sale Transaction, and each Qualified Bidder with respect to a Sale Transaction shall agree and be deemed to agree to be the Backup Bidder with respect to such Sale Transaction if so designated; *provided* that if any Stalking Horse Bidder(s) are selected as the Backup Bid with respect to its Stalking Horse Bid(s), such bid must remain irrevocable only for so long as is required under the applicable Stalking Horse Agreement; *provided*, *further* that neither the Existing Lenders nor their designee shall be required to serve as a backup bidder.

The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.

The Backup Bid shall remain binding on the Backup Bidder until the earlier of (a) closing of a Sale Transaction for the applicable Assets pursuant to the Successful Bid or (b) the date that is 90 calendar days after the Sale Hearing (such date, the "***Backup Bid Outside Date***"). If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid prior to the Backup Bid Outside Date, the Debtors may select the Backup Bidder as the Successful Bidder with respect to such Sale Transaction, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.

## XII.    Return of Deposit

The Deposits of all Qualified Bidders (including any Stalking Horse Bidders) shall be held in escrow by the Debtors, or their agent, and shall not become property of the Debtors' estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of the Bankruptcy Court. The Deposit of the Successful Bidder with respect to a Sale Transaction shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder with respect to a Sale Transaction shall be returned on or before the date that is five business days after the Auction. The Backup Bidder's Deposit shall be held in escrow until the earlier of (a) the closing of the Sale with the Successful Bidder or (b) the Backup Bid Outside Date. In the event the Successful Bidder fails to close prior to the Backup Bid Outside Date and the Debtors opt to close on the Sale Transaction(s) set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the purchase price of such transaction(s) at closing. In the event the Debtors close the

Sale Transaction with the Successful Bidder or have not closed such transaction by the Backup Bid Outside Date, the Backup Bidder's Deposit shall be returned on or before the date that is five business days after the occurrence of the Backup Bid Outside Date. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

Notwithstanding any provision hereof, the terms pertaining to any Deposit submitted by any Stalking Horse Bidder pursuant to a Stalking Horse Agreement (including, without limitation, the entitlements of such Stalking Horse Bidder and the Debtors to such Deposit and the timing of return of any good faith deposit to a Stalking Horse Bidder) shall be governed by the terms of such Stalking Horse Agreement.

## XIII.   Consultation by the Debtors

The term "*Consultation Parties*" as used in the Bidding Procedures shall mean: (a) the ad hoc group of term lenders represented by Ropes & Gray LLP (the "*Ad Hoc Group*") and their advisors; (b) the Official Committee of Unsecured Creditors (the "*Committee*"); and (c) any other official committee appointed in the Chapter 11 Cases; *provided* that to the extent that any party in the preceding clauses (a) through (c) submits a Bid in connection with any potential Sale Transaction for particular Assets, such party shall not be a Consultation Party with respect to such Assets to the extent that doing so would violate the Procedures for Complex Cases in the Southern District of Texas. If a member of the Committee submits a Bid for the Assets, the Committee will maintain its consultation rights as a Consultation Party; *provided* that the Committee excludes the bidding Committee member from any discussions or deliberations regarding a transaction involving any Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to such bidding Committee member.

Throughout the Sale process, the Debtors and their advisors will consult with the Consultation Parties as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtors' business judgment.

The Debtors shall consult with the Consultation Parties in good faith regarding the Sale process, any diligence and other information requested by the Consultation Parties, and, upon reasonable request from the Consultation Parties, the Debtors will provide to the Consultation Parties reports concerning the sale process, including parties contacted, buyer feedback, copies of all letters of intent, drafts of definitive agreements and updates on proposals. For the avoidance of doubt, and without limitation, the Debtors shall consult with the Consultation Parties on modifications to these Bidding Procedures, which bidders qualify as Qualified Bidders and which bids qualify as Qualified Bids, selecting any Stalking Horse Bid(s) and providing any such Stalking Horse Bidder(s) with Bid Protections, the selection of the Baseline Bid, the selection of the Leading Bid, determining the amount of each Minimum Overbid, how the Auction is conducted, any additional material Auction procedures, adjourning the Auction, canceling the Auction, and selecting the Successful Bidder and the Backup Bidder.

## XIV.    Sale Is "As Is/Where Is"

Except as otherwise provided in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, any Assets of the Debtors sold pursuant to the Bidding Procedures shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**." Except as may be set forth in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, the Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the proceeds of sale paid directly to the Debtors (to be held by the Debtors for the benefit of, and pending the distribution of such proceeds to, the Existing Lenders and other holders of liens in accordance with the priority of their respective liens and otherwise subject to the debtor-in-possession financing orders in place in the Chapter 11 Cases) with the same validity and in the same order of priority.

## XV.    Reservation Of Rights

**The Debtors (in consultation with the Consultation Parties) reserve the right to, in their reasonable business judgment and consistent with the exercise of their fiduciary duties, to (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine whether to enter into a Stalking Horse Agreement; and (d) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal with respect to a Sale Transaction; and (e) modify the Bidding Procedures in good faith, and consistent with to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to selection of the Successful Bidder, additional customary terms and conditions on the Sale of the Assets, including, without limitation: (i) extending the any of the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction (if held) without further notice; (iii) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction or adjourning the Sale Hearing in open court (if held); (iv) canceling the Auction or electing not to hold an Auction; (v) rejecting any or all Bids or Qualified Bids; (vii) adjusting the applicable Minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind basis." The Debtors shall provide reasonable notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder. Nothing in this section XV or elsewhere in these Bid Procedures will be construed to limit the rights of the Existing Lenders under the DIP Orders or DIP Documents.**

## XVI.    Consent to Jurisdiction

All Prospective Bidders and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court for any and all matters related to, or in connection with, the Bidding Procedures, including, without limitation, any finding or determination that such Prospective Bidders or Qualified Bidders have waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of the Bidding Procedures, any credit bid, the Stalking Horse Agreement or Modified Purchase Agreement, as applicable.

## XVII.  Sale Hearing

A hearing to consider approval of the sale of the Debtors' Assets to the Successful Bidder(s), Backup Bidder(s) (if applicable), or to approve any Successful Bidder Purchase Agreement with respect to a Sale Transaction (the "**Sale Hearing**"), is currently scheduled to take place on **September 26, 2025, at [_____] [a/p].m. (prevailing Central Time)**, before the Honorable Alfredo R. Perez at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Courtroom No. 400, Houston, Texas 77002.

Subject to the Milestones contained in the DIP Orders, **t**he Sale Hearing may be continued to a later date by the Debtors (in consultation with the Consultation Parties) by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

The Debtors reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s); *provided* that the Debtors shall not reduce the time provided herein for a party in interest to file any objection to the Sale absent further order of the Court.

At the Sale Hearing, the Successful Bidder(s) and the Backup Bidder(s) must acknowledge on the record at the start of the hearing that in connection with submitting their Bids, they did not engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction or the Sale, specifying that they did not agree with any Prospective Bidders, or Qualified Bidders to control the price or any other terms of the Sale.

## XVIII. Fiduciary Out

Nothing in the Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to the Bidding Procedures or the Sale process, to the extent such board of directors, board of managers, or such similar governing body determines in good faith, after consultation with counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

**Exhibit 2**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------- x
                                  :

In re:                         :     Chapter 11

                                    :

RUNITONETIME LLC, *et al.*,        :     Case No. 25-90191 (ARP)

                                    :

           Debtors.[1]             :     (Jointly Administered)

                                    :
---------------------------------------------------------- x

## NOTICE OF SALE, BIDDING PROCEDURES,
## POTENTIAL AUCTION, AND SALE HEARING

      **PLEASE TAKE NOTICE** that, on July 14, 2025 (the "***Petition Date***"), the above captioned debtors and debtors in possession (collectively, the "***Debtors***") filed voluntary petitions for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (this "***Court***"), commencing the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

      **PLEASE TAKE FURTHER NOTICE** that, on August 1, 2025, the Debtors filed a motion [Docket No. [___]] (the "***Bidding Procedures Motion***") seeking entry of (a) an order (the "***Bidding Procedures Order***"): (i) authorizing and approving the proposed bidding procedures substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "***Bidding Procedures***")[2] in connection with a sale or disposition of certain or substantially all of the Debtors' assets (the "***Assets***") in one or more sale transactions (each, a "***Sale Transaction***" and collectively, the "***Sale***"); (ii) approving the procedures for the Debtors to select one or more Stalking Horse Bidders and to enter into related Stalking Horse Agreements; (iii) authorizing and approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof; (iv) authorizing and approving the form and manner of notice of the Auction(s), if any, for the sale or sales of the Assets (the "***Auction***"), if any, the Sale and the hearing or hearings to consider approval of a Sale Transaction (each, a "***Sale Hearing***"); (v) establishing certain dates and deadlines in connection with the Sale process, including the Sale Hearing(s); and (vi) granting related relief.

---

[1]   A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

[2]   Capitalized terms used but not defined in this notice have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order. To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2025, the Court entered the Bidding Procedures Order [Docket No. [____]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.

## I.      Description of the Assets

The Debtors are soliciting bids for certain or substantially all of the Assets, which are comprised of the following segments: (a) "***PokerCo***," to be composed of Aces Poker Lakewood, Aces Poker Mountlake Terrace, Caribbean Casino, Caribbean Cardroom, and working capital required to operate the businesses (to the extent available); (b) ***LeaseCo***" to be composed of the Debtors' properties subject to the Blue Owl Master Lease and non-PokerCo Washington properties subject to leases with other landlords; and (c) "***MainCo***" to be composed of the remainder of the Debtors' existing businesses, interest, and tangible and intangible assets.

Pursuant to the Bidding Procedures Order, the Debtors may designate one or more stalking horse bids for any groupings or subgroupings of the Assets (each a "***Stalking Horse Bid***"). Each Stalking Horse Bid shall be subject to higher or better offers, the outcome of an auction (if any), and the approval of the Court.

## II.     Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting Preliminary Bid Documents, Bids, and Qualified Bids, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors.

**Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker as soon as possible:**

**GLC Advisors & Co., 600 Lexington Avenue, New York, New York 10022, Attn: Mack Rossoff (mack.rossoff@glca.com), Michael Sellinger (michael.sellinger@glca.com), Tim Hagamen (tim.hagamen@glca.com), and Daniel Grundei (daniel.grundei@glca.com).**

## III.    Important Dates and Deadlines[3]

| Event | Proposed Date |
|---|---|
| **LeaseCo Marketing Determination Date** | Wednesday, August 20, 2025 |

---

[3]   The following dates and deadlines may be extended by the Debtors, in consultation with the Consultation Parties, or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

| Event | Proposed Date |
|---|---|
| **Indication of Interest Deadline[4]** | Wednesday, August 20, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Stalking Horse Designation Deadline** | Tuesday, September 2, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Stalking Horse Objection Deadline** | Monday, September 8, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Cure Notice Deadline** | Monday, September 8, 2025 |
| **Bid Deadline** | Wednesday, September 17, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Auction(s) (if necessary)** | Friday, September 19, 2025, at 10:00 a.m. (prevailing Central Time) |
| **Deadline to File Notice of Successful Bidder[5]** | As soon as reasonably practicable after the close of the Auction with respect to the applicable Sale Transaction, and, in any event, no later than 5:00 p.m. (prevailing Central Time) on the date that is one day after the close of such Auction. In the event there is no Auction with respect to a Sale Transaction, the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder on September 19, 2025. |
| **Cure Objection Deadline[6]** | By 4:00 p.m. (prevailing Central Time) on the day that is 14 days after service of the Cure Notice or a Supplemental Cure Notice, as applicable |

---

[4]   For the avoidance of doubt, to the extent the Debtors, in consultation with the Consultation Parties, determine to commence a marketing process for the LeaseCo Assets, the Indication of Interest Deadline shall not apply, and all Bids for LeaseCo shall be subject to the Bid Deadline.

[5]   In the event that an Auction is cancelled, including, without limitation, because only one Qualified Bid (including a Stalking Horse Bid or credit bid) with respect to a Sale Transaction is received by the Bid Deadline, the Debtors shall file a Notice of Successful Bidder promptly identifying such Qualifying Bid as the Successful Bidder with respect to such Sale Transaction, but in no event later than September 19, 2025. To the extent there are no Qualified Bids or Stalking Horse Bids received with respect to certain of the Debtors' Assets, the Debtors will determine the next phase of the Sale and chapter 11 process in consultation with the Required DIP Lenders and the Committee (each, as defined below).

[6]   The Cure Objection Deadline applies to any objections to the Debtors' proposed Cure Costs as of the date of the Cure Notice or Supplemental Cure Notice (each as defined below), as applicable (each such objection, a "***Cure Objection***").

3

| Event | Proposed Date |
|---|---|
| **Sale Objection Deadline**[7] | The later of the date that is three days after the filing of the Notice of Successful Bidder or Tuesday, September 23, 2025, at 4:00 p.m. (prevailing Central Time) |
| **Sale Hearing (subject to Court availability)** | No later than Friday, September 26, 2025[8] |

## IV.    Sale Hearing

A hearing to consider approval of the sale of the Debtors' Assets to the Successful Bidder(s), Backup Bidder(s) (if applicable), or to approve any Successful Bidder Purchase Agreement with respect to a Sale Transaction (the "***Sale Hearing***"), is currently scheduled to take place on **September 26, 2025, at [____] [a/p].m. (prevailing Central Time)**, before the Honorable Alfredo R. Perez at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Courtroom No. 400, Houston, Texas 77002.

Subject to the Milestones contained in the DIP Orders, t**h**e Sale Hearing may be continued to a later date by the Debtors (in consultation with the Consultation Parties) by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

The Debtors reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s); *provided* that the Debtors shall not reduce the time provided herein for a party in interest to file any objection to the Sale absent further order of the Court.

## V.    Filing Objections

Objections to the Sale or conduct of the Auction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases for such objection; (c) comply with the Bankruptcy Code; the Bankruptcy Rules, the Bankruptcy Local Rules and all orders of this Court entered in the Chapter 11 Cases; (d) be filed with this Court by the later of the date that is three days after the filing of the Notice of Successful Bidder or September 23, 2025 at 4:00 p.m. (prevailing Central Time) (the "***Sale Objection Deadline***") and (e) be served upon the following parties (collectively, the "***Objection Notice Parties***"): (1) proposed counsel to the Debtors, Latham & Watkins LLP,

---

[7]    The Sale Objection Deadline applies to any objections to the Sale or to the assumption and assignment of the Assigned Contracts other than Cure Objections.

[8]    The Sale Hearing may be continued by the Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, from time to time, either by Court docket entry or by the Debtors filing a notice on the Court's docket, without further notice to creditors or parties in interest. Further, the Debtors reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s); *provided* that the Debtors shall not reduce the time provided herein for a party in interest to file any objection to the Sale absent further order of the Court.

355 South Grand Avenue, Suite 100, Los Angeles, California 90071-1560 (Attn: Helena Tseregounis, and Nicholas Messana) (helena.tseregounis@lw.com, and nicholas.messana@lw.com) and 1271 Avenue of the Americas, New York, New York 10020 (Attn: Andrew Sorkin) (andrew.sorkin@lw.com); (2) proposed co-counsel to the Debtors, Hunton Andrews Kurth LLP, 600 Travis St., Houston, Texas 77002 (Attn: Timothy A. "Tad" Davidson II, Ashley L. Harper, and Philip M. Guffy) (taddavidson@hunton.com, ashleyharper@hunton.com, and pguffy@hunton.com); (3) counsel to the Ad Hoc Group and Backstop Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704 (Attn: Ryan P. Dahl, Daniel Gwen, and Margaret Alden) (ryan.dahl@ropesgray.com, daniel.gwen@ropesgray.com, and margaret.alden@ropesgray.com); (4) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Jayson Ruff and Vianey Garza) (jayson.b.ruff@usdoj.gov and vianey.garza@usdoj.gov); (5) proposed counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 300 Colorado Street, Suite 1800, Austin, Texas 78701 (Attn: Lorenzo Marinuzzi) (lmarinuzzi@mofo.com) and 250 West 55th Street, New York, New York 10019 (Attn: Doug Mannal, Theresa Foudy, Benjamin Butterfield, and Raff Ferraioli) (dmannal@mofo.com, tfoudy@mofo.com, bbutterfield@mofo.com, and rferraioli@mofo.com); and (6) any Successful Bidder(s).

## VI.   Consequences of Failing to Timely File an Objection

**Any party who fails to make a timely Sale Objection on or before the Sale Objection Deadline shall be forever barred from asserting any Sale Objection, including with respect to the transfer of the Assets free and clear of all liens, claims, encumbrances and other interests.**

## VII.   Sale Free and Clear

**The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Successful Bidder(s) will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder(s) will have no liability, except as expressly provided in the Successful Bidder Purchase Agreement(s), for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.**

## VIII.   Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/RunItOneTime/, or can be requested by calling the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, at 1 (877) 814- 0967 (Domestic) or 1 (646) 440-4367 (International).

**Exhibit 3**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------- x
                          :

In re:                               :      Chapter 11

                                 :

RUNITONETIME LLC, *et al.*,           :      Case No. 25-90191 (ARP)

                                 :

          Debtors.[1]               :      (Jointly Administered)

                                 :

---------------------------------------------------------- x

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

      **PLEASE TAKE NOTICE** that, on July 14, 2025 (the "***Petition Date***"), the above captioned debtors and debtors in possession (collectively, the "***Debtors***") filed voluntary petitions for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (this "***Court***"), commencing the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

      **PLEASE TAKE FURTHER NOTICE** that, on August 1, 2025, the Debtors filed a motion [Docket No. [___]] (the "***Bidding Procedures Motion***") seeking entry of (a) an order (the "***Bidding Procedures Order***"): (i) authorizing and approving the proposed bidding procedures substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "***Bidding Procedures***")[2] in connection with a sale or disposition of certain or substantially all of the Debtors' assets (the "***Assets***") in one or more sale transactions (each, a "***Sale Transaction***" and collectively, the "***Sale***"); (ii) approving the procedures for the Debtors to select one or more Stalking Horse Bidders and to enter into related Stalking Horse Agreements; (iii) authorizing and approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "***Assumption and Assignment Procedures***") in connection with the Sale and approving the form and manner of notice thereof; (iv) authorizing and approving the form and manner of notice of the Auction(s), if any, for the sale or sales of the Assets (the "***Auction***"), if any, the Sale and the hearing or hearings to consider approval of a Sale Transaction (each, a "***Sale Hearing***"); (v) establishing certain dates and deadlines in connection with the Sale process, including the Sale Hearing(s); and (vi) granting related relief.

---

[1]   A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

[2]   Capitalized terms used but not defined in this notice have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order. To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

PLEASE TAKE FURTHER NOTICE that, on [_____], 2025, the Court entered the Bidding Procedures Order [Docket No. [__]], approving, among other things, the Bidding Procedures and the Assumption and Assignment Procedures contained in the Bidding Procedures Order. All contract and lease counterparties should carefully read the Bidding Procedures Order, including the Assumption and Assignment Procedures therein, and the Bidding Procedures in their entirety.[3]

PLEASE TAKE FURTHER NOTICE that, upon the closing of an applicable Sale Transaction, the Debtors intend to assume and assign the Assigned Contracts to the applicable Buyer. A schedule listing your contracts and leases that may potentially be assumed and assigned as part of a Sale Transaction is attached hereto as **Exhibit 1** (the "***Contracts Schedule***").

PLEASE TAKE FURTHER NOTICE that Cure Costs, if any, for the assumption and assignment of your contracts and leases are also set forth on the Contracts Schedule. Each Cure Cost listed on the Contracts Schedule represents all liabilities of any nature of the Debtors arising under a contract or lease prior to the closing of the applicable Sale Transaction or other applicable effective date of the assumption and assignment of such contract or lease, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the applicable Sale Transaction or other applicable effective date of the assumption and assignment of such contract or lease.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF A SALE TRANSACTION.** Until the consummation of the Sale, the Debtors reserve the right, in consultation with the Successful Bidder(s) once selected, and are authorized, but not directed, to (i) designate additional Assigned Contracts, (ii) eliminate Assigned Contracts from those to be assumed and assigned to a Successful Bidder, or (iii) modify the previously stated Cure Cost associated with any contract or lease identified on the Contracts Schedule. ***The presence of a contract or lease listed on Exhibit 1 attached hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease or that such contract or lease will ultimately be an Assigned Contract assumed and assigned as part of the Sale. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and leases listed on Exhibit 1 attached hereto.***

## I.    Filing Objections

Any objections to the Debtors' proposed Cure Costs must (a)(i) be in writing; (ii) state the basis for such objection; and (iii) if such objection is to a Cure Cost with respect to an Assigned Contract, state with specificity what Cure Cost the counterparty believes is required with respect to such Assigned Contract (in all cases, with appropriate documentation in support thereof), and (b) be filed with the Court and served no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days after the filing and service of the Cure Notice (the "***Cure Objection Deadline***"), as

---

[3]   To the extent of any inconsistencies between the (a) Bidding Procedures Order and the Assumption Assignment Procedures therein and (b) the summary descriptions of the Bidding Procedures Order and Assumption and Assignment Procedures in this notice, the terms of the Bidding Procedures Order shall control in all respects.

applicable, on the following parties (the "***Objection Notice Parties***"): (1) proposed counsel to the Debtors, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071-1560 (Attn: Helena Tseregounis, and Nicholas Messana) (helena.tseregounis@lw.com, and nicholas.messana@lw.com) and 1271 Avenue of the Americas, New York, New York 10020 (Attn: Andrew Sorkin) (andrew.sorkin@lw.com); (2) proposed co-counsel to the Debtors, Hunton Andrews Kurth LLP, 600 Travis St., Houston, Texas 77002 (Attn: Timothy A. "Tad" Davidson II, Ashley L. Harper, and Philip M. Guffy) (taddavidson@hunton.com, ashleyharper@hunton.com, and pguffy@hunton.com); (3) counsel to the Ad Hoc Group and Backstop Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704 (Attn: Ryan P. Dahl, Daniel Gwen, and Margaret Alden) (ryan.dahl@ropesgray.com, daniel.gwen@ropesgray.com, and margaret.alden@ropesgray.com); (4) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Jayson Ruff and Vianey Garza) (jayson.b.ruff@usdoj.gov and vianey.garza@usdoj.gov); (5) proposed counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 300 Colorado Street, Suite 1800, Austin, Texas 78701 (Attn: Lorenzo Marinuzzi) (lmarinuzzi@mofo.com) and 250 West 55th Street, New York, New York 10019 (Attn: Doug Mannal, Theresa Foudy, Benjamin Butterfield, and Raff Ferraioli) (dmannal@mofo.com, tfoudy@mofo.com, bbutterfield@mofo.com, and rferraioli@mofo.com); and (6) any Successful Bidder(s).

In the event that you receive a Supplemental Cure Notice that either (i) designates your contract or lease as an Assigned Contract for the first time or (ii) modifies the previously stated Cure Costs associated with any such contract or lease, the Cure Objection Deadline shall be extended to no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days after the filing and service of such Supplemental Cure Notice, solely to the extent such objection relates to the newly-designated Assigned Contract or the decreased Cure Cost, as applicable.

The Debtors shall file a notice identifying the Successful Bidder(s) and Backup Bidder(s) (if selected) (the "***Notice of Successful Bidder***") with respect to each Sale Transaction as soon as reasonably practicable after closing of the Auction with respect to such Sale Transaction, if any, and in any event not later than one day after the closing of such Auction. In the event there is no Auction with respect to a Sale Transaction, the Debtors shall file the Notice of Successful Bidder identifying the Successful Bidder on September 19, 2025. Each counterparty to an Assigned Contract will then have an opportunity to object solely to the identity of the Successful Bidder(s) or adequate assurance of future performance with respect to such counterparty's contract or lease provided by the Successful Bidder(s), which must (1) be in writing, (2) comply with the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and all orders of the Court entered in these Chapter 11 Cases, (3) state, with specificity, the legal and factual bases thereof, (4) be filed with the Court by **the date that is three days after the filing of the Notice of Successful Bidder** (the "***Sale Objection Deadline***"), and (5) be served on the Objection Notice Parties.

The Court will hear and determine any objections to the assumption and assignment of the Assigned Contracts to the Buyer at the Sale Hearing or at a later hearing, as determined by the Debtors. The Sale Hearing to consider the Sale Transaction(s) and the Sale shall be held before the Honorable Judge Alfredo R. Perez on **September 26, 2025, at [_____] [a/p].m. (prevailing Central Time)**, or such other date as determined by the Court, at the United States Bankruptcy

Court for the Southern District of Texas, 515 Rusk Street, Courtroom No. 400, Houston, Texas 77002.

Subject to the Milestones contained in the DIP Orders, the Sale Hearing may be continued to a later date by the Debtors (in consultation with the Consultation Parties) by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

The Debtors reserve the right to seek an expedited Sale Hearing or multiple Sale Hearings as may be useful or necessary to effectuate any Sale Transaction(s); *provided* that the Debtors shall not reduce the time provided herein for a party in interest to file any objection to the Sale absent further order of the Court.

## II.     Consequences of Failing to Timely Assert an Objection

**Unless you file a timely objection to the Cure Cost or the assumption or assignment of your contract or lease in accordance with the instructions and deadlines set forth herein, you shall be (a) barred from objecting to the Cure Cost set forth on <u>Exhibit 1</u>, (b) estopped from asserting or claiming any Cure Cost against the Debtors, or the Successful Bidder(s) that is greater than the cure cost set forth on <u>Exhibit 1</u> and (c) deemed to have consented to the assumption and assignment of your contract or lease.**

## III.    Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/RunItOneTime/, or can be requested by calling the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, at 1 (877) 814- 0967 (Domestic) or 1 (646) 440-4367 (International).