IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
: 
In re: : Chapter 11
:
RUNITONETIME LLC, *et al.*, : Case No. 25-90191 (ARP)
:
Debtors.[1] : (Jointly Administered)
:
------------------------------------------------------------ x

**DECLARATION OF JEFF SEERY IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING THE DEBTORS' KEY EMPLOYEE RETENTION PLAN
FOR NON-INSIDER EMPLOYEES; AND (II) GRANTING RELATED RELIEF**

I, Jeff Seery, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer of the Maverick Debtors and the Liquidity Employee of the Licensed Operator Affiliate Debtors, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or the "**Company**"), and the Chief Financial Officer of RunItOneTime LLC. I am authorized to submit this declaration (this "**Declaration**") on behalf of the Debtors.[2]

2. I have served as Chief Financial Officer of certain of the Maverick Debtors since August 2020 and was appointed as Chief Restructuring Officer of the Maverick Debtors and Liquidity Employee of the Licensed Operator Affiliate Debtors in July 2025. I have more than 10 years of gaming and hospitality industry experience and experience across all aspects of corporate

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

[2] Capitalized terms used but not defined in this paragraph have the meanings given to them in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18].

finance. Prior to joining the Company in June 2019, I spent five years with Las Vegas Sands as a Senior Vice President of Corporate Finance Management, and over ten years with CBRE as a Senior Vice President of Business Development. I have a Masters in Business Administration from UCLA's Anderson School of Management and a bachelor's degree in economics and political science from Tufts University.

3. I submit this Declaration on behalf of the Debtors in support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors Key Employee Retention Plan for Non-Insider Employees; and (II) Granting Related Relief* (the "**KERP Motion**").[3]

4. As set forth above, I am knowledgeable about and familiar with the Debtors' day-to-day operations, business and financial affairs, books and records, and the circumstances that led to the commencement of the Chapter 11 Cases. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Company's other officers, directors, and restructuring advisors, including professionals at Latham & Watkins LLP ("**Latham**"), Hunton Andrews Kurth LLP ("**Hunton**"), GLC Advisors & Co., LLC ("**GLC**"), Portage Point Partners ("**Portage Point**"), and Kroll Restructuring Administration LLC ("**Kroll**" and, together with Latham, Hunton, GLC, and Portage Point, the "**Advisors**"), and my opinion based upon experience, knowledge, and information concerning the Company's operations and financial condition. If called upon to testify, I would testify to the facts as set forth in this Declaration.

5. As of the Petition Date, the Debtors had approximately 2,900 employees based in Nevada, Washington, Colorado, and Utah. The Debtors' workforce performs a variety of functions critical to the Debtors' business operations. Two of the Debtors' non-insider employees are crucial

---

[3] Capitalized terms used but not defined herein have the meanings given to them in the KERP Motion.

2

to ensuring all the Debtors' critical functions continue to operate efficiently and effectively. The Debtors rely on these essential employees to manage the Debtors' financial systems, assure that payments are made correctly and timely, and to assist in the administration of the Chapter 11 Cases.

6. One of these employees is the Debtors' corporate controller (the "*Controller*"). He has been with the Debtors for almost four years, and has extensive knowledge of the Debtors' financial systems. He handles all corporate accounting for the Debtors and manages the accounts payable and other financial systems. The other employee is the Debtors' treasury director (the "*Treasury Director*" and together with the Controller, the "*KERP Participants*"). He has also been with the Debtors for nearly four years and personally handles all treasury functions for the Debtors.

7. Given the KERP Participants' skills and specific knowledge of the Debtors' business, it would not only be challenging for the Debtors, but also detrimental to the Debtors' business operations, to need to focus on replacing such employees at this time—all while incurring substantial costs in the process. Likewise, the KERP Participants are critical to the success of the Debtors' ongoing marketing and sale process, underscoring the potential disruption that could occur if there was a need to replace such employees. The commencement of the Chapter 11 Cases has significantly increased the workloads and responsibilities of these two employees as they are heavily involved in the administrative tasks necessary for the Debtors to comply with their duties as debtors in possession under the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

8. The increased workload and responsibilities that have fallen on the KERP Participants as a result of the Chapter 11 Cases without a commensurate increase in compensation

has created a substantial risk that the KERP Participants may seek employment elsewhere. Losing the KERP Participants at this critical juncture in the Chapter 11 Cases would be detrimental to the Debtors' ability to meet their obligations and pursue their reorganization process and would impose costs on the Debtors' estates in excess of the amount of the proposed awards to these employees under the KERP.

9. I believe that providing cash retention payments to the KERP Participants in an aggregate amount of $94,500, with $35,000 paid to the Controller and $59,500 paid to the Treasury Director (collectively, the "**Retention Bonuses**") is necessary to induce the KERP Participants to remain with the Debtors for the duration of the Chapter 11 Cases. The amount of the Retention Bonuses reflects a percentage of the KERP Participants' base salary over the projected duration of the case, taking into account the specific additional responsibilities falling on the KERP Participants as a result of the Chapter 11 Cases.

10. With the assistance of the Debtors' Advisors, and in consultation with the Special Committee, I determined that it is essential to the Debtors' operations and the success of the Chapter 11 Cases to retain the KERP Participants based on a number of criteria, including: (a) role criticality, (b) anticipated difficulty in backfilling the role, (c) individual criticality, and (d) risk of attrition. It is my belief, based on that review and my familiarity with the Debtors' financial, operational, and restructuring goals throughout these Chapter 11 Cases consistent with the Transaction Support Agreement and the budget and DIP Facility and Approved Budget under the DIP Orders, that the amount of the Retention Bonuses is appropriate and specifically tailored to retain the KERP Participants.

11. I am informed by the Debtors' advisors that neither of the KERP Participants are "insiders" as that term is defined in the Bankruptcy Code. Although the KERP Participants are

important to the Debtors' business and will be particularly vital during the Chapter 11 Cases, they do not have access to strategic inside information, nor do they have the ability to influence, control, or direct the Debtors' business operations. In each case, the KERP Participants' scope of authority is limited and each of them report to me, not the board.

12. I believe that the KERP Participants' work will be indispensable throughout the Chapter 11 Cases. I am concerned that the KERP Participants may be motivated to leave the Debtors' employment during the pendency of the Chapter 11 Cases due to, among other things, the additional workload and challenges in performing their roles due to the Debtors' restructuring efforts. Indeed, the KERP Participants have undertaken substantial additional responsibilities and expended significantly more working hours than contemplated by the normal terms of their employment during the Debtors' evaluation of strategic alternatives and in these Chapter 11 Cases. Critically, the KERP Participants have taken on these additional responsibilities without any corresponding increase in compensation.

13. I believe that the Debtors cannot now afford to risk losing the KERP Participants, whose continued employment with the Debtors is crucial to their ongoing restructuring efforts. The KERP Participants possess special skills, knowledge, and understanding of the Debtors' specific assets, operations, and infrastructure. Their loss would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 3, 2025
       Seattle, Washington

                                                  */s/ Jeff Seery*
                                                  Jeff Seery