**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
------------------------------------------------------ x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
RUNITONETIME LLC, et al.,                              :   Case No. 25-90191 (ARP)
                                                       :
          Debtors.¹                                    :   (Jointly Administered)
                                                       :
------------------------------------------------------ x
```

**EMERGENCY MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER APPROVING SETTLEMENT
AGREEMENT AMONG THE DEBTORS, THE SECURED LENDERS,
PROJECT EVERGREEN WA LLC, AND PROJECT EVERGREEN NV OWNER LLC**

> **Emergency relief has been requested. Relief is requested not later than 9:30 a.m. (prevailing Central Time) on December 17, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on December 17, 2025, at 9:30 a.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may attend the hearing either in person or by audio/video communication.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RunItOneTime/. The Debtors' mailing address is 12530 NE 144th Street, Kirkland, Washington 98304.

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully state the following in support of this motion (the "**Motion**"):

## RELIEF REQUESTED

1. The Debtors seek entry of the attached stipulation and agreed order (the "**Agreed Order**")[2] providing for a settlement (the "**Settlement**") by and among the Debtors the DIP Secured Parties (as defined in the DIP Order), the ad hoc group of term lenders represented by Ropes & Gray LLP (the "**AHG Lenders**" and, together with the Prepetition Secured Parties (as defined in the DIP Order) and the DIP Secured Parties, the "**Secured Lenders**"),[3] and Project Evergreen WA LLC and Project Evergreen NV Owner LLC (collectively, "**Blue Owl**" and, together with the Debtors and the Secured Lenders, the "**Parties**"), and respectfully state as follows:[4]

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363(b), and 365 of title 11 of the Bankruptcy Code (the "**Bankruptcy Code**"), rules 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 9013-1 of the Bankruptcy Local

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Agreed Order.

[3] The AHG Lenders include the lenders identified on the verified statement pursuant to Bankruptcy Rule 2019 filed at Docket No. 38.

[4] While the Secured Lenders and Blue Owl support approval of the Settlement and entry of the Agreed Order, the recitation of facts and arguments contained in the Motion are the statements of the Debtors only. The rights of the Secured Lenders and Blue Owl to contest such statements or take alternative positions are expressly reserved.

Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas.

## BACKGROUND

4. On July 14, 2025 (the "**Petition Date**"), the Debtors each commenced with the Court a voluntary case (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in the Court.

5. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On July 25, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "**Committee**") [Docket No. 81]. No trustee or examiner has been appointed in the Chapter 11 Cases.

6. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

7. The Debtors are a privately held gaming and entertainment company focused on acquiring undervalued gaming assets and implementing operational changes to improve profitability. The Debtors own and operate a portfolio of casinos, card rooms, hotels, and other gaming- and hospitality-related assets across Washington State, Nevada, and Colorado, including 17 card rooms in Washington State and several casinos and hotels in Nevada and Colorado, reflecting a total of approximately 2,500 slot machines, 320 table games, 1,200 hotel rooms, and 30 restaurants. The Debtors' operating businesses also include the EGads! fabrication and installation business, a gaming and hospitality industry leader in the design, fabrication, assembly and installation of casino interiors, custom signage, lighting, and architectural treatments, and the Utah Trailways charter company, which facilitates customer gaming excursions from Salt Lake City, Utah to the Debtors' operating properties in Wendover, Nevada.

8. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeff Seery in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "***First Day Declaration***"), which is incorporated herein by reference.[5]

## THE DEBTORS' RELATIONSHIP WITH BLUE OWL

9. Certain of the Debtors are party to that certain Second Amended and Restated Master Lease, dated as of July 6, 2023, with Blue Owl (as may be amended, restated, or supplemented from time to time, the "***Blue Owl Master Lease***"). On September 1, 2022, the Company initially sold Coyote Bob's Casino, Casino Caribbean (Yakima, Washington), Crazy Moose Casino (Pasco, Washington), Great American Casino Everett, and Macau Casino Lakewood (collectively, the "***Original Facilities***") to Blue Owl for approximately $110.3 million, and contemporaneously entered into a sale-leaseback arrangement with respect to these properties pursuant to the Blue Owl Master Lease.

10. The Company subsequently entered into further sale-leasebacks with Blue Owl pursuant to the Blue Owl Master Lease, including (a) the sale of the Great American Casino Tukwila (the "***Tukwila Facility***"), Gold Country Inn & Casino, Maverick Casino Hotel Elko, and Mobil Gas Station (Elko, Nevada) (collectively, the "***Elko Facilities***") on October 6, 2022, for $47.3 million, (b) the sale of the Riverside Casino, Chips Casino, and Palace Casino (collectively, the "***Evergreen Facilities***") on June 1, 2023, for $40.5 million, and (d) the sale of the All Star Casino (the "***All Star Facility***," and together with the Original Facilities, the Tukwila Facility, the Elko Facilities, the Evergreen Facilities, and the All Star Facilities, the "***Blue Owl Facilities***") on July 1, 2023, for $7 million.

---

[5] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

11. The initial term under the Blue Owl Master Lease is the 40th anniversary of July 6, 2023, and beginning on the date each of the Blue Owl Facilities added to the Blue Owl Master Lease; specifically, (i) September 2, 2022, with respect to the Original Facilities, (ii) October 6, 2022, with respect to the Tukwila Facility and Elko Facilities, (iii) June 5, 2023, with respect to the Evergreen Facilities, and (iv) July 6, 2023, with respect to the All Star Facility. The Blue Owl Master Lease provides that parties may agree to subsequent 20-year renewal terms prior to expiration of the initial term. As of the Petition Date, total rent payments under Blue Owl Master Lease are approximately $17.8 million annually.

12. As a result of liquidity challenges prior to the Petition Date, the Debtors had not funded rent payments to Blue Owl since April 2025. As of the Petition Date, the Debtors owed approximately $5.9 million in unpaid rent to Blue Owl under the Blue Owl Master Lease. Monthly rent accrues at a rate of approximately $1.5 million per month and is due on the 1st day of each month.

## THE SALE PROCESS

13. On August 28, 2025, the Court entered the *Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures and (II) Granting Related Relief* [Docket No. 178] (the "**Bidding Procedures Order**"), governing the process (the "**Sale Process**") for the Debtors' proposed sale of the Assets (as defined in the Bidding Procedures Order), which has resulted in approval of several different sales (each a "**Sale**" or collectively the "**Sales**") to different parties.

14. Through the Sale Process, the Debtors marketed their Assets in three principal segments:

- "**PokerCo**" composed of Aces Poker Lakewood, Aces Poker Mountlake Terrace, Caribbean Casino and the Caribbean Cardroom;

- *"LeaseCo"* composed of the Debtors' properties subject to the Blue Owl Master Lease, and potentially the non-PokerCo Washington properties subject to leases with other landlords; and

- *"MainCo"* to be composed of the remainder of the Debtors' existing businesses, interests, and tangible and intangible assets

15. While the Debtors received bids on different sets of Assets and have either obtained approval of or are still seeking approval of several different Sales, the Debtors did not receive any bids on the LeaseCo assets, including the properties subject to the Blue Owl Master Lease.

## THE SETTLEMENT NEGOTIATIONS AND TERMS OF THE SETTLEMENT

16. In conjunction with the Sale Process, the Debtors have engaged in negotiations with Blue Owl over treatment of the Blue Owl Master Lease. The Debtors are unable to operate the properties subject to the Blue Owl Master Lease profitably and, as noted above, the Debtors did not receive interest in such properties as part of the Sale Process. As a result, the Debtors and Secured Parties engaged in negotiations with Blue Owl over its unpaid prepetition rent and treatment of the Blue Owl Master Lease going forward. Such negotiations have been ongoing for several months, included several exchanges of information and projections concerning the Debtors operations at the locations subject to the Blue Owl Master Lease and have been hard fought.

17. The Agreed Order sets forth the terms of the Settlement between the parties and is in the best interest of the Debtors and their creditors. The Settlement provides for important rent relief for the Debtors and establishes a process by which the Debtors and Blue Owl can work together to effectuate the transfer of properties subject to the Blue Owl Master Lease to Replacement Operators, or, if necessary, conduct an orderly winddown of the properties. The key terms are summarized below:

    (a) Rent concessions, which could total approximately $11.5 million over the next 12 months, across the various properties subject to the Blue Owl Master Lease;

6

    (b) An orderly process for the continued operations of each Property subject to the Blue Owl Master Lease, including a process for designating each such Property as either a Rejected Property or Transferred Property;

    (c) Agreement for allowance of an administrative expense claim in favor of Blue Owl for the deferred rent and process for calculating such claim; and

    (d) Agreement on a rejection damages claim for Blue Owl and a process for calculating such claim.

For the reasons set forth herein, the Debtors believe that the Settlement is in the best interest of the Debtors and their estates, and respectfully submit that such Settlement should be approved.

## BASIS FOR RELIEF

**I. SETTLEMENTS ARE FAVORED IN BANKRUPTCY, AND A DEBTORS' BUSINESS JUDGMENT IS GIVEN SIGNIFICANT DEFERENCE.**

18. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). Settlements are considered a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

19. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540

7

(5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

20. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

21. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) (citation omitted). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation omitted).

## II. THE SETTLEMENT SATISFIES THE THREE-FACTOR TEST COURTS IN THE FIFTH CIRCUIT EMPLOY TO ANALYZE PROPOSED SETTLEMENTS.

22. The Fifth Circuit has established the following three-factor balancing test under which bankruptcy courts are to analyze the reasonableness of proposed settlements: (a) "[t]he probability of success in [litigating the claim subject to settlement,] with due consideration for the uncertainty in fact and law; (b) [t]he complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (c) [a]ll other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir.1997); *Jackson Brewing,* 624 F.2d at 602.

8

23. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. **First**, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). **Second**, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

24. All of the foregoing factors favor approval of the Settlement. First, as noted above, the Debtors are unable to continue operating the Properties under the Blue Owl Master Lease at the current rent rates long term. The rent concessions provided by Blue Owl are significant and will give the Debtors the necessary runway to work with Blue Owl to transition the Properties to new operators or tenants, or, alternatively, orderly shut down operations at the Properties. Further, the rent savings will ease the Debtors liquidity constraints as the Debtors work to close the Court-approved Sales and wind down their businesses.

25. Second, the Settlement avoids what could be contentious and expensive litigation with Blue Owl. As noted above, Blue Owl was owed several months of rent as of the Petition Date and the Debtors are unable to continue paying full rent and operate the properties. Litigation over lease rejection issues and potential litigation over lifting the stay so Blue Owl could exercise remedies would likely be protracted and expensive. Such litigation would also be an unnecessary distraction at a critical time in the Debtors' cases as the Debtors pursue approval of the Sales and move to close the Sales.

26. Third, given the risks and costs associated with continuing the Parties' disputes, and the substantial benefits of resolving those disputes through the Settlement, the Settlement is a prudent compromise. The Settlement delivers a comprehensive resolution of disputes and provides a framework for either transferring the Blue Owl Properties or allowing for their orderly winddown. The significant rent concessions give the Debtors and Blue Owl runway to determine the best outcome for each Property avoiding a rush to transfer the Properties or potentially close Properties that would come with litigation.

27. Finally, the Settlement is the product of arms-length bargaining, and not of fraud or collusion. The negotiations over issues related to Blue Owl have been ongoing since prior to the Petition Date, and accelerated in earnest during the Debtors' Sale Process. The Debtors, Blue Owl and Secured Parties have expended considerable time and resources working to find a resolution acceptable to all Parties, and such negotiations have been hard fought and undertaken in good faith by all Parties.

### III. SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE ARE SATISFIED

28. The Settlement contemplates certain actions by the Debtors that implicate sections 363 and 365 of the Bankruptcy Code, including (a) the potential assumption and assignment or rejection of certain contracts in connection with a Property Transfer or Property Rejection, (b) the disposition of assets of the Debtors outside the ordinary course of business, and (c) the release of certain rights and claims.

29. Section 363(b)(1) authorizes courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); s*ee also In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances."). Courts in the Fifth Circuit have granted a debtor's request to use property of

the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Black v. Shor (In re BNP Petrol. Corp.)*, 642 F. App'x 429, 434–35 (5th Cir. 2016) (*citing In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").

30. Section 365(a), meanwhile, provides that a debtor, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F. 3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor in possession to renounce title to and abandon burdensome property). A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1989) ("It is well established that 'the question of whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. Of Institutional Inv'rs v. Chi., M., St. P & P.R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts.").

31. Thus, at bottom, satisfaction of sections 363 and 365 of the Bankruptcy Code in the context of this Settlement requires showing appropriate business judgment supports the relief requested. For all the reasons stated above, that standard is met.

**EMERGENCY CONSIDERATION**

32. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i). Under the Blue Owl Lease, the rent payment is due on December 1. As noted above, the Debtors' will not be able to continue operating the Blue Owl Properties without the rent deferrals provided for in the Settlement. Blue Owl has agreed to defer the rent payment to allow for Court approval until December 8, 2025, but the Debtors will be required to make weekly payments beginning that week. Accordingly, it is essential that the Settlement be approved as soon as possible, and the Debtors submit that they have satisfied the standard of Bankruptcy Local Rule 9013-1(i). Therefore, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**NOTICE**

33. Notice of this Motion will be given to the parties on the Debtors' Master Service List. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/RunItOneTime/.

WHEREFORE, the Debtors request that the Court enter the Agreed Order, and grant such other and further relief as is appropriate under the circumstances.

Dated: December 10, 2025
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Joseph P. Rovira (Texas Bar No. 24066008)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
       josephrovira@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com

- and -

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Nicholas J. Messana (California Bar No. 332355)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Email: jeff.bjork@lw.com
       helena.tseregounis@lw.com
       nicholas.messana@lw.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew Sorkin (NY Bar No. 4597944)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
       andrew.sorkin@lw.com

*Attorneys for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on December 10, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/ [Timothy A. ("Tad") Davidson II*
                                                  Timothy A. ("Tad") Davidson II