United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 26, 2026
Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-90191 |
| RUNITONETIME LLC, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION DENYING INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 117'S MOTION FOR RECONSIDERATION

This matter comes before the Court on the motion of International Brotherhood of Teamsters, Local 117 ("Local 117" or "the Union") for reconsideration of the Court's Order Approving the Sale of the PokerCo Assets Free and Clear of Liens, Claims, Interests, and Encumbrances.[1] For the reasons described below, Local 117's Motion for Reconsideration is denied.

### BACKGROUND

On July 14, 2025, RunItOneTime LLC and other affiliated Debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").[2] The Debtors continue to operate their businesses and manage their properties as Debtors in Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.[3] 11 U.S.C §§ 1107(a), 1108.

Debtors are a privately held gaming and entertainment company founded in 2017 by former Las Vegas Sands executives Eric Persson and Justin Beltram.[4] The Debtors own and operate several card rooms in Washington state and casino hotels in Nevada and Colorado.[5] The

---

[1] ECF No. 490.
[2] ECF No. 1.
[3] ECF No. 652 at 1.
[4] ECF No. 18 at 3.
[5] ECF No. 18 at 3.

"PokerCo" assets refers to the Washington card rooms commonly known as Aces Poker Lakewood, Aces Poker Mountlake Terrace, Caribbean Casino and Caribbean Cardroom.[6]

As of the petition date, Debtors have approximately 2,900 employees and 1,250 of those employees are represented by the Teamsters Local Union Nos. 38, 117, 750 and 839.[7] Further, approximately 350 workers are currently employed at the PokerCo facilities and of that number, approximately 220 employees are unionized employees represented by Local 117.[8] The Debtors' relationship with Local 117 is reflected in a collective bargaining agreement that ends February 28, 2027.[9]

As alleged by Maverick Gaming LLC ("Maverick Gaming" or the "Buyer"), objecting party to the instant motion, "Since the Petition Date, the Debtors have repeatedly and plainly communicated their goal to market and sell the PokerCo assets, including but not limited to describing the proposed sale transaction in the Seery Declaration filed on the Petition Date in support of the petitions and requested first-day relief."[10]

On August 1, 2025, the Debtors filed a motion for approval of the sale process and bidding procedures where the PokerCo assets were described as a segment of assets to be sold and asserting such sale should be free and clear of liens and claims pursuant to § 363(f) of the Bankruptcy Code.[11] After a hearing on the matter, on August 28, 2025 the Court entered an Order approving Debtors' proposed sale process, noticing procedures and bidding procedures.[12] Therein, the Court set the objection deadline and provided that "[a]ny party or entity who fails to timely file an objection conforming with the requirements and deadlines set forth in this paragraph 3 shall be forever barred from asserting any objection to the Sale, including with respect to the transfer

---

[6] ECF No. 18 at 5.
[7] ECF No. 3 at 4.
[8] ECF No. 652 at 2.
[9] ECF No. 3 at 4.
[10] ECF No. 652 at 3.
[11] ECF No. 93 at 8, 33–34.
[12] ECF No. 178.

of any Assets free and clear of all liens, claims, encumbrances, and other interests."[13]

On September 4, 2025, interested parties, including Local 117, were served a Notice of Sale, Bidding Procedures, Potential Auction, and Sale Hearing (the "Sale Notice").[14]   The Sale Notice provided that Debtors were soliciting bids for certain or substantially all of their assets including the PokerCo assets.[15]   In bold typeface, the Sale Notice provided the "Consequences of Failing to Timely File an Objection" which would result in a party "forever barred from asserting any Sale Objection, including with respect to the transfer of the Assets free and clear of all liens, claims, encumbrances and other interests."   Further, the Sale Notice provided the sale would be free and clear of any claim arising from the Debtors' conduct prior to the closing of the sale.  Local 117 was among the parties served the Sale Notice by First Class Mail.[16] The Sale Notice was also published in several publications like the *Wall Street Journal* and *The Seattle Times*.[17]

On September 17, 2025, Debtors filed a Notice of Auction for Sale of Certain of the Debtors' Assets Free and Clear of Any and All Claims, Interests, and Encumbrances (the "Auction Notice").[18]   Local 117 acknowledges it received the Auction Notice on this date and became aware the Debtors intended to auction off the PokerCo assets.[19]   The Auction Notice indicated that objections to the sale of the PokerCo assets were to be filed "by the later of the date that is three days after the filing of the Notice of Successful Bidder or September 23, 2025."[20]

On September 19, 2025, the Debtors held an auction for the PokerCo assets, and Maverick Gaming was determined to have been the

---

[13] ECF No. 178 at 5–6.
[14] ECF No. 453 at 1, 194.
[15] ECF No. 93 at Ex. 2. A copy of the Sale Notice can be found on the Noticing Agent's website. *See Notice of Sale, Bidding Procedures, Potential Auction and Sale Hearing*, KROLL, https://restructuring.ra.kroll.com/runitonetime/.
[16] ECF No. 453 at 194.
[17] ECF No. 455.
[18] ECF No. 450.
[19] ECF No. 602 at 2.
[20] ECF No. 450 at 2.

successful bidder with a bid of $28 million in total cash and non-cash consideration.[21]   On September 20, 2025, Debtors filed a Notice of Successful Bidders sending notice to creditors that an auction of the PokerCo assets had occurred and successful bidders and backup bidders had been determined.[22]   The Notice reconfirmed the September 23rd objection deadline and the September 24th sale hearing.[23]

On September 24, 2025, the Court held the sale hearing for the PokerCo assets (the "Sale Hearing").   The Court admitted several pieces of supporting evidence including declarations from the Debtors' investment banker, an independent director, and Eric H. Persson, Maverick Gaming's manager and Debtors pre-petition CEO and majority shareholder.[24]   Given Mr. Persson's previous role with the Debtors, the sale was considered a sale to an insider, but Debtors contended they took significant steps to ensure the sale was fair, in good faith, and at arm's length.[25]   Debtors allege they screened Mr. Persson from the sale process, Mr. Persson was represented by independent counsel, and the whole process was overseen by the Special Committee of the Board (the "Special Committee") and the Unsecured Creditors Committee (the "UCC").[26]   At the conclusion of the hearing, the Court entered an order approving the PokerCo sale (the "Sale Order").[27]

On October 8, 2025, Local 117 filed their Motion for Reconsideration.[28]   Local 117 seeks reconsideration of the Sale Order, and in particular Paragraph I which provides in part:

> *No Successor Liability*. Buyer is not an alter-ego of, or a successor to, or a mere continuation of or substantial continuation of any Debtor or its estate, and there is no continuity of enterprise between Buyer and the Debtors as a result of the consummation of the Sale Transaction.

---

[21] ECF No. 469 at 2.
[22] ECF No. 469 at 2.
[23] ECF No. 469 at 2.
[24] ECF No. 495 at 8.
[25] ECF No. 495 at 11.
[26] ECF No. 495 at 11–12; ECF No. 481 at 4.
[27] ECF No. 490.
[28] ECF No. 602.

Buyer shall not be deemed to be holding itself out to the public as a continuation of any Debtor based on the Sale Transaction, the APA, this Order, or the continuation of the business operations after closing of the Sale Transaction. Buyer is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, including but not limited to under any federal, state or local statute, regulation or common law, including but not limited to any tax, revenue, pension, labor, discrimination or environmental laws. Buyer shall not be deemed to be a "successor employer" for purposes of any federal, state or local statute, regulation or common law, including but not limited to the . . . National Labor Relations Act of 1935 . . . each as amended from time to time, or any other federal or state discrimination, employee, workers' compensation, occupational disease, unemployment, or disability-related laws or regulations.[29]

Local 117 alleges it did not object to the sale because it did now know that Debtors and Maverick Gaming were seeking a determination on successorship at the sale hearing.[30]   Local 117 seeks the Court's reconsideration of the Sale Order, and that in doing so, it strike Paragraph I of the Order.[31]

Notably, the rest of Paragraph I emphasizes that selling the assets free and clear of interests was important to the parties:

A sale of the Acquired Assets that is not free and clear of Interests as set forth herein would have substantially less benefit to and would adversely affect the Debtors' estates and creditors. Buyer would not have entered into the Sale Transaction without, and the consideration being provided under the APA reflects Buyer's reliance on, this Order providing Buyer, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, with title to, interest in and

---

[29] ECF No. 490 at 5–6.
[30] ECF No. 602 at 2–3.
[31] ECF No. 602 at 6.

> possession of the Acquired Assets free and clear of all
> Interests, including but not limited to any claims based on
> or sounding in successor, alter-ego or vicarious liability,
> except for any Permitted Liens or Assumed Liabilities
> (including Cure Costs).[32]

Further, Paragraph 3 of the Sale Order provides that the transfer of the assets is pursuant to the APA and "shall vest in Buyer free and clear" of all interests and claims, specifically, "any claims under any collective bargaining agreement of the Debtors . . . and all successor liability or 'successor employer' claims."[33]

Local 117 argues that the Sale Order contained clear errors of law.[34]  In its motion, it first contends the Court exceeded its jurisdiction by ruling on successorship under the National Labor Relations Act (NLRA).[35]  Local 117 further alleges that the Court erred in finding that Maverick Gaming is not an alter ego of the Debtors because it did not conduct a factual analysis.[36]  Lastly, Local 117 argues that denying its motion would cause manifest injustice because it would contravene public policy and 11 U.S.C. § 1113.[37]

Debtors and Maverick Gaming object to Local 117's Motion.[38]  The Court held a hearing on the Motion on November 19, 2025.

## JURISDICTION

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  This

---

[32] ECF No. 490 at 6.
[33] ECF No. 490 at 12.
[34] ECF No. 602 at 5.
[35] ECF No. 602 at 5–6.
[36] ECF No. 602 at 6–7.
[37] ECF No. 602 at 9–10.
[38] *See* ECF No. 652; ECF No. 653.

proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (N).  The Court has constitutional authority to enter final orders and judgments.  *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Local 117 brings this Motion for Reconsideration of the Court's Sale Order because it argues the Court did not have jurisdiction to rule on the buyer's alter ego status.[39]  However, even if the Court lacks subject matter jurisdiction over the determination it made in the Sale Order, the Court "always has jurisdiction to determine its own jurisdiction."  *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

## LEGAL STANDARD

A motion for reconsideration of a Court's order is an "extraordinary remedy that should be used sparingly."  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.*  A motion for reconsideration served within ten days after entry of the judgment is treated as a Federal Rule of Civil Procedure 59(e) motion.  *See Fletcher v. Apfel*, 210 F.3d 510, 511 (5th Cir. 2000); *In re Berg*, 383 B.R. 631, 639 (Bankr. W.D. Tex. 2008).  Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

To prevail, a movant must show one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice."  *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  Local 117 brings forth the instant

---

[39] ECF No. 602 at 5–6.

Motion on the alleged need to correct a clear error of law and because denying such motion would allegedly result in manifest injustice.

## DISCUSSION

Local 117 argues the Court did not have jurisdiction to find that Maverick Gaming was purchasing the PokerCo assets free and clear of successor liability. It argues that the Court went beyond its jurisdictional authority, and it should reconsider the Sale Order because doing so would correct a clear error of law and prevent manifest injustice. Local 117 did not, however, object to the sale of the PokerCo assets or the findings in the Sale Order.

The Debtors and Maverick Gaming argue Local 117 waived its ability to object because it received sufficient notice of the sale and hearing.[40] Although the Court agrees that the Union received sufficient notice of the Sale Hearing, the Union raises a jurisdictional issue which the Court must consider. Subject matter jurisdiction cannot be waived by a party for a failure challenge earlier in the proceedings. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). Therefore, the Court will begin its discussion by analyzing whether it had jurisdiction to find that Maverick Gaming purchased the PokerCo assets free and clear of successor liability.

The Sale Order is a core matter. *SR Constr. Inc. v. RE Palm Springs II, L.L.C. (In re RE Palm Springs II, L.L.C.)*, 106 F.4th 406, 413 (5th Cir. 2024). That is because an order approving a sale under 11 U.S.C. § 363 can only "arise" in a bankruptcy case. "A matter is core if it invokes a substantive right provided by the Bankruptcy Code or by its nature, could arise only in the context of a bankruptcy case. The Sale Order fits the bill." *Id.* (citation modified). The Bankruptcy Code gives debtors in possession a substantive right to sell property of the estate. *See* 11 U.S.C. § 363(b)(1). Further, 28 U.S.C. § 157(b)(2) provides a list of core proceedings and an "order approving the sale of property" is part of that list. *See* 28 U.S.C. § 157(b)(2)(N); *In re RE Palm Springs II,*

---

[40] ECF No. 652 at 15–16; ECF No. 653 at 16–18.

*L.L.C*, 106 F.4th at 413.  Given that the Court had authority to approve the sale of the PokerCo assets and enter the Sale Order, the question then becomes whether the Court had authority to approve the sale free and clear of successor liability.

The Court may authorize a sale "free and clear of any interest" under 11 U.S.C. § 363(f).  The trustee, or debtor in possession, may sell property of the estate only after notice and a hearing.  *See* 11 U.S.C. § 363(a).  Under § 363(f) a debtor in possession may sell property free and clear only if:

> **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> **(2)** such entity consents;
>
> **(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> **(4)** such interest is in bona fide dispute; or
>
> **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)–(5).

Although the statute only refers to a sale free and clear of "interests" in the property being sold, courts have interpreted this provision to "more broadly extinguish claims that 'arise from the property being sold.'"  *See Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*, 467 B.R. 694, 702–03 (S.D.N.Y. 2012) (citing *In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir. 2009)); *In re Trans World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003)).  The Sixth Circuit, for example, has interpreted § 363(f) to authorize the bankruptcy court to approve sales free and clear of claims against the debtor.  *See Al Perry Enters. v. Appalachian Fuels, LLC*, 503 F. 3d 538, 543 (6th Cir. 2007) ("The bankruptcy court has clear power to approve the sale of debtors' assets free and clear of any interest or claims that could be brought against the bankrupt estate during bankruptcy pursuant to 11 U.S.C. §

363(f).").  Hence, many courts interpret § 363(f) to permit bankruptcy
courts to approve a sale free and clear of successor liability claims.

> Sister courts have held that § 363(f) may be used to bar a
> variety of successor liability claims that relate to
> ownership of property: an "interest" might encompass Coal
> Act obligations otherwise placed upon a successor
> purchasing coal assets, *In re Leckie Smokeless Coal Co.*, 99
> F.3d 573, 581-82 (4th Cir. 1996), travel vouchers issued to
> settle an airline's discrimination claims in a sale of airline
> assets,[ ]*Trans World Airlines*, [322 F.3d 283, 288–90 (3rd
> Cir. 2003)], or a license for future use of intellectual
> property when that property is sold, *FutureSource LLC v.
> Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002).

*See Elliott v. GM LLC (In re Motors Liquidation Co.),* 829 F.3d 135, 155
(2nd Cir. 2016).

The Sale Order here approves the sale of the PokerCo assets free
and clear of interests and claims.  Specifically, the Order finds such a
sale results in no successor liability and that the "[b]uyer is not an alter-
ego of, or a successor to, or a mere continuation of or substantial
continuation of any Debtor or its estate."[41]

The Court finds that it has jurisdiction to approve a Sale Order
free and clear of successor liability as it did here.  A bankruptcy court
has jurisdiction over the Debtors' estate and the disposition of its assets.
*See* 28 U.S.C. §§ 157 (b)(2)(A), (N).  In line with the predominant
interpretation, the Court finds that § 363(f) permits the Court to approve
a sale free and clear of claims that would otherwise be assertable against
the buyer under a successor liability doctrine.   *See In re Motors
Liquidation Co.*, 829 F.3d at 155.  The Court's determination that the
Maverick Gaming is not an "alter-ego" or "successor in interest" of the

---

[41] ECF No. 490 at 5.

Debtors or their estate—and that the sale is "free and clear" of such claims—is permitted under § 363. *See* 11 U.S.C. § 363(f).

Given that the Court has jurisdiction to approve a sale free and clear of successor liability, the Court notes it likewise has jurisdiction to interpret and enforce its own orders. *See In re RE Palm Springs II, L.L.C.*, 106 F.4th at 413. The Debtors and Maverick Gaming argue that the Union has misinterpreted the Court's Sale Order by believing it applies to both present and future liabilities. To be clear, the Sale Order does not foreclose liability for Maverick Gaming's post-sale conduct. *See Erica, Inc. v. NLRB*, 200 F. App'x 344, 347 (5th Cir. 2006) ("A Bankruptcy Court order might discharge duties that arose before the bankruptcy petition, but a successor's post-sale conduct can create a new duty to bargain."). The Order solely transfers the PokerCo assets free and clear of liability for the Debtors' pre-sale-closing actions. The point of § 363(f) is not to determine who would win or lose a successor or alter ego litigation in the future. *See In re K & D Indus. Servs. Holding Co.*, 602 B.R. 16, 28 (Bankr. E.D. Mich. 2019). The point is to allow the buyer to purchase the Debtors' assets without the risk that it will be forced into a successorship or alter ego fight in the future. *See id.*

Local 117 argues that the Second Circuit's findings in *In re Goodman* and the Fifth Circuit's findings in *N.L.R.B v. Laborers' Int'l Union of N. Am., AFL-CIO,* are directly on point. *See In re Goodman*, 873 F. 2d 598 (2nd Cir. 1989); *NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F. 2d 949 (5th Cir. 1989). However, both cases are distinguishable. Both decisions did not involve a § 363 sale. Those cases involved National Labor Relations Board (NLRB) proceedings and corporate debtors who underwent a Chapter 7 bankruptcy. In both decisions, the Second Circuit and Fifth Circuit found the bankruptcy court could not make a successorship determination because it was not a collateral issue.[42] Here, in contrast, the parties are not in an ongoing

---

[42] In *N.L.R.B v. Laborers' Int'l Union of N. Am., AFL-CIO*, the debtor was a corporate debtor who did not and could not receive a discharge under a Chapter 7 bankruptcy. Thus, the Fifth Circuit determined the bankruptcy court had no jurisdiction to make a successorship finding because such a finding would not have an

NLRB dispute, the successorship determination was made in conjunction with a § 363 sale, and a successorship finding is a collateral issue that influences the value of the PokerCo assets.

The core aim of the Bankruptcy Code is to maximize the value of the assets and thereby maximize potential recovery to creditors. *See Douglas v. Stamco*, 363 Fed. Appx. 100, 103 (2nd Cir. 2010) (citing *Toibb v. Radloff*, 501 U.S. 157, 163 (1991)).  Paragraph I of the Sale Order makes it clear that the buyer would not have entered into the sale transaction, and provided the agreed consideration, without interest in and possession of the PokerCo assets free and clear of all interests.[43] Granting the Union's motion—and thereby striking the no successorship language that sets the free and clear nature of the sold assets—has a potential negative effect.  Without this protection, purchasers like Maverick Gaming may pay less for debtors' assets, which runs counter to the Bankruptcy Code's goal of maximizing value.  *See In re Ormet Corp.*, No. 13-10334 (MFW), 2014 Bankr. LEXIS 3071, at *9 (Bankr. D. Del. July 17, 2014).

Furthermore, Local 117's argument that the Court did not conduct a factual analysis is incorrect.  At the sale hearing, the Court admitted several pieces of evidence it considered in approving the "free and clear" sale.  A § 363 sale is meant to be a transparent process, and after considering all the evidence, the Court found that the sale could proceed free and clear of all interests as provided by § 363(f).

Lastly, by denying the Union's motion and allowing the Sale Order to stand as is, there will be no manifest injustice.  In arguing that such a result would occur, the Union contends that the Court should not

---

effect on the estate. *See Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F. 2d at 955. Similarly, in *In re Goodman*, the Second Circuit determined the bankruptcy court did not have jurisdiction to decide a successorship issue because "no bankruptcy issue hinges on the successorship determination." *See In re Goodman*, 873 F. 2d at 603. There, the case involved an individual debtor who received a Chapter 7 discharge. The Court found that the debtor's discharge could not shield him from successor liability for his post-petition conduct. *See id.*

[43] ECF No. 409 at 6.

allow the Debtors and the Buyer to propose their own alter ego status without an opportunity for parties in interest to object.[44] However, Local 117 did have an opportunity to object. It was served the Sale Notice, as evidenced by an Affidavit of Service.[45] It acknowledges it received the Notice of Auction Sale.[46] Such notices clearly outline the Debtors' intention to sell its assets free and clear of all interest and claims. It had notice and an opportunity to object, but it chose not to. Therefore, denying the Union's motion now will not result in manifest injustice because it had notice and opportunity to object before the Sale Order was granted.[47]

Because the Court granted a substantive right provided by the Bankruptcy Code under § 363(f), the Court finds that it had jurisdiction to approve the sale "free and clear of any interest in such property." *See* 11 U.S.C. § 363(f); *In re RE Palm Springs II, L.L.C.*, 106 F.4th at 413. Therefore, the Sale Order did not contain a clear error of law. Further, because the Union had notice and an opportunity to object, denying the motion will not result in a manifest injustice. Because there is no basis to grant such "extraordinary" relief, the Union's Motion for Reconsideration is denied.

---

[44] ECF No. 602 at 9.

[45] ECF No. 453 at 194.

[46] ECF No. 602 at 2.

[47] Local 117 also asserts that the Court's findings on no successor liability would undermine the public policy goals of 11 U.S.C. § 1113. However, § 1113 has no relevance here. That Section provides extra protections for workers under a collective bargaining agreement by requiring debtors seeking to assume or reject such an agreement to abide by certain requirements.

## CONCLUSION

For these reasons, the Court DENIES Local 117's Motion for Reconsideration. A separate order will issue.


SIGNED 01/26/2026


Alfredo R Pérez
United States Bankruptcy Judge